LATHAM & WATKINS LLP
Michael H. Rubin (Bar No. 214636)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
415-395-0600
Fax: 415-395-8095
Email: michael.rubin@lw.com

Alexander C.K. Wyman (Bar No. 295339)
355 South Grand Avenue Suite 100
Los Angeles, CA 90071
213-485-1234
Fax: 213-891-8763
Email: alex.wyman@lw.com

Nicholas J. Boyle
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
202-637-2200
Fax: 202-637-2201
Email: nicholas.boyle@lw.com
*Admitted Pro Hac Vice*

*Attorneys for Defendant*
*CoStar Group, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DYWANNA DRUMMER, ANTHONY D'ANTONIO, SCHALISE LEE, CYNTHIA RUBIO, and MARY LEE WALLACE, Individually and on Behalf of All Others Similarly Situated,<br><br>              Plaintiffs,<br><br>v.<br><br>COSTAR GROUP, INC.,<br><br>              Defendant. | Case No. 5:25-CV-01047-JGB-SP<br><br>**DEFENDANT COSTAR GROUP, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:  October 20, 2025<br>Time:  9:00 AM PST<br>Judge:  Hon. Jesus G. Bernal<br>Dept.:  Riverside, Courtroom 1 |

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 5:25-cv-01047-JGB-SP
COSTAR GROUP'S MEMO. OF POINTS &
AUTHORITIES ISO MOTION TO DISMISS

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................ 1

II.     SUMMARY OF RELEVANT FACTS .......................................................... 2

III.    LEGAL STANDARDS .................................................................................. 3

        A.    Federal Rule of Civil Procedure 12(b)(1) ........................................... 3

        B.    Federal Rule of Civil Procedure 12(b)(6) ........................................... 4

IV.     ARGUMENT .................................................................................................. 4

        A.    Plaintiffs Lack Standing Under CIPA Because Plaintiffs Fail to Allege a Cognizable Injury ........................................................ 4

        B.    The Alleged Receipt of IP Addresses Does Not Render the Trackers Pen Registers Under CIPA ................................................ 7

              1.    Pen Registers Only Receive the Destination of Outgoing Information, and IP Addresses Represent the Source of Outgoing Information ......................................... 8

              2.    IP Addresses Are Not "Personal" Information Under CIPA ......................................................................... 10

              3.    Extending CIPA's Protections to the Receipt of IP Addresses Would Prohibit Routine Internet Usage ............... 11

        C.    Any Information that Plaintiffs Argue Was Collected Besides IP Addresses Is Not Actionable Under the Plain Text of CIPA ................................................................................. 12

V.      CONCLUSION ............................................................................................. 15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

i

CASE NO. 5:25-cv-01047-JGB-SP
COSTAR GROUP'S MEMO. OF POINTS &
AUTHORITIES ISO MOTION TO DISMISS

# **TABLE OF AUTHORITIES**

**Page(s)**

## CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................... 4

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................... 4

*Casillas v. Transitions Optical, Inc.*,
    2024 WL 4873370 (L.A. Super. Ct. Sept. 9, 2024) ......................................... 10

*Columbia Pictures Indus. v. Bunnell*,
    2007 WL 2080419 (C.D. Cal. May 29, 2007).................................................. 12

*Cousin v. Sharp Healthcare*,
    681 F. Supp. 3d 1117 (S.D. Cal. 2023) ........................................................ 12

*Emps. Ins. of Wausau v. Granite State Ins. Co.*,
    330 F.3d 1214 (9th Cir. 2003) ................................................................. 9

*Greenley v. Kochava, Inc.*,
    684 F. Supp. 3d 1024 (S.D. Cal. July 27, 2023) ................................... 10, 11, 13

*Heeger v. Facebook, Inc.*,
    509 F. Supp. 3d 1182 (N.D. Cal. 2020) ........................................................ 5, 11

*Heiting v. FKA Distrib. Co.*,
    2025 WL 736594, Slip. op. (C.D. Cal. Feb. 3, 2025) ........................... 4, 5, 6, 12

*Hughes v. Vivint, Inc.*,
    2024 WL 5179916, Slip op. (C.D. Cal. July 12, 2024)...................................... 7

*I.C. v. Zynga, Inc.*,
    600 F. Supp. 3d 1034 (N.D. Cal. 2022) ........................................................ 11

*In re ConAgra Foods, Inc.*,
    908 F. Supp. 2d 1090 (C.D. Cal. 2012)........................................................ 9

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ................................................................. 5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

CASE NO. 5:25-cv-01047-JGB-SP
COSTAR GROUP'S MEMO. OF POINTS &
AUTHORITIES ISO MOTION TO DISMISS

*In re Google Inc.*,
    806 F.3d 125 (3rd Cir. 2015)...................................................................... 6

*In Re Zynga Privacy Litig.*,
    750 F.3d 1098 (9th Cir. 2014)................................................................... 13

*Kishnani v. Royal Caribbean Cruises Ltd.*,
    2025 WL 1745726, Slip op. (N.D. Cal. June 24, 2025)............................... 5, 13

*Kleffman v. Vonage Holdings Corp.*,
    49 Cal. 4th 334 (2010)......................................................................... 5, 9, 11

*Kremen v. Cohen*,
    325 F.3d 1035 (9th Cir. 2003)..................................................................... 9

*Licea v. Hickory Farms LLC*,
    2024 WL 1698147 (L.A. Super. Ct. Mar. 13, 2024)..................................... 11

*Napear v. Bonneville Int'l Corp.*,
    669 F. Supp. 3d 948 (E.D. Cal. 2023).......................................................... 9

*Palacios v. Fandom, Inc.*,
    2024 WL 5494527 (L.A. Super. Ct. Sept. 24, 2024) ...................................... 9

*People v. Stipo*,
    195 Cal. App. 4th 664 (2011)..................................................................... 11

*Rodriguez v. Fountain9, Inc.*,
    2024 WL 3886811 (L.A. Super. Ct. July 9, 2024).......................................... 4

*Rodriguez v. Plivo Inc.*,
    2024 WL 5184413 (L.A. Super. Ct. Oct. 2, 2024).......................................... 10

*Rogers v. Ulrich*,
    52 Cal. App. 3d 894 (1975)......................................................................... 10

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004)..................................................................... 3

*Saleh v. Nike, Inc.*,
    562 F. Supp. 3d 503 (C.D. Cal. 2021)......................................................... 13

*Sanchez v. Cars.com, Inc.*,
    2025 WL 487194 (L.A. Super. Ct. Jan. 27, 2025) .......................................... 9

*Smith v. Maryland,*
     442 U.S. 735 (1979) ..................................................................... 8

*Spokeo, Inc. v. Robins,*
     578 U.S. 330 (2016) ............................................................. 3, 4, 5

*Sprewell v. Golden State Warriors,*
     266 F.3d 979 (9th Cir. 2001) ....................................................... 4

*Torres v. United States Dep't of Homeland Sec.,*
     411 F. Supp. 3d 1036 (C.D. Cal. 2019) (Bernal, J.) ...................... 4

*TransUnion LLC v. Ramirez,*
     594 U.S. 413 (2021) ............................................................. 3, 4, 5

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.,*
     484 U.S. 365 (1988) ................................................................... 15

*United States v. Acevedo-Lemus,*
     2016 WL 4208436 (C.D. Cal. Aug. 8, 2016), *aff'd, Borges v. Att'y Gen. of United States*, 800 F. App'x 71 (9th Cir. 2020) ................... 6, 11

*United States v. Christie,*
     624 F.3d 558 (3d Cir. 2010) ...................................................... 12

*United States v. Forrester,*
     512 F.3d 510 (9th Cir. 2008) ....................................... 2, 5, 11, 13

*United States v. N.Y. Tel. Co.,*
     434 U.S. 159 (1977) ..................................................................... 8

*Xu v. Reuters News & Media Inc.,*
     2025 WL 488501 (S.D.N.Y. Feb. 13, 2025) ................................. 6

**STATUTES**

Cal. Penal Code
     § 630 ........................................................................................ 10
     § 638(a) .................................................................................... 14
     § 638.50(b) ......................................................................... 8, 13
     § 638.52(c) ............................................................................... 14
     § 638.52(d)(3) ............................................................................ 8

CIPA ..................................................................................... *passim*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

CASE NO. 5:25-cv-01047-JGB-SP
COSTAR GROUP'S MEMO. OF POINTS &
AUTHORITIES ISO MOTION TO DISMISS

CIPA
    § 631(a) ................................................................................................ 12
    § 638.51 ......................................................................................... *passim*

Privacy Act ............................................................................................... 1

## RULES

Federal Rule of Civil Procedure 12(b)(1) ................................................. 3

Federal Rule of Civil Procedure 12(b)(6) ................................................. 4

## OTHER AUTHORITIES

Tim LaChance, *"IP" so Facto? Not So Fasto: Why IP Addresses*
    *Should Not Be Considered PII*, 58 IDEA 303, 305-06 (2018) ............................ 9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

v

CASE NO. 5:25-cv-01047-JGB-SP
COSTAR GROUP'S MEMO. OF POINTS &
AUTHORITIES ISO MOTION TO DISMISS

# I.    INTRODUCTION

Plaintiffs' complaint boils down to the unsupported and illogical assertion that the routine receipt of IP addresses incidental to the operation of a website qualifies as illegal "pen register" activity under Section 638.51 of the California Invasion of Privacy Act ("CIPA"). Plaintiffs misinterpret CIPA and mischaracterize the definition of a pen register, and their position, if credited, would result in prohibiting the basic functions of the internet. The Court should dismiss Plaintiffs' complaint for three primary reasons:

*First*, Plaintiffs' fact-deficient Complaint fails to allege a cognizable injury, as required to establish standing to assert a claim under Section 638.51. Although Plaintiffs repeatedly allude to their "personally identifying" information being received by Defendant CoStar Group, Inc. ("CoStar"), Plaintiffs never identify any actual personal information that was allegedly obtained. Plaintiffs allege only that their IP addresses—which constitute non-private, non-actionable information—were received. Hypothetical allegations about what personal information *could* be acquired do not carry Plaintiffs' burden of establishing that Plaintiffs themselves have suffered a cognizable injury. Accordingly, Plaintiffs' complaint should be dismissed for failing to meet the threshold standing requirements to assert their claim.

*Second*, Plaintiffs ask the Court to ignore the clear language of CIPA and applicable case law and instead hold that software that receives IP addresses from a user somehow qualifies as a pen register. As this Court is aware, a pen register is a device that collects the *destination* of outgoing communications. By contrast, IP addresses identify the *source* of a communication from the Plaintiffs. Labeling a device that receives IP addresses a "pen register" not only would contradict the plain definition of pen registers under the law but would prohibit the normal functioning of the internet.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

1

CASE NO. 5:25-cv-01047-JGB-SP
COSTAR GROUP'S MEMO. OF POINTS &
AUTHORITIES ISO MOTION TO DISMISS

1  **Third**, even if Plaintiffs did allege that information other than IP addresses

2  was acquired by CoStar, Plaintiffs would still fail to state a claim under Section

3  638.51. The plain text of CIPA states that a pen register cannot collect the "contents

4  of communications" or information tracking physical location. And even a cursory

5  reading of the statutory scheme as a whole demonstrates that the statute upon which

6  Plaintiffs rely—Section 638.51—was intended to apply to devices used on

7  *telephones*, not the purported tracking software on a website that Plaintiffs identify

8  here. Plaintiffs thus fail to allege in their Complaint that CoStar could have plausibly

9  collected any information in violation of Section 638.51.

10  **II.    SUMMARY OF RELEVANT FACTS**

11  Plaintiffs allege that CoStar has partnered with third parties to install three

12  types of software, which they refer to as "Trackers," on the homepages of two

13  websites that CoStar operates: Homes.com and Apartments.com. *See* Compl. ¶¶ 2-

14  3, 19-22. These Trackers allegedly use "cookies"—"small computer files that are

15  automatically generated when a user visits a website"—to receive "identifying

16  information" from website users, "including the user's unique IP address." *Id.* ¶¶ 21-

17  23. IP addresses are "unique identifier[s] . . . for an internet connected device," *id.*

18  ¶ 24, which are "provided to and used by Internet service providers for the specific

19  purpose of directing the routing of information" from a "third party's servers" in the

20  normal course of internet browsing, *United States v. Forrester*, 512 F.3d 510, 510

21  (9th Cir. 2008). The Trackers allegedly then cause "the cookie, along with the user's

22  IP address, [to be sent] to the third-party." Compl. ¶ 22. Plaintiffs assert that because

23  the Trackers receive website visitors' "IP addresses [] without their consent or a

24  court order, they constitute [] 'pen registers' under CIPA." *Id.* ¶ 27.

25  Plaintiffs' so-called Trackers are the "TikTok Pixel," the "LinkedIn Insight

26  Tag," and the "Trade Desk/Adsrvr," which Plaintiffs allege receive and send users'

27  IP addresses to TikTok, LinkedIn, and the Trade Desk, respectively, to assist with

28  creating targeted advertising for third-party websites. *Id.* ¶¶ 28, 32-33, 43, 47-48,

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

2

CASE NO. 5:25-cv-01047-JGB-SP
COSTAR GROUP'S MEMO. OF POINTS &
AUTHORITIES ISO MOTION TO DISMISS

52-53, 56, 59-60, 64. Plaintiffs allege that the TikTok Pixel and the Trade Desk/Adsrvr are only present on Apartments.com, not Homes.com. *Id.* ¶¶ 28, 35, 56, 59, 63. Although Plaintiffs dedicate much of the Complaint to describing the personal information the Trackers ***could*** hypothetically collect, the only information that Plaintiffs allege the Trackers actually received was their IP addresses. *See id.* ¶ 68 ("Defendant used the Trackers to collect Ms. Drummer's personal information, including her IP address."); *id.* ¶¶ 73, 80, 87, 95 (same for other Plaintiffs).

The allegations regarding the specific Plaintiffs are disjointed and require enumerating. Only Drummer and Rubio are alleged to have both TikTok and LinkedIn accounts during the relevant time period underlying Plaintiffs' allegations. *Id.* ¶¶ 66-67, 78-79. D'Antonio is alleged to have had a LinkedIn account during the relevant time period, but not a TikTok account. *Id.* ¶ 93. Lee and Wallace are not alleged to have had either TikTok or LinkedIn accounts during the relevant time period. *See generally id.* Drummer, Lee, and Rubio are alleged to have visited Apartments.com, but not Homes.com. *Id.* ¶¶ 65, 68, 72-73, 77, 80. Wallace and D'Antonio are alleged to have visited Homes.com, but not Apartments.com. *Id.* ¶¶ 84, 87, 91, 95.

## III.    LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 12(b)(1)

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a litigant may seek dismissal of an action for lack of subject matter jurisdiction. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "[T]he plaintiff . . . bears the burden of establishing the [] elements [of standing]." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted). Under Article III of the Constitution, federal courts may only resolve "'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). If a plaintiff fails to establish constitutional standing, there is no case or controversy, and the Court must dismiss for lack of subject matter

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

3

CASE NO. 5:25-cv-01047-JGB-SP
COSTAR GROUP'S MEMO. OF POINTS &
AUTHORITIES ISO MOTION TO DISMISS

jurisdiction. *Torres v. United States Dep't of Homeland Sec.*, 411 F. Supp. 3d 1036, 1052 (C.D. Cal. 2019) (Bernal, J.).

**B.    Federal Rule of Civil Procedure 12(b)(6)**

Under Rule 12(b)(6), a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A formulaic recitation of the elements of a cause of action will not do" to survive a motion to dismiss under Rule 12(b)(6). *Twombly*, 550 U.S. at 555. Moreover, the Court may dismiss a claim under Rule 12(b)(6) where a plaintiff pleads facts that undermine or contradict their legal claim. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-989 (9th Cir. 2001) ("A plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts." (citation omitted)).

## IV.    ARGUMENT

**A.    Plaintiffs Lack Standing Under CIPA Because Plaintiffs Fail to Allege a Cognizable Injury**

In a putative class action such as the present case, the "named plaintiffs . . . must allege and show that they personally have been injured." *Spokeo*, 578 U.S. at 338 n.6 (citations and internal quotations marks omitted). "To establish standing for a violation of [S]ection 638.51, [p]laintiff[s] must allege a concrete and particularized injury." *Heiting v. FKA Distrib. Co.*, 2025 WL 736594, Slip. op. at *2 (C.D. Cal. Feb. 3, 2025) (citing *Rodriguez v. Fountain9, Inc.*, 2024 WL 3886811, at *4 (L.A. Super. Ct. July 9, 2024)); *see also TransUnion*, 594 U.S. at 427 ("Only those plaintiffs who have been concretely harmed by a defendant's statutory

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

4

CASE NO. 5:25-cv-01047-JGB-SP
COSTAR GROUP'S MEMO. OF POINTS &
AUTHORITIES ISO MOTION TO DISMISS

violation may sue that private defendant over that violation in federal court."). To satisfy standing requirements, an alleged injury must "not be abstract" and must bear a "close relationship to a harm traditionally recognized" by federal courts. *Id.* at 424 (cleaned up). Moreover, the harm must "affect the plaintiff[s] in a personal and individual way." *Spokeo*, 578 U.S. at 330-31 (citations omitted). In the context of CIPA, violation of the "right to privacy" may "give[] rise to a concrete injury sufficient to confer standing." *Heiting*, 2025 WL 736594, at *2 (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020)).

Plaintiffs fail to demonstrate a concrete or particularized injury as to any, let alone all, individual Plaintiffs. Although Plaintiffs devote pages of the Complaint to describing hypothetical data the Trackers *could* collect, Plaintiffs only specifically allege that their IP addresses were received by the Trackers. Compl. ¶¶ 68, 73, 80, 87. As the California Supreme Court has recognized, IP addresses are necessarily shared in the normal course of internet browsing. *Kleffman v. Vonage Holdings Corp.*, 49 Cal. 4th 334, 337 (2010) (IP addresses are "required to enable one connected computer or network to identify and send information to another connected computer or network"). Thus, the mere receipt of IP addresses is not enough to allege a cognizable injury because internet users do not have an expectation of privacy in their IP addresses. *See Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, Slip op. at *3, 5 (N.D. Cal. June 24, 2025) (dismissing with prejudice a plaintiff's § 638.51 claim for lack of standing where plaintiff alleged that defendant's software collected plaintiff's "IP address or general geographic location" because the plaintiff had "no expectation of privacy as to that type of data"); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1188, 1189-91 (N.D. Cal. 2020) ("There is no legally protected privacy interest in IP addresses alone, which is the only interest plaintiffs concretely allege." (cleaned up)); *Forrester*, 512 F.3d at 510 ("[Internet users] should know that [IP addresses are] provided to and used by Internet service providers for the specific purpose of directing the routing of

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
LOS ANGELES

5

CASE NO. 5:25-cv-01047-JGB-SP
COSTAR GROUP'S MEMO. OF POINTS &
AUTHORITIES ISO MOTION TO DISMISS

information."); *United States v. Acevedo-Lemus*, 2016 WL 4208436, at *4 (C.D. Cal. Aug. 8, 2016) (denying a motion to suppress a search warrant in part because "[i]nternet users do not have reasonable expectations of privacy in their own IP addresses or the IP addresses of the websites they visit"), *aff'd*, *Borges v. Att'y Gen. of United States*, 800 F. App'x 71 (9th Cir. 2020) (citation omitted); *see also Xu v. Reuters News & Media Inc.*, 2025 WL 488501, at *3 (S.D.N.Y. Feb. 13, 2025) (dismissing a CIPA § 638.51 claim where "[t]he Complaint, in sum, alleges only [that the defendant] collected the IP address of [the plaintiff's] device without court authorization—entirely 'divorced from any concrete harm.'" (collecting cases)). Further, by their nature, cookies like those allegedly used by the Trackers do not *collect* IP addresses. Nor do they collect any other form of data. They merely allow the recipient to associate that cookie with the same user.[1]

Plaintiffs otherwise allege, in a wholly conclusory manner, that their "personal information" was collected, but without any indication of what this information was or how it was used. Compl. ¶¶ 68, 73, 80, 87. Such conclusory allegations are insufficient to confer standing to assert a claim under Section 638.51. *See Heiting*, 2025 WL 736594, at *3 (dismissing Section 638.51 claims where plaintiff failed to "allege any basic facts from which the Court could infer a concrete injury, like . . . what information she provided [] or if she has any reason to believe that she was indeed de-anonymized"). At best, Plaintiffs allege that Wallace and D'Antonio experienced some targeted advertising after visiting Homes.com. *See*

---

[1] *See In re Google Inc.*, 806 F.3d 125, 139 n.52 (3rd Cir. 2015) ("Our understanding of the factual position of the defendants is that their cookies operate by adding a unique sequence of letters and/or numbers to any GET request transmitted from the user browser hosting the cookie to the advertiser server that set the cookie. . . . This is consistent with our understanding of the allegations of the plaintiffs. . . ."); *id.* (quoting oral argument on this issue: "The cookie doesn't acquire anything. The cookie doesn't look for anything. It just sits on the browser and gets sent along with information that would otherwise be sent. Maybe it's sort of like a bookmark. Information gets sent anyway every day, all the time. And then a cookie is placed. And thereafter the same information is sent, except that the cookie is there, too. It's unique. It's not personally identifying. It has nothing to do with the actual information that's being sent at that time." (cleaned up)).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

6

CASE NO. 5:25-cv-01047-JGB-SP
COSTAR GROUP'S MEMO. OF POINTS &
AUTHORITIES ISO MOTION TO DISMISS

Compl. ¶¶ 86, 94. But, fatally, Plaintiffs never explain *how* those advertisements were caused by the Trackers. In fact, by Plaintiffs' own admission, Wallace and D'Antonio could not have been injured by the TikTok Pixel or the Trade Desk/Adsrvr. The TikTok Pixel and Trade Desk/Adsrvr were allegedly installed through Apartments.com, which Wallace and D'Antonio never claim to have visited. *Id.* ¶¶ 28, 56, 84, 87, 91, 95. The only remaining Tracker, the LinkedIn Insight Tag, did not plausibly injure Wallace, because she does not allege to have had a LinkedIn account. *See Hughes v. Vivint, Inc.*, 2024 WL 5179916, Slip op. at \*4-5 (C.D. Cal. July 12, 2024) ("[T]he harm Plaintiff claims is having otherwise anonymous data be identified to her through the TikTok Software. . . . If Plaintiff does not have a TikTok account . . . seemingly no harm would have occurred."); *see also* Compl. ¶¶ 50, 53 (describing how the LinkedIn Insight Tag contributes to ads for LinkedIn users).

Plaintiffs' disjointed pleading further undermines the argument that *any* individual Plaintiff was injured. Only Drummer and Rubio are alleged to have had TikTok accounts, Compl. ¶¶ 66, 78, meaning the other three Plaintiffs were not plausibly injured by the TikTok Pixel, *see Hughes*, 2024 WL 5179916, at \*4-5; *see also* Compl. ¶¶ 33, 38-39 (explaining how the TikTok Pixel contributes to ads for TikTok users). Likewise, the LinkedIn Insight Tag could not plausibly have harmed Lee, who did not have a LinkedIn account. *See Hughes*, 2024 WL 5179916, at \*4-5; *see also* Compl. ¶¶ 50, 53 (describing how the LinkedIn Insight Tag contributes to ads for LinkedIn users).

Accordingly, the Complaint should be dismissed in its entirety because Plaintiffs have failed to establish standing.

**B.    The Alleged Receipt of IP Addresses Does Not Render the Trackers Pen Registers Under CIPA**

CIPA defines a "pen register" as a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

7

CASE NO. 5:25-cv-01047-JGB-SP
COSTAR GROUP'S MEMO. OF POINTS &
AUTHORITIES ISO MOTION TO DISMISS

contents of a communication." Cal. Penal Code § 638.50(b). Plaintiffs' Complaint hinges on the argument that the Trackers qualify as "pen registers" because they "capture website visitors' . . . IP addresses [] without their consent or a court order," in violation of Section 638.51. Compl. ¶ 27. Plaintiffs fail to state a claim under Section 638.51; receiving IP addresses identifying the source of the Plaintiffs' communications does not make the Trackers "pen registers" under either the plain text of CIPA or applicable case law. Moreover, extending the definition of a pen register to the software at issue here would effectively criminalize routine internet usage.

### 1.    Pen Registers Only Receive the Destination of Outgoing Information, and IP Addresses Represent the Source of Outgoing Information

A pen register is a device that is traditionally attached to a telephone line to capture the phone numbers dialed by a caller—that is, the destination of outgoing information. *See Smith v. Maryland*, 442 U.S. 735, 736 n.1 (1979); *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 160 n.1 (1977) ("A pen register is a mechanical device that records the numbers dialed on a telephone. . . ."). In enacting CIPA, the California legislature clearly intended to follow this traditional definition of a "pen register." The California Penal Code—which contains Section 638.51—requires that an *ex parte* order authorizing the use of a pen register include "the number and, if known, the physical location of the telephone line to which the pen register . . . is to be attached." *See* Cal. Penal Code § 638.52(d)(3). Consistent with the traditional definition of a pen register, California law thus anticipates that an applicant for a pen register will already know the phone number—that is, the source—of the outgoing communication. The applicant is merely seeking to capture the *destination* of the outgoing calls. *See, e.g.*, Ex. A (California Superior Court Pen Register Application) at 5-6 (requesting to use a pen register to "register numbers dialed or pulsed from the telephone line").[2] IP addresses, by contrast, do not reflect the destination of

---

[2] CoStar has concurrently filed a Request for Judicial Notice of Exhibit A.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

8

CASE NO. 5:25-cv-01047-JGB-SP
COSTAR GROUP'S MEMO. OF POINTS &
AUTHORITIES ISO MOTION TO DISMISS

outgoing information, but rather are "unique address[es]" every internet user has and shares to "enable [another] connected computer [] to identify and send information" to that internet user. *Kleffman*, 49 Cal. 4th at 337; *see also Kremen v. Cohen*, 325 F.3d 1035, 1038 (9th Cir. 2003) ("Each computer that is connected to the Internet has a unique Internet Protocol ('IP') number that functions as a kind of Internet address." (citations omitted)).[3]

Software like the Trackers, which receive *source* information such as IP addresses, therefore do not qualify as a pen register under CIPA. *See Palacios v. Fandom, Inc.*, 2024 WL 5494527, at *3 (L.A. Super. Ct. Sept. 24, 2024) ("The Court concludes that, as alleged, the Accused Code is not a pen register because it does not collect the destination information of communications from Plaintiff's computer."); *see also Sanchez v. Cars.com, Inc.*, 2025 WL 487194, at *3 (L.A. Super. Ct. Jan. 27, 2025) ("Here, the legislative history of the CIPA suggests that 'pen register' . . . refers to devices or processes that are used to record or decode dialing, routing, addressing, or signaling information from telephone numbers, not internet communications such as websites.").[4]

Plaintiffs ignore the well-understood meaning of a pen register and only allege that the Trackers receive the IP addresses from Plaintiffs' own devices—meaning, the *source* of outgoing information associated with the Plaintiffs. *See, e.g.*, Compl. ¶ 3 (alleging the Trackers "capture and disclose CoStar website visitors' internet

---

[3] Tim LaChance, *"IP" so Facto? Not So Fasto: Why IP Addresses Should Not Be Considered PII*, 58 IDEA 303, 305-06 (2018) (IP addresses are an internet equivalent of "house numbers" that tell the mailman where to deliver mail).

[4] *Napear v. Bonneville Int'l Corp.*, 669 F. Supp. 3d 948, 963 n.1 (E.D. Cal. 2023) ("The Ninth Circuit has stated that federal courts 'may consider unpublished state decisions, even though such opinions have no precedential value.'" (citing *Emps. Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003))); *In re ConAgra Foods, Inc.*, 908 F. Supp. 2d 1090, 1113 n.83 (C.D. Cal. 2012) ("Although the court is not bound by unpublished decisions of intermediate state courts, unpublished opinions that are supported by reasoned analysis may be treated as persuasive authority." (citations omitted)).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

9

CASE NO. 5:25-cv-01047-JGB-SP
COSTAR GROUP'S MEMO. OF POINTS &
AUTHORITIES ISO MOTION TO DISMISS

protocol addresses"), ¶ 21 ("The Trackers then cause the browser to send . . . the user's unique IP address."), ¶ 68 (alleging that "the Trackers [] collect . . . personal information, including [Plaintiffs'] IP address[es]"), ¶¶ 73, 80, 87 (same). Because the Trackers receive the source of outgoing information (users' IP addresses) rather than the destination of outgoing information, the Trackers do not qualify as pen registers as a matter of law.

### 2.     IP Addresses Are Not "Personal" Information Under CIPA

The complaint should also be dismissed for the separate and independent reason that Plaintiffs have failed to allege any "personal" information has been tracked. Courts have found tracking software to qualify as a pen register under CIPA where the tracking software collects "rich personal data" that reveal "sensitive and private characteristics of consumers . . . [like] a person's religious affiliation, sexual orientation, and medical condition." *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1047 (S.D. Cal. July 27, 2023).[5] The focus of these courts on "personal" information aligns with the California legislative intent behind enacting CIPA, which was to "prevent[] eavesdropping and other invasions of privacy." *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975) (citing Cal. Penal Code § 630, CIPA's "declaration of legislative finding and intent").

In stark contrast, Plaintiffs here only specifically allege that the Trackers received Plaintiffs' IP addresses. *See, e.g.*, Compl. ¶¶ 68, 73, 80, 87. IP addresses are necessarily communicated with every website a user visits and clearly do not qualify as "rich personal data." *See Rodriguez v. Plivo Inc.*, 2024 WL 5184413, at *2 (L.A. Super. Ct. Oct. 2, 2024) ("Although Plaintiff alleges that the IP address

---

[5] *Greenley* is further distinguishable because the defendant in *Greenley* was a third-party data broker who provided trackers to digital applications to mine data and then sold that data to other third parties. 684 F. Supp. 3d at 1034. By contrast here, CoStar is the operator of a website and does not provide or operate the Trackers. *See Casillas v. Transitions Optical, Inc.*, 2024 WL 4873370, at *7 (L.A. Super. Ct. Sept. 9, 2024) ("[T]he [*Greenley*] defendant [] was a third-party data broker, not a website operator. Because the conduct of the defendant and the relationship to the plaintiff were quite different from the allegations here, *Greenley* does not support Plaintiff's argument.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

10

CASE NO. 5:25-cv-01047-JGB-SP
COSTAR GROUP'S MEMO. OF POINTS &
AUTHORITIES ISO MOTION TO DISMISS

1  could reveal the device's state, city, and zip code, this is not the type of sensitive

2  data to which the *Greenley* court referred.") (citation omitted); *cf. I.C. v. Zynga, Inc.*,

3  600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) (rejecting plaintiff's claim that "basic

4  contact information, including one's email address, phone number, or [] username,

5  is private information. All of this information is designed to be exchanged to

6  facilitate communication."). Any claim by Plaintiffs that the receipt of IP addresses

7  constitutes the collection of "personal data" is foreclosed by the large body of case

8  law holding that there is no privacy interest in IP addresses, which are voluntarily

9  shared as a consequence of normal internet browsing. *See Heeger*, 509 F. Supp. 3d

10  at 1189-91 ("There is no legally protected privacy interest in IP addresses

11  alone. . . ."); *Acevedo-Lemus*, 2016 WL 4208436, at *4 ("Internet users do not have

12  reasonable expectations of privacy in their own IP addresses or the IP addresses of

13  the websites they visit."); *People v. Stipo*, 195 Cal. App. 4th 664, 669 (2011) (same);

14  *see also Forrester*, 512 F.3d at 510 (same).

15  Accordingly, because Plaintiffs allege only that the Trackers received their IP

16  addresses, and because IP addresses are not the type of information that the case law

17  has found (or that the California legislature intended) to be protected under CIPA,

18  the Trackers do not collect information that violates Section 638.51.

19  **3.    Extending CIPA's Protections to the Receipt of IP**
        **Addresses Would Prohibit Routine Internet Usage**

20

21  Under Plaintiffs' proposed theory of liability, IP addresses constitute "routing,

22  addressing, or signaling information" under Section 638.51, and the receipt of IP

23  addresses is actionable as the illegal use of a pen register under CIPA. Compl. ¶ 27.

24  If the Court were to accept such an expansive theory, the results would "potentially

25  disrupt a large swath of internet commerce" by prohibiting basic website browsing.

26  *Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *4 (L.A. Super. Ct. Mar. 13,

27  2024). As explained by the California Supreme Court, the "send[ing]" of IP

28  addresses is required "in order for the Internet to function." *Kleffman*, 49 Cal. 4th at

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

11

CASE NO. 5:25-cv-01047-JGB-SP
COSTAR GROUP'S MEMO. OF POINTS &
AUTHORITIES ISO MOTION TO DISMISS

337. Accordingly, finding an actionable privacy interest in IP addresses exposes virtually every website operator to CIPA liability, because websites "already and necessarily capture [IP addresses] . . . to operate." *Columbia Pictures Indus. v. Bunnell*, 2007 WL 2080419, at *11 (C.D. Cal. May 29, 2007) (finding "Server Log Data" that received "incoming IP addresses" did not violate the Federal Pen Register Statute); *see also United States v. Christie*, 624 F.3d 558, 563 (3d Cir. 2010) ("IP addresses are . . . conveyed to websites that an internet user visits."). Such a result would be patently absurd and dangerously overbroad. The Court should reject Plaintiffs' unsupported and illogical position for this reason as well.

### C. Any Information that Plaintiffs Argue Was Collected Besides IP Addresses Is Not Actionable Under the Plain Text of CIPA

Last, even if Plaintiffs had sufficiently alleged that the Trackers acquired additional forms of information beyond their IP addresses, such as the contents of any communications or geographical information, the plain language of CIPA makes clear that the collection of this information is not actionable under Section 638.51.

**Contents of Communications:** Plaintiffs vaguely claim that the "[c]ollection of IP addresses allows third parties to obtain personally identifying, non-anonymized information." Compl. ¶ 24. Plaintiffs never actually specify what personal information was collected from Plaintiffs but instead describe how the Trackers ***could*** collect data like click choices, purchase decisions, and personal characteristics. *See, e.g.*, Compl. ¶¶ 36-39, 48, 50. Courts have routinely rejected similar attempts to allege CIPA liability based on conjecture. *See, e.g.*, *Heiting*, 2025 WL 736594, at *3 (dismissing a CIPA § 638.51 claim where the plaintiff failed to allege "what information [d]efendant captured [and] if she ha[d] any reason to believe she was indeed de-anonymized"); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123 (S.D. Cal. 2023) (dismissing a CIPA § 631(a) claim where "[p]laintiffs provide[d] an example of a search by a hypothetical patient, [but]

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

12

CASE NO. 5:25-cv-01047-JGB-SP
COSTAR GROUP'S MEMO. OF POINTS &
AUTHORITIES ISO MOTION TO DISMISS

1   fail[ed] to state what information they each provided to Defendant, via their

2   browsing activity, that was subsequently disclosed").

3          Even assuming the Trackers did collect this kind information from

4   Plaintiffs—which is not alleged anywhere in the Complaint—such allegations

5   cannot form the basis of a violation of Section 638.51 because CIPA's definition of

6   a pen register *explicitly excludes devices* that record or decode "the contents of a

7   communication." Cal. Penal Code § 638.50(b). In this context, the "contents of a

8   communication" include the "contents of a phone conversation" or "what was said

9   in [] messages." *Forrester*, 512 F.3d at 510; *see also Saleh v. Nike, Inc.*, 562 F. Supp.

10  3d 503, 517 (C.D. Cal. 2021) ("[T]he term 'contents' refers to the intended message

11  conveyed by the communication. . . ." (citing *In Re Zynga Privacy Litig.*, 750 F.3d

12  1098, 1107 (9th Cir. 2014)) (discussing wiretap claims under CIPA)). In addition,

13  some district courts have found the contents of communications under CIPA to

14  include "information about particular activity conducted" online, including

15  "communications related to [a user's] personal characteristics, mode of living,

16  purchase decisions, personal choices, app selections, spending habits, and click

17  choices." *Greenley*, 684 F. Supp. 3d at 1052. A pen register under Section 638.51,

18  as described above, merely decodes transmitted "dialing, routing, addressing, or

19  signaling information," like the destination of outgoing phone calls, Cal. Penal Code

20  § 638.50(b), and does not intercept the contents of any communications. *See*

21  *Kishnani*, 2025 WL 1745726, at *3-5 & n.3 (holding that TikTok software installed

22  on a third-party website that allegedly "gather[ed] device and browser information,

23  geographic information, referral tracking, and URL tracking" and "scan[ned] every

24  page of the Website visited for additional information about the visitor, such as

25  name, date of birth, and address," was alleged to be collecting the "contents" of

26  communications and thus Section 638.51 did not apply). Accordingly, to the extent

27  Plaintiffs had alleged that any contents of their communications were collected, such

28  a claim would be clearly precluded by the plain language of CIPA.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

13

CASE NO. 5:25-cv-01047-JGB-SP
COSTAR GROUP'S MEMO. OF POINTS &
AUTHORITIES ISO MOTION TO DISMISS

**Geolocation Data:** Plaintiffs also allege that the Trackers, through the receipt of IP addresses, "can [] determine the state, city, and zip code where the device is located at a particular point [and] allow[] third parties . . . to target advertisements towards customers based on their geographic location." Compl. ¶ 24; *see also id.* ¶ 34 (claiming that the TikTok Pixel can "create[e] a comprehensive record of the user's geographic locations"); ¶ 52 (claiming that LinkedIn Insight Tag can "track" user location). Under the California Penal Code, however, "[i]nformation acquired solely pursuant to the authority for a pen register . . . shall not include any information that may disclose the ***physical location*** of the subscriber, except to the extent that the location may be determined from the telephone number." *See* Cal. Penal Code § 638.52(c) (emphasis added). That is, a pen register does not collect geolocation data, so to the extent Plaintiffs allege that the Trackers collect geolocation data to track the physical location of Plaintiffs, such activity does not fall within the ambit of Section 638.51.

As this discussion of the provisions preceding and following Section 638.51 makes plain, the statutory framework was intended to address devices placed on *telephones*—which is why it repeatedly references "telephone calling pattern record[s] or list[s]," "telephone records," and "the telephone number" or "the telephone line to which the pen register or trap and trace device is to be attached." *See, e.g.*, Cal. Penal Code § 638(a) (establishing criminal liability for someone who "purchases, sells, offers to purchase or sell, or conspires to purchase or sell any ***telephone calling pattern record or list***, without the written consent of the subscriber" (emphasis added)); *id.* § 638.52(c) (pen register information does not include information regarding the physical location of the subscriber, "except to the extent that the location may be determined ***from the telephone number***" (emphasis added)); *id.* § 638.52(d)(1), (3) (requiring that a court order specify "in whose name is listed ***the telephone line*** to which the pen register or trap and trace device is to be attached," as well as the "number and, if known, physical location of ***the telephone***

1    *line* to which the pen register or trap and trace device is to be attached" (emphases

2    added)). The Court should reject Plaintiffs' attempt to cherry-pick language from

3    Section 638.51 that, read in isolation, has led some trial courts to mistakenly

4    conclude that the statute applies to software such as the Trackers alleged in the

5    Complaint. Reading the statutory framework holistically, as is required, it is clear

6    that CIPA's provisions on pen registers simply do not cover the conduct Plaintiffs

7    allege here. *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*,

8    484 U.S. 365, 371 (1988) ("Statutory construction, however, is a holistic endeavor.

9    A provision that may seem ambiguous in isolation is often clarified by the remainder

10   of the statutory scheme—because the same terminology is used elsewhere in a

11   context that makes its meaning clear, or because only one of the permissible

12   meanings produces a substantive effect that is compatible with the rest of the law."

13   (citations omitted)).

14   **V.    CONCLUSION**

15          For the reasons stated, CoStar respectfully requests that the Court dismiss

16   the Complaint, and with prejudice, as any amendment would be futile.

17

18          Dated: July 11, 2025                    LATHAM & WATKINS LLP

19                                                  By: /s/ *Michael H. Rubin*

20                                                  Michael H. Rubin
21                                                  505 Montgomery Street, Suite 2000
                                                    San Francisco, CA 94111
22                                                  415-395-0600
                                                    Fax: 415-395-8095
23                                                  Email: michael.rubin@lw.com

24                                                  Alexander C.K. Wyman
                                                    355 South Grand Avenue Suite 100
25                                                  Los Angeles, CA 90071
                                                    213-485-1234
26                                                  Fax: 213-891-8763
                                                    Email: alex.wyman@lw.com

27                                                  Nicholas J. Boyle
28                                                  555 Eleventh Street NW, Suite 1000
                                                    Washington, DC 20004

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

15

CASE NO. 5:25-cv-01047-JGB-SP
COSTAR GROUP'S MEMO. OF POINTS &
AUTHORITIES ISO MOTION TO DISMISS

202-637-2200
Fax: 202-637-2201
Email: nicholas.boyle@lw.com
Admitted Pro Hac Vice

*Attorneys for Defendant CoStar Group, Inc.*

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
LOS ANGELES

16

CASE NO. 5:25-cv-01047-JGB-SP
COSTAR GROUP'S MEMO. OF POINTS &
AUTHORITIES ISO MOTION TO DISMISS

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant CoStar Group, Inc., certifies that this brief contains 5,130 words, which complies with the word limit of L.R. 11-6.1, and is 15 pages long, which complies with Judge Jesus G. Bernal's Standing Order.

Dated:  July 11, 2025                    By:    */s/ Michael H. Rubin*
                                                              Michael H. Rubin

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
LOS ANGELES

17

CASE NO. 5:25-cv-01047-JGB-SP
COSTAR GROUP'S MEMO. OF POINTS &
AUTHORITIES ISO MOTION TO DISMISS