**KAHN SWICK & FOTI, LLC**
Kim E. Miller (SBN 178370)
kim.miller@ksfcounsel.com
1901 Avenue of the Stars, 2nd Floor
Los Angeles, California 90067
Telephone: (504) 455-1400

Melissa H. Harris (admitted *pro hac vice*)
melissa.harris@ksfcounsel.com
1100 Poydras Street, Suite 960
New Orleans, LA 70163
Telephone: (504) 455-1400

[*Additional counsel on signature page*]

*Counsel for Plaintiffs and the Putative Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DYWANNA DRUMMER, et al.,<br>Plaintiffs,<br>v.<br>COSTAR GROUP, INC.<br>Defendant. | Case No. 5:25-cv-01047-JGB-SP<br><br>Hon. Jesus G. Bernal<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT COSTAR GROUP, INC.'S MOTION TO DISMISS**<br><br>Date: October 20, 2025<br>Time: 9:00 a.m.<br>Judge: Hon. Jesus G. Bernal<br>Dept: Riverside, Courtroom 1 |

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii

I. PRELIMINARY STATEMENT ..... 1

II. FACTUAL BACKGROUND ..... 3

A. Defendant's Surreptitious Use of Third-Party Trackers ..... 3

1. TikTok Pixel ..... 4

2. LinkedIn Insight Tag ..... 5

3. The Trade Desk ..... 6

B. Plaintiff-Specific Allegations ..... 6

C. The California Invasion of Privacy Act ..... 7

III. LEGAL STANDARDS ..... 7

IV. ARGUMENT ..... 8

A. Plaintiffs Adequately Plead Injury In Fact ..... 8

B. Defendant's 12(b)(6) Arguments Should Be Rejected ..... 15

1. Section 638.51 Applies to the Trackers ..... 15

2. Plaintiffs' Allegations Are Sufficient to State a Claim ..... 18

3. That the Trackers Collect Information In Addition to IP Addresses Does Not Defeat Plaintiffs' Claims ..... 21

4. Defendant's Public Policy Argument Is Unavailing ..... 23

C. In the Event of Dismissal, Plaintiffs Seek Leave to Amend ..... 25

V. CONCLUSION ..... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 8

*Carrese v. Yes Online Inc.*, No. 2:16-cv-5301, 2016 U.S. Dist. LEXIS 187761 (C.D. Cal. Oct. 13, 2016) .......... 9

*Conohan v. Rad Power Bikes Inc.*, No. 2:25-cv-106, 2025 U.S. Dist. LEXIS 72865 (C.D. Cal. Apr. 3, 2025) .......... *passim*

*Flanagan v. Flanagan*, 27 Cal. 4th 766 (2002) .......... 2

*Greenley v. Kochava, Inc.*, 684 F.Supp. 3d 1024 (S.D. Cal. 2023) .......... *passim*

*Griffith v. Tiktok, Inc.*, 697 F.Supp. 3d 963 (C.D. Cal. Oct. 6, 2023) .......... 25

*Heeger v. Facebook, Inc.*, 509 F.Supp. 3d 1182 (N.D. Cal. Dec. 24. 2020) .......... 14, 21

*Heiting v. Fka Distrib. Co.*, No. 2:24-cv-7314, 2025 U.S. Dist. LEXIS 20076 (C.D. Cal. Feb. 3, 2025) .......... 12, 15

*Heiting v. FKA Distrib. Co.*, No. 2:24-cv-7314, 2025 U.S. Dist. LEXIS 93360 (C.D. Cal. May 15, 2025) .......... 13, 15

*Hughes v. Vivint, Inc.,* No. 2:24-cv-3081, 2024 U.S. Dist. LEXIS 232423 (C.D. Cal. July 12, 2024) .......... 13

*I.C. v. Zynga*, 600 F.Supp. 3d 1034 (N.D. Cal. 2022) .......... 21

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020), *cert. denied*, 2021 U.S. LEXIS 1480 (Mar. 22, 2021) .......... 2, 13

*In re Google RTB Consumer Privacy Litig.*, 606 F.Supp.3d 935-947 (N.D. Cal. 2022) .......... 10

*In re Google, Inc. Gmail Litig.*, No. 13-MD-2430, 2013 U.S. Dist. LEXIS 112784 (N.D. Cal. Sept. 26, 2013) .......... 9

*In re Meta Pixel Tax Filing Cases*, No. 5:22-cv-7557, 2025 U.S. Dist. LEXIS 152615 (N.D. Cal. Aug. 6, 2025) ....................23

*In re Zynga Privacy Litig.*, 750 F.3d 1098 (9th Cir. 2014)....................5, 22

*Javier v. Assurance IQ, LLC*, 649 F.Supp. 3d 891 (N.D. Cal. 2023)....................24

*Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 U.S. App. LEXIS 14951 (9th Cir. May 31, 2022) ....................16

*Keskinen v. Lush Handmade Cosmetics LLC*, 770 F.Supp. 3d 1234 (C.D. Cal. 2025), *reconsid. denied*, 2025 U.S. Dist. LEXIS 141784 (June 24, 2025)....................9

*Kishnani v. Royal Caribbean Cruises Ltd.*, No. 5:25-cv-1473, 2025 U.S. Dist. LEXIS 120002 (N.D. Cal. June 24, 2025) .................... 14, 22

*Kishnani v. Royal Caribbean Cruises, Ltd.*, No. 25-4452 (9th Cir. filed July 18, 2025). ....................14

*Lesh v. CNN, Inc.*, 767 F.Supp. 3d 33 (S.D.N.Y. 2025).................... 14, 19

*Linea v. Cinmar LLC*, 659 F.Supp. 3d 1096 (C.D. Cal. 2023)....................9

*Lopez v. RHP Enter., Inc.*, No. 5:20-cv-58, 2020 U.S. Dist. LEXIS 123078 (C.D. Cal. Apr. 15, 2020) ....................8, 25

*Matera v. Google Inc.*, No. 5:15-cv-4062, 2016 U.S. Dist. LEXIS 107918 (N.D. Cal. Aug. 12, 2016) ....................2, 16

*Mirmalek v. L.A. Times Communs, LLC*, No. 3:24-cv-1797, 2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024) .................... *passim*

*Moody v. C2 Educ. Sys.*, 742 F.Supp. 3d 1072 (C.D. Cal. July 25, 2024) ...... *passim*

*Palacios v. Fandom, Inc.*, No. 24STCV11264, 2024 Cal. Super. LEXIS 61790 (L.A. Super. Ct. Sept. 24, 2024)....................17

*People v. Stipo*, 195 Cal. App. 4th 664 (2011) ....................21

*R.C. v. Sussex Publrs., LLC*, No. 3:24-cv-2609, 2025 U.S. Dist. LEXIS 59491 (N.D. Cal. Mar. 28, 2025) ....................9

*Ribas v. Clark*, 38 Cal. 3d 355 (1985) ....................16

*Riganian v. LiveRamp Holdings, Inc.*, No. 3:25-cv-824, 2025 U.S. Dist. LEXIS 138122 (N.D. Cal. July 18, 2025) .................... 18, 22

*Rodriguez v. Plivo*, No. 24STCV08972, 2024 Cal. Super. LEXIS 66496 (L.A. Super. Ct. Oct. 2, 2024) .................... 20

*Saleh v. Nike, Inc.*, 562 F.Supp. 3d 503 (C.D. Cal. 2021) .................... 20, 22

*Sanchez v. Cars.Com Inc.*, No. 24STCV13201, 2025 Cal. Super. LEXIS 710 (L.A. Super. Ct. Jan. 27, 2025) .................... 17

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) .................... 15

*Shah v. Fandom, Inc.*, 754 F.Supp. 3d 924 (N.D. Cal. 2024) .................... *passim*

*TransUnion LLC v. Ramirez*, 114 S. Ct. 2190 (2021) .................... 8

*U.S. v. Acevedo-Lemus*, No. SACR 15-137, 2016 U.S. Dist. LEXIS 105195 (C.D. Cal. Aug. 8, 2016) .................... 14, 21

*U.S. v. Forrester*, 512 F.3d 510 (9th Cir. 2008) .................... 14, 21

*Xu v. Reuters News & Media Inc.*, No. 1:24-cv-2466, 2025 U.S. Dist. LEXIS 26013 (S.D.N.Y. Feb. 13, 2025) .................... 14

*Zarif v. Hwareh.com, Inc.*, No. 3:23-cv-565, 2025 U.S. Dist. LEXIS 26519 (S.D. Cal. Feb. 13, 2025) .................... 17, 22

*Zelaya v. Hill*, No. 2:22-cv-8311, 2025 U.S. Dist. LEXIS 118042 (C.D. Cal. May 7, 2025) .................... 17

**Statutes**

CAL. CIV. CODE §1798.140 .................... 11

CAL. PENAL CODE §630 .................... 7

CAL. PENAL CODE §631(a) .................... 16

CAL. PENAL CODE §637 .................... 16

CAL. PENAL CODE §638(a) .................... 18

CAL. PENAL CODE §638.50 .................... *passim*

CAL. PENAL CODE §638.51 .......... *passim*

CAL. PENAL CODE §638.52 .......... 18, 23

**Rules**

FED. R. CIV. P. 12(b)(1).......... 8

FED. R. CIV. P. 12(b)(6).......... 8, 15, 23

FED. R. CIV. P. 15(a).......... 25

## I. PRELIMINARY STATEMENT

Using covert trackers to collect and share users' personal information with third parties for marketing, advertising, and analytics purposes, is not a "basic function[] of the internet." MTD at 1.[1] Rather, it is an express violation of California's Invasion of Privacy Act ("CIPA"), CAL. PENAL CODE §638.51. While Defendant CoStar Group, Inc. ("Defendant" or "CoStar") tries to downplay its tracking practices as "the routine receipt of IP addresses incidental to the operation of a website" (*id.*), what Plaintiffs allege is far more insidious: CoStar has installed Trackers on its Websites that — without users' consent or a court order — (i) collect and share *with third parties* users' internet protocol ("IP") addresses, browsing, and device information; and (ii) identify users' devices and track users' locations, browsing habits, and website activities, across websites and browsing sessions, for analytic and advertising purposes. ¶¶19-64. While CoStar raises several (meritless) legal arguments, it does not dispute how the Trackers operate or that it installed them on its Websites without consent or a court order.

CoStar's challenges to Plaintiffs' standing fail. It is well-established that CIPA "codified a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing." *In re Facebook, Inc. Internet Tracking*

[1] References to: the Complaint are indicated as "¶_," Defendant's motion to dismiss ("Motion") are indicated as "MTD at __," Plaintiffs' exhibits are indicated as "Pls' Ex. _," and Defendant's exhibits are indicated as "Def. Ex. __."

*Litig.*, 956 F.3d 589, 598 (9th Cir. 2020), *cert. denied*, 2021 U.S. LEXIS 1480 (Mar. 22, 2021). CoStar's repeated refrain that IP addresses are not protected under CIPA is not only wrong, but Plaintiffs plead more than "mere receipt of IP addresses," and standing has been found based on substantially similar allegations, including within this District. *See*, *e.g.*, *Conohan v. Rad Power Bikes Inc.*, No. 2:25-cv-106, 2025 U.S. Dist. LEXIS 72865, at *15-16 (C.D. Cal. Apr. 3, 2025) (allegations that TikTok Tracker collects "device and browser information, geographic information, referral tracking, and url tracking," "collects as much data as it can . . . and matches it with existing data" about users "more than sufficient to demonstrate standing").

CoStar's strained interpretation of §638.51 as applying only to telephones conflicts with the statute's expansive language and the California Supreme Court's instruction "to interpret CIPA in the manner that 'fulfills [its] legislative purpose . . . by giving greater protection to privacy interests.'" *Matera v. Google Inc.*, No. 5:15-cv-4062, 2016 U.S. Dist. LEXIS 107918, at *60 (N.D. Cal. Aug. 12, 2016) (citing *Flanagan v. Flanagan*, 27 Cal. 4th 766, 775 (2002)). Not surprisingly, CoStar's position has been rejected by every federal court to consider it. Further, Plaintiffs' allegations plausibly state a §638.51 claim, as numerous courts have held. *See*, *e.g.*, *Conohan*, 2025 U.S. Dist. LEXIS 72865, at *2-3, 16-18; *Moody v. C2 Educ. Sys.*, 742 F.Supp. 3d 1072, 1077 (C.D. Cal. July 25, 2024).

Finally, CoStar's policy argument is baseless. Applying §638.51 to Trackers

does nothing to "prohibit[ ] basic website browsing." MTD at 11. While an internet user may need to share their IP address to access a website, nothing requires that website to share the user's personal information with third parties for advertising (or any other) purpose and track that user "for the Internet to function." *Id.* (citation omitted). Moreover, CoStar could readily comply with the statute by obtaining users' prior consent. At any rate, this is a matter for "the Legislature, not the courts." *Conohan*, 2025 U.S. Dist. LEXIS 72865, at *17-18 (citation omitted).

The Court should deny CoStar's Motion in full.

## II. FACTUAL BACKGROUND

### A. <u>Defendant's Surreptitious Use of Third-Party Trackers</u>

CoStar provides real estate information, analytics, and marketing services to the commercial property industry in North America and Europe, and owns and operates several real estate websites, including Apartments.com and Homes.com (the "Websites"). ¶19. Unbeknownst to users, CoStar has installed trackers on its Websites — TikTok Pixel, LinkedIn Insight Tag, and The Trade Desk (collectively, the "Trackers") — for analytical, marketing, and targeted advertising purposes. ¶¶2-3, 19-25. The Trackers all work in the same basic way: When a user visits a Website, his or her browser sends an "HTTP" or "GET" request to CoStar's server, which responds with an "HTTP response" instructing the browser how to load the Website content and causing the Trackers to be installed on the browser. ¶20. The Trackers

then cause the browser to send them the user's IP address,[2] device and browser information, and other information detailed below, and store "cookies"[3] in the user's browser. ¶21. On subsequent visit(s), the Trackers locate the cookie identifier and cause the browser to again send them the same information. ¶22.

### 1. <u>TikTok Pixel</u>

TikTok, one of the most popular social media networks in the world, offers "tools that allow businesses to share marketing data with [TikTok] for measurement and ad performance," including TikTok Pixel, which is a piece of code that measures website traffic, optimizes ad campaigns, and finds new customers. ¶¶29-30. CoStar has installed TikTok Pixel on Apartments.com. ¶28. TikTok Pixel collects the following data from Website users through placement of the "_ttp" cookie on their browsers: Website actions they have taken; IP address; "device and browser information; cookies; and "Metadata & "Button Clicks." ¶¶33-36. The _ttp cookie persists for 13 months, allowing TikTok to track users across multiple browsing

---

[2] An IP address is a unique numerical identifier expressed as four sets of numbers separated by periods. ¶24. The first two sets identify the device's network, and the second sets identify the specific device. *Id.* IP addresses contain geographical location information and can be used to determine the state, city, and zip code where a device is located. *Id.* Collection of IP addresses allows third parties to obtain personally identifying, non-anonymized information. *Id.*

[3] Cookies are computer files that are automatically generated when a user visits a website, comprised of strings of numbers and letters unique to each browser, thereby functioning as a digital "fingerprint." ¶23. Cookies remain on a browser for a certain period of time (depending on the type), unless and until the user clears them, in which case the next time a user visits the Website(s) the process will repeat. ¶22 n.2.

sessions. ¶32. Further, TikTok Pixel "fingerprints" each Website user (whether or not they have a TikTok account), by collecting their IP address and associating it with any existing _ttp cookie on their browser. ¶34. This allows TikTok to link multiple IP addresses to the same user over time, creating a comprehensive record of their locations and Website activities, and to share with CoStar their approximate location and identity. *Id.* If a user is logged in to TikTok, the data can be linked to their TikTok profile. ¶38. In addition, through Advanced Auto Matching, TikTok Pixel captures any form data inputted by users. ¶¶39, 41.

**2. <u>LinkedIn Insight Tag</u>**

LinkedIn is a social media network used to find jobs and strengthen professional connections. ¶44. LinkedIn offers a variety of advertising and marketing tools, including the Insight Tag, which is a snippet of code that "can help [websites] optimize [their] campaigns, retarget [their] website visitors, and learn more about [their] audiences." ¶¶45-46. CoStar has installed the Insight Tag on Apartments.com and Homes.com. ¶43. The Insight tag captures the following data from all Website users (whether LinkedIn users or not) through placement of the "bcookie" on their browsers: URL; "buttons clicked;" referrer;[4] IP address; device and browser characteristics; and timestamp. ¶¶47-48, 51. The bcookie persists for

[4] "Referrer" is "the webpage from which the [HTTP] request was sent." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1102 (9th Cir. 2014) (citation omitted).

about one year, allowing LinkedIn to identify and track devices across multiple websites and browsing sessions and create detailed profiles based on location and browsing habits. ¶¶51-52. The Insight Tag can also "match [] website visitors to their respective LinkedIn member accounts" to "unlock powerful demographic insights about [them], including their job titles, companies, industries, and more." ¶50.

### 3. <u>The Trade Desk</u>

The Trade Desk is a digital advertising platform that collects and processes data from user interactions with websites. ¶¶57-58. CoStar has installed The Trade Desk on Apartments.com. ¶56. Through placement of the "TDID" cookie on Website users' browsers, The Trade Desk collects the following data: unique cookie and device advertising identifiers; IP addresses; users' interests; browser, device, demographic and location information; ads shown; and hashed (encrypted) email addresses. ¶¶59-60. This enables The Trade Desk to "recognize web browsers across sites and over time," "measure and increase the effectiveness of ad campaigns," and "deliver advertising based on users' interests and behavior." ¶¶61-62, 64.

## B. <u>Plaintiff-Specific Allegations</u>

Plaintiffs are California residents who visited either Apartments.com or Homes.com during the relevant time period. ¶¶9-13, 65, 72, 77, 84, 91. Plaintiffs Drummer and Rubio have both TikTok and LinkedIn accounts, and Plaintiff

D'Antonio has a LinkedIn account.[5] ¶¶66, 67, 78, 79, 93. During Plaintiffs' Website visit(s), CoStar caused one or more Trackers to be installed on their browsers without their knowledge or consent and without a court order. ¶¶68-71, 73-76, 80-83, 87-90, 95-98. Because the information collected by the Trackers has significant monetary value, Plaintiffs suffered economic injury as a result. ¶26.

### C. The California Invasion of Privacy Act

Recognizing that "the development of new devices and techniques for the purpose of eavesdropping upon private communications . . . has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society," the California Legislature enacted CIPA in 1967. CAL. PENAL CODE §630; ¶15. CIPA prohibits, *inter alia*, "install[ing] or us[ing] a pen register ... without first obtaining a court order." CAL. PENAL CODE §638.51. Because the Trackers are "devices or processes" that capture Website users' "routing, addressing, or signaling information" (IP addresses) without their consent or a court order, they are illegal "pen registers." ¶27; CAL. PENAL CODE §638.50.

## III. LEGAL STANDARDS

Standing requires: (i) injury in fact that is concrete, particularized, and actual

[5] Defendant attempts to sow confusion, labeling Plaintiffs' allegations "disjointed" because some Plaintiffs used Apartments.com or Homes.com but not both, and only some Plaintiffs had TikTok or LinkedIn accounts. MTD at 3, 7. But Plaintiffs allege that at least one Tracker was installed on the Website that he or she visited, and that the Trackers collect personal information from all Website users, whether or not they were TikTok or LinkedIn users. ¶¶3, 19-25, 34, 51, 68, 73, 80, 95.

or imminent; (ii) likely caused by defendant; and (iii) likely to be redressed by judicial relief. *See Greenley v. Kochava, Inc.*, 684 F.Supp. 3d 1024, 1036 (S.D. Cal. 2023) (citing *TransUnion LLC v. Ramirez*, 114 S. Ct. 2190, 2203 (2021)).[6] Because Defendant facially attacks standing, the Court must accept Plaintiffs' factual allegations as true. *See Lopez v. RHP Enter., Inc.*, No. 5:20-cv-58, 2020 U.S. Dist. LEXIS 123078, at *2 (C.D. Cal. Apr. 15, 2020) (Bernal, J.) (citation omitted).

"To survive a [12(b)(6)] motion to dismiss, a plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Iqbal*, 556 U.S. at 578). The "[C]ourt must accept all material allegations in the complaint – as well as any reasonable inferences to be drawn from them – as true and construe them in the light most favorable to the non-moving party." *Id.* (citations omitted).

## IV. ARGUMENT

### A. Plaintiffs Adequately Plead Injury In Fact

As the Ninth Circuit has explained, CIPA "codified a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing." *Facebook*, 956 F.3d at 598. "Federal district courts have consistently

[6] Defendant only challenges the first element of standing ("injury in fact").

found that 'violations of plaintiffs' statutory rights under CIPA, *even without more*, constitute injury in fact because instead of a bare technical violation of a statute, a CIPA violation involves a violation of privacy rights.'" *Conohan*, 2025 U.S. Dist. LEXIS 72865, at *14 (citing *Linea v. Cinmar LLC*, 659 F.Supp. 3d 1096, 1103 (C.D. Cal. 2023)) (emphasis added);[7] *R.C. v. Sussex Publrs., LLC*, No. 3:24-cv-2609, 2025 U.S. Dist. LEXIS 59491, at *9-10 (N.D. Cal. Mar. 28, 2025) ("[C]ourts have held IP address collection for targeted advertisement, creates a concrete injury-in-fact."). Thus, "[a]ll Plaintiffs need to allege is an invasion of statutory CIPA rights to survive a motion to dismiss on standing grounds." *In re Google, Inc. Gmail Litig.*, No. 13-MD-2430, 2013 U.S. Dist. LEXIS 112784, at *67 (N.D. Cal. Sept. 26, 2013). Plaintiffs do so, alleging Defendant installed pen registers on their browsers without their consent or a court order. *See supra* at §II, *infra* at §IV.B; *Mirmalek v. L.A. Times Communs, LLC*, No. 3:24-cv-1797, 2024 U.S. Dist. LEXIS 227378, at *6 (N.D. Cal. Dec. 12, 2024) (stating elements of §638.51 claim).

Nevertheless, Defendant argues Plaintiffs lack standing because "mere receipt of IP addresses is not enough to allege a cognizable injury" and their allegations are "conclusory" and "hypothetical." MTD at 5-7. Not so. Plaintiffs concretely allege

[7] *Accord Keskinen v. Lush Handmade Cosmetics LLC*, 770 F.Supp. 3d 1234, 1244 (C.D. Cal. 2025), *reconsid. denied*, 2025 U.S. Dist. LEXIS 141784 (June 24, 2025) ("[A] violation of a privacy right protected by California law is sufficient injury for standing purposes."); *Carrese v. Yes Online Inc.*, No. 2:16-cv-5301, 2016 U.S. Dist. LEXIS 187761, at *14 (C.D. Cal. Oct. 13, 2016) (alleged CIPA violation " sufficient to confer standing without any independent allegation of injury") (citation omitted).

that during their visit(s) to the Websites, Defendant installed the Tracker(s) on their browsers without their knowledge or consent, and that the Trackers collect financially-valuable personal information, *including, but not limited to, IP addresses*, enabling them to persistently identify devices, track users across multiple websites and browsing sessions, and create detailed records of their locations, browsing habits, and website activities — which helps Defendant target advertising based on users' locations, interests, and behavior. *See supra* at §II.A; ¶¶19-64.

Contrary to Defendant's position, IP addresses — which can be used to determine users' locations, deliver targeted advertisements, track and create comprehensive records of users' internet activity, and allow third parties to obtain personally identifying, non-anonymized information (¶¶24, 32-34, 52, 60) — are personal information in which consumers have a privacy interest. *See Shah v. Fandom, Inc.*, 754 F.Supp. 3d 924, 932 (N.D. Cal. 2024) (holding plaintiffs had privacy interest in "IP addresses [which] reveal geographical location and other personal information"); *In re Google RTB Consumer Privacy Litig.*, 606 F.Supp.3d 935, 946-947 (N.D. Cal. 2022) (selling and sharing of "sensitive personal information such as plaintiff's IP address," which is "personal information under California law," without consent, supported a reasonable expectation of privacy).[8]

[8] Indeed, recently-enacted California laws protect consumers' IP addresses. *See* Electronic Communications Privacy Act, CAL. PENAL CODE §1546(d), (h), 1546.1(a)(1), (b)) (2012) (internet service providers cannot be compelled to disclose users' IP addresses without a warrant); Consumer Privacy Act, CAL. CIV. CODE

Moreover, courts find §638.51 standing based on allegations substantially similar to Plaintiffs', even where plaintiffs alleged (as Defendant wrongly claims Plaintiffs do) "the mere receipt of IP addresses." In *Moody*, the court found allegations that the TikTok Tracker collects "device and browser information, geographic information, and history" were not "vague and conclusory" because "[p]laintiff describes multiple data points that the TikTok Software allegedly captures," and there was "no credible dispute" as to plaintiff's standing. 742 F.Supp. 3d at 1077. In *Conohan*, similar allegations of how the TikTok Tracker collects "device and browser information, geographic information, referral tracking, and url tracking," "collects as much data as it can . . . and matches it with existing data" about users, and "scans every website for information" were "more than sufficient to demonstrate standing." 2025 U.S. Dist. LEXIS 72865, at *15-16. Similarly, in *Shah*, 754 F.Supp. 3d at 932, the court found standing where "collection of [plaintiffs'] IP addresses through the Trackers allowed the third parties to obtain 'personally identifying, non-anonymized information,'" and "IP addresses reveal geographical location and other personal information sufficient for third parties to conduct targeted advertising." Just like in *Shah*, "Plaintiffs have plausibly alleged that they were injured by being tracked across multiple visits for marketing and

§1798.140(v)(1)(A) (2020) (protecting "personal information," defined as "information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household, including Internet Protocol addresses").

advertising purposes, and that they did not expect or agree to such tracking." *Id.*

In *Mirmalek*, standing was found with allegations that "Trackers 'receive[] a user's IP address . . . every time a user interacts with the website" and defendant "injured [plaintiff] by 'caus[ing] [her] IP address to be disclosed to unconsented-to third parties . . . to serve targeted advertisements and conduct website analytics." 2024 U.S. Dist. LEXIS 227378, at *12-13 (citing *Shah*, 754 F.Supp. 3d at 932); *see also Gabrielli*, 2025 U.S. Dist. LEXIS 133836, at *16-17 (collection of browser history, website interactions, user input data, demographic and device information, and interests and preferences: "[A]llegations that [defendant] deprived [plaintiff] control of personal information regarding his digital activity and profile are sufficient to establish a concrete injury to his right to privacy and confer standing."); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 940 (N.D. Cal. 2023) (defendant "amass[ed] vast amounts of personal data for the purpose of identifying individuals and aggregating their many identifiers" for advertising; standing found); *Greenley*, 684 F. Supp. 3d at 1038 (defendant "use[d] and disseminat[ed] [ ] [plaintiff's] personal information … for its own monetary benefit"; standing found).

Defendant's cited cases (MTD at 4-7) are readily distinguishable or omit subsequent history favorable to Plaintiffs. In *Heiting v. Fka Distrib. Co.*, No. 2:24-cv-7314, 2025 U.S. Dist. LEXIS 20076, at *6-7 (C.D. Cal. Feb. 3, 2025), plaintiff "fail[ed] to allege any basis facts from which the Court could infer a concrete injury,"

including "when and how many times she visited the site, what information she provided, what information [d]efendant captured, whether she was aware of [the] tracking practices, or if she has any reason to believe that she was indeed anonymized." Notably, after the complaint was dismissed without prejudice, the court upheld plaintiff's amended complaint (which Defendant ignores):

> Plaintiff now alleges that she visited the website on March 4, 2024[,] [when] . . . [d]efendant operated the TikTok software, which 'collects information [device and browser information, geographic information, referral tracking, and URL tracking] automatically on everyone who visits the Website[.]". . . Plaintiff's SAC now alleges that the software effectively de-anonymizes the website user and has collected tracking information on her irrespective of her lack of a TikTok account . . . . Plaintiff's allegations suffice to establish a concrete injury. . . .

2025 U.S. Dist. LEXIS 93360, at *6-7 (May 15, 2025) (citing *Moody*, 742 F.Supp. 3d at 1078; *Facebook*, 956 F.3d at 598-99)) (brackets in original). Plaintiffs' allegations here are substantially similar. *Hughes v. Vivint, Inc.,* No. 2:24-cv-3081, 2024 U.S. Dist. LEXIS 232423, at *11 (C.D. Cal. July 12, 2024) is also easily distinguishable, as the plaintiff, unlike Plaintiffs here, "d[id] not allege any of the basic facts concerning her interaction with the Website, including when she visited it and what occurred during her visit," and agreed the collected information was

"anonymous." *Id.* at 15-16. Next, *Heeger v. Facebook, Inc.*, 509 F.Supp. 3d 1182, 1188 (N.D. Cal. Dec. 24. 2020), is inapplicable because the complaint did not allege disclosures to third-parties and "allege[d] only that Facebook collected plaintiffs' IP addresses and even then, only when they were using the Facebook app or were visiting Facebook's website." Defendant's citations to *U.S. v. Acevedo-Lemus*, No. SACR 15-137, 2016 U.S. Dist. LEXIS 105195 (C.D. Cal. Aug. 8, 2016), and *U.S. v. Forrester*, 512 F.3d 510 (9th Cir. 2008), are even further afield, as they are criminal cases involving the Fourth Amendment, which "have no bearing on whether an individual has standing to sue under CIPA, as CIPA provides protection beyond the floor set by the Fourth Amendment." *Lesh v. CNN, Inc.*, 767 F.Supp. 3d 33, 39 (S.D.N.Y. 2025); *see also Greenley*, 684 F.Supp. 3d at 1051 (rejecting application of criminal cases to CIPA analysis). And Plaintiffs submit that *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 5:25-cv-1473, 2025 U.S. Dist. LEXIS 120002 (N.D. Cal. June 24, 2025), which Defendant neglected to mention is currently on appeal,[9] and *Xu v. Reuters News & Media Inc.*, No. 1:24-cv-2466, 2025 U.S. Dist. LEXIS 26013 (S.D.N.Y. Feb. 13, 2025), were wrongly decided and are against the overwhelming weight of authority cited above.

Finally, the fact that only two Plaintiffs allegedly received targeted ads (MTD at 6-7) is irrelevant because, as set forth above, no showing of additional injury is

[9] *Kishnani v. Royal Caribbean Cruises, Ltd.*, No. 25-4452 (9th Cir. filed July 18, 2025).

required. Indeed, the cases cited above by Plaintiffs did not involve allegations that the plaintiffs had *actually* received targeted ads. *See Gabrielli*, 2025 U.S. Dist. LEXIS 133836, at *16-17; *Heiting*, 2025 U.S. Dist. LEXIS 93360, at *5; *Conohan*, 2025 U.S. Dist. LEXIS 72865, at *15-16; *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *11-13; *Shah*, 754 F.Supp. 3d at 927, 932; *Moody*, 742 F.Supp. 3d at 1078.

### B. Defendant's 12(b)(6) Arguments Should Be Rejected

On this motion, the Court must determine whether Plaintiffs adequately allege the Trackers are "pen registers," installed by Defendant, without a court order. *See Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *6.[10] Plaintiffs do so.

#### 1. Section 638.51 Applies to the Trackers

Defendant's position that Trackers are not pen registers because they receive "*source*" and not "*destination*" information – *i.e.*, that §638.51 applies only to telephones (MTD at 8, 14-15) has been rejected by every federal court to address it.

"[T]he Court's analysis must begin with the statutory text, and if that text is clear, must end there." *Shah*, 754 F.Supp. 3d at 929 (citing *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009)). "Nothing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register." *Id.*[11] Indeed, had the legislature "intended for 'pen register' to

---

[10] Defendant does not dispute the allegations that it "installed" the Trackers or that it did not have a court order to do so. *See* ¶¶68, 71, 73, 76, 80, 83, 87, 90, 95, 98.

[11] *See also Heiting*, 2025 U.S. Dist. LEXIS 20076, at *8 n.3 ("neither section 638.50 nor section 638.51 makes reference to telephone lines").

be limited to telephone technologies, they knew how to do so – as evidenced by other sections of CIPA where they imposed such limitations." *Gabrielli*, 2025 U.S. Dist. LEXIS 133836, at *30 (citing CAL. PENAL CODE §§631(a), 637.7)). Further, "the Court cannot ignore the expansive language" in §638.51, which "is specific as to the type of data" collected, "but [] is vague and inclusive as to the form of collection tool - 'a device or process.'" *Greenley*, 684 F.Supp. 3d at 1050. Thus, "courts should focus less on the form of the data collector and more on the result . . . . A process can take many forms." *Id.* Indeed, "California courts do not read California statutes as limit[ed] . . . to the traditional technologies or models in place at the time the statutes were enacted," and the California Supreme Court has "repeatedly held that other provisions of CIPA are not limited to the traditional versions of the tools at issue . . . ." *Shah*, 754 F.Supp. 3d at 930 (citation omitted); *see also Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 U.S. App. LEXIS 14951, at *3 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, [CIPA] applies to Internet communications."); *Matera*, 2016 U.S. Dist. LEXIS 107918, at *60-61 ("[W]hen faced with two possible interpretations . . . the California Supreme Court has construed CIPA in accordance with the interpretation that provides the greatest privacy protection.") (citing *Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985)).

For these reasons, courts overwhelmingly reject Defendant's position. In *Shah*, for example, the court found a tracker is "'at least a process' because it is

'software that identifies consumers, gathers data, and correlates that data.'" 754 F.Supp. 3d at 928 (citing *Greenley*, 684 F.Supp. 3d at 1050). *Shah* rejected the argument that the tracker was not a pen register because it only collected the *sender's* IP address: "By the plain meaning of §638.50(b), collection of the recipient phone number or IP address is not a required element." *Id.* at 929-30; *see also Conohan*, 2025 U.S. Dist. LEXIS 72865, at *16 ("[A]llegations that the Tik Tok Software is embedded in the Website and collects information from visitors plausibly fall within the scope of §§638.50 and 638.51.") (citing *Moody*, 742 F.Supp. 3d at 1076); *Zarif v. Hwareh.com, Inc.*, No. 3:23-cv-565, 2025 U.S. Dist. LEXIS 26519, at *30 (S.D. Cal. Feb. 13, 2025) (tracker covered by §638.51) (citing *Greenley*, 684 F.Supp 3d at 1050); *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *6-10 (same).

Defendant's cited cases — *Palacios v. Fandom*, *Inc.*, No. 24STCV11264, 2024 Cal. Super. LEXIS 61790 (L.A. Super. Ct. Sept. 24, 2024) and *Sanchez v. Cars.Com Inc.*, No. 24STCV13201, 2025 Cal. Super. LEXIS 710 (L.A. Super. Ct. Jan. 27, 2025) (MTD at 9) — "have no precedential value" as unpublished trial court decisions and are not "persuasive" because they are "not supported by reasoned analysis." *Zelaya v. Hill*, No. 2:22-cv-8311, 2025 U.S. Dist. LEXIS 118042, at *23 n.7 (C.D. Cal. May 7, 2025) (citations omitted); *see Shah*, 754 F.Supp. 3d at 930 n.2 (rejecting *Palacios* for relying on legislative materials that "merely describe[d] traditional telephone-based pen registers as being among the 'variety of electronic

tools' used by law enforcement"); *Riganian v. LiveRamp Holdings, Inc.*, No. 3:25-cv-824, 2025 U.S. Dist. LEXIS 138122, at *36 (N.D. Cal. July 18, 2025) ("disagree[ing] with" *Sanchez* because it "focused its analysis on the legislative history of the CIPA rather than on the expansive, plain language of Section 638.50"). And §638.52 (MTD at 8, 14), which governs pen register applications by peace officers, "merely lists requirements relating to a particular type of pen register: one that is installed on a telephone line . . . . [it] does not alter the statutory definition of a pen register stated in §638.50(b))." *Shah*, 754 F.Supp. 3d at 930.[12]

**2. Plaintiffs' Allegations Are Sufficient to State a Claim**

Defendant argues "there is no privacy interest in IP addresses" and Plaintiffs have failed to allege any 'personal' information has been tracked." MTD at 10-11. These arguments are easily refuted. First, there ***is*** a privacy interest in IP addresses. *See supra* at §IV.A. Second, Plaintiffs allege not only their IP addresses were collected, but their IP addresses, browsing, and device information were collected and ***shared with third parties***, who track them across websites and devices, building profiles for targeted advertising. *See supra* §IV.A; ¶¶21-25, 32-42, 46-55, 59-64.

Numerous cases have upheld §638.51 claims with substantially similar allegations. For example, in *Conohan*, allegations that the TikTok Tracker "gathers

[12] *See also Moody*, 742 F.Supp. 3d at 1077 ("Though §638.52 refers to . . . telephone lines, the definitions set forth under §638.50 do not state any such requirement."). Thus, Def. Ex. A does not bolster Defendant's position. And Defendant's citation to §638(a) (MTD at 14), relating to telephone calling pattern records, is unhelpful.

device and browser information, geographic information, referral tracking, and URL tracking," "collects as much data as it can . . . and matches it with existing data" about website users, and "scans every website for information" for "marketing and surveillance purposes," adequately stated a claim. 2025 U.S. Dist. LEXIS 72865, at *2-3, 16-18; *see also Lesh*, 767 F.Supp. 3d at 37-38, 44 (upholding claim of collection and sharing of IP addresses for targeted advertising); *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *2, 8-13 (allegations that trackers collected and shared IP addresses for marketing purposes sufficient); *Shah*, 754 F.Supp. 3d at 927-33 (claim adequately pled based on trackers' collection of IP addresses for advertising purposes); *Moody*, 742 F.Supp. 3d at 1077 (allegations that TikTok Tracker collects device, browser, and geographic information, referrer, and URL tracking sufficient); *Greenley*, 684 F.Supp. 3d at 1035, 1050-51 (allegations that software collected geolocation data, advertisement clicks, search terms, activities, and IP addresses,[13] "'fingerprint[ed] each unique device and user, as well as "connect[ed] users across devices and devices across users," sufficient).

Defendant's attempts to distinguish *Greenley* fail. *Greenley* did not hold that in order to be a pen register, software must collect "'rich personal data' that reveal 'sensitive and personal characteristics . . . [like] a person's religious affiliation,

[13] While not clear from the opinion, the *Greenley* complaint alleges collection of IP addresses. *See* No. 22-cv-1327, ECF No. 10 (Nov. 21, 2022), at ¶¶65-67, 77 (Pl. Ex. A).

sexual orientation, and medical condition." MTD at 10. The language quoted by Defendant was in the context of discussing a California Constitutional privacy claim, which has a different and much higher standard: a "'sufficiently serious' invasion of privacy 'to constitute an egregious breach of the social norms underlying the privacy right." *Greenley*, 684 F.Supp. 3d at 1046-47 (citation omitted).[14] And Defendant does not explain why the *Greenley* defendant being a third-party data broker is relevant; like here, the improperly-collected information was used for advertising and analytics purposes without users' consent, the "information amassed [by the Trackers] [is] revealing, and the method [] secretive." *Id.* at 1047. Further, §638.51 penalizes those who "install or use" pen registers, which Defendant allegedly did.

Defendant's other cited cases (MTD at 10-11) are distinguishable. *Casillas v. Transitions Optical, Inc.*, No. 23STCVV30724, 2024 Cal. Super. LEXIS 68029, at *4-5 (L.A. Super. Ct. Apr. 23, 2024), did not analyze *Greenley* in depth, distinguishing it simply because "defendant was a data broker," and sustained the demurrer because "the Complaint ma[de] inappropriate and conclusory legal arguments" and allege[d] few ultimate facts." *Rodriguez v. Plivo*, No. 24STCV08972, 2024 Cal. Super. LEXIS 66496, at *1, 4-5 (L.A. Super. Ct. Oct. 2, 2024) — another unpublished trial court decision — simply relied on the "rich

[14] This distinction is why, for example, the court in *Saleh v. Nike, Inc.*, 562 F.Supp. 3d 503, 521-25 (C.D. Cal. 2021), dismissed a state constitutional invasion of privacy claim but upheld a CIPA §631 claim.

personal data" language in *Greenley* and thus is not persuasive authority, especially because the motion to dismiss was unopposed. In *I.C. v. Zynga*, 600 F.Supp. 3d 1034, 1049 & n.7 (N.D. Cal. 2022), plaintiffs alleged only "basic contact information" was disclosed, the court did not address whether plaintiffs had a privacy interest in IP addresses, and the claims arose out of a one-time data breach —patently different from the ongoing and pervasive collection and tracking alleged here. *Heeger* did not involve §638.51 claims or allegations of disclosures to third-parties, and "plausibly allege[d] *only* that Facebook collected plaintiffs' IP addresses and even then, *only* when they were using the Facebook app or were visiting Facebook's website." 509 F.Supp. 3d at 1187-88 (emphases added). By contrast, Plaintiffs here allege "the collection of their IP addresses through the Trackers allows the third parties to obtain 'personally identifying, non-anonymized information,' and the IP addresses reveal geographical location and other personal information sufficient for third parties to conduct targeted advertising." *Shah*, 754 F.Supp. 3d at 932. *Heeger* also cited Fourth Amendment cases which, as noted above, are inapposite.[15]

### 3. <u>That the Trackers Collect Information In Addition to IP Addresses Does Not Defeat Plaintiffs' Claims</u>

Defendant argues any allegations the Trackers acquired "additional forms of information beyond their IP addresses, such as the contents of any communications

[15] The remaining (criminal) cases cited by Defendant — *Acevedo-Lemus*, *Forrester*, and *People v. Stipo*, 195 Cal. App. 4th 664 (2011) — are also not applicable.

or geographical information," are not actionable under §683.51. MTD at 12. But Plaintiffs do not allege the collection of "contents," defined as "the intended message conveyed by the communication, [which] does not include record information regarding the characteristics of the message that is generated in the course of the communication." *Saleh*, 562 F.Supp. 3d at 517 (citing *Zynga*, 750 F.3d at 1107).[16] Indeed, courts find technology collecting the same information alleged here to be pen registers. *See, e.g.*, *Riganian*, 2025 U.S. Dist. LEXIS 138122, at *4-9 (cookies, browsing history, URLs, website activities); *Gabrielli*, 2025 U.S. Dist. LEXIS 133836, at *16 (browsing history, website interactions, user inputs, demographic information, URLs); *Conohan*, 2025 U.S. Dist. LEXIS 72865, at *2 (device and browser information, geolocation, referrer, URL); *Zarif*, 2025 U.S. Dist. LEXIS 26519, at *18-20, 30-31 (search terms, browsing history, keystrokes); *Moody*, 742 F.Supp. 3d at 1074-75 (device and browser information, geolocation, referrer, URL, form data).[17] Defendant's cited cases (MTD at 13) are unhelpful, as *Greenley* ***denied*** the motion to dismiss, and *Kishnani* (an outlier currently on appeal) relied on an

[16] *See also* ¶113 ("IP addresses constitute routing and addressing information and do not reveal the contents of the communications between users and the Websites."); *Zynga*, 750 F.3d at 1197 ("IP addresses 'constitute addressing information and do not necessarily reveal any more about the underlying contents of communication than do phone numbers.'" (citation omitted).

[17] *Moody* also found that because "the browser and device data plausibly fall within the scope of the statute, the Court need not determine whether the form data also falls within the scope of the statute, as even if [it] did constitute 'contents' beyond the scope of §§638.50 and 638.51, a defendant may not dismiss only a portion of a claim under Rule 12(b)(6)." 742 F.Supp. 3d at 1075 (citation omitted).

unpublished trial court decision. 2025 U.S. Dist. LEXIS 120002, at *9-10.

At any rate, Defendant's position that technology that *also* records contents cannot be a pen register (and is only subject to §631's eavesdropping provisions) was rejected last month in *In re Meta Pixel Tax Filing Cases*, No. 5:22-cv-7557, 2025 U.S. Dist. LEXIS 152615 (N.D. Cal. Aug. 6, 2025). As the court noted, §638.51 "is ambiguous . . . and does not . . . clarify whether it establishes two entirely nonoverlapping zones of regulation. . . ." *Id.* at *14-15. "Given CIPA's purpose to protect Californians' privacy," it was "highly unlikely that the Legislature intended to permit the installation and use of pen registers so long as those devices also record the contents of a third party's communications," and therefore the court held that §638.51 excludes a device or process that "records *only* 'the contents of communications.'" *Id.* at *16, 19 (emphasis added).

As for "geographical" information, as discussed above, the statute cited by Defendant (§638.52(c) (MTD at 14)) "does not alter the statutory definition of a pen register stated in §638.50(b)). *Shah*, 754 F.Supp. 3d at 930. Further, numerous cases have upheld §638.51 claims where "geolocation" or "geographic" data was allegedly collected. *See*, *e.g.*, *Conohan*, 2025 U.S. Dist. LEXIS 72865, at *7; *Gabrielli*, 2025 U.S. Dist. LEXIS 133836, at *3; *Moody*, 742 F.Supp. 3d at 1075.

**4. <u>Defendant's Public Policy Argument Is Unavailing</u>**

Defendant's claim that applying §638.51 to the Trackers would "effectively

criminalize routine internet usage" and "'potentially disrupt a large swath of internet commerce' by prohibiting basic website browsing" (MTD at 8, 11) is baseless. While it may be necessary for a user to send their IP address to a website in order to load that website's content, the covert collection and ***sharing*** of consumers' IP addresses, browsing, and device information with third parties, and the ***tracking*** of consumers and their devices across the internet, certainly are not "required 'in order for the Internet to function" or necessary to facilitate "basic website browsing." MTD at 11 (citation omitted). Rather, it was Defendant's business decision to violate its users' privacy rights for profit. Moreover, Defendant could comply with §638.51 simply by obtaining users' consent. *See Javier v. Assurance IQ, LLC*, 649 F.Supp. 3d 891, 900 (N.D. Cal. 2023) ("The acquisition of consent when visiting websites (for the collection of cookies, for example) is a regular occurrence and hardly particularly "technologically impractical."). At any rate, this is for the legislature:

> The Court's task is to interpret the law as the Legislature wrote it. The pen register statute is broadly written, and under California law, is to be interpreted broadly to protect privacy and to be applied to new techniques and technologies. That statute reflects the Legislature's judgment that an individual's consent is required before others may track certain addressing information in their electronic communications for non-law enforcement purposes. To the extent that [defendant]

> believes the statute may impose too many burdens when applied to the realities of modern technologies, and that it is too unwieldy to obtain users' consent . . . the question of whether the statute's scope should be narrowed ultimately rests with the Legislature, not the courts.

*Conohan*, 2025 U.S. Dist. LEXIS 72865, at *17-18 (citing *Shah*, 754 F.Supp. 3d at 932-33).

**C. <u>In the Event of Dismissal, Plaintiffs Seek Leave to Amend</u>**

"Leave to amend 'shall be freely given when justice so requires,'" *Lopez*, 2020 U.S. Dist. LEXIS 123078, at *5 (citing FED. R. CIV. P. 15(a)), and "should be granted 'unless . . . the pleading could not possibly be cured by the allegation of other facts.'" *Id.* (citations omitted); *see also Griffith v. Tiktok, Inc.*, 697 F.Supp. 3d 963, 979 (C.D. Cal. Oct. 6, 2023) (granting leave where, like here, case was "at an early stage. Plaintiff has not previously amended . . . and Defendants . . . have not shown that amendment would necessarily be futile"). Thus, if the Court grants the Motion, Plaintiffs respectfully request leave to amend.

## V. CONCLUSION

Defendant's Motion to Dismiss should be denied in its entirety.

Dated: September 4, 2025

**KAHN SWICK & FOTI, LLC**

*/s/ Kim E. Miller*
Kim E. Miller (SBN 178370)
kim.miller@ksfcounsel.com
1901 Avenue of the Stars, 2nd Floor
Los Angeles, California 90067
Telephone: (504) 455-1400

Melissa H. Harris (admitted *pro hac vice*)
melissa.harris@ksfcounsel.com
1100 Poydras Street, Suite 960
New Orleans, LA 70163
Telephone: (504) 455-1400

**DON BIVENS PLLC**
Don Bivens (admitted *pro hac vice*)
don@donbivens.com
15169 N. Scottsdale Road, Suite 205
Scottsdale, AZ 85254
Telephone: (602) 762-2661

*Counsel for Plaintiffs and the Putative Class*

**LOCAL RULE 11-6.1 CERTIFICATION**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,300 words, which complies with the word limit of L.R. 11-6.1.

*/s/ Kim E. Miller*
Kim E. Miller