LATHAM & WATKINS LLP
Michael H. Rubin (Bar No. 214636)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
415-391-0600
Fax: 415-395-8095
Email: michael.rubin@lw.com

Alexander C.K. Wyman (Bar No. 295339)
355 South Grand Avenue Suite 400
Los Angeles, CA 90071
213-485-1234
Fax: 213-891-8763
Email: alex.wyman@lw.com

Nicholas J. Boyle
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
202-637-2200
Fax: 202-637-2201
Email: nicholas.boyle@lw.com
*Admitted Pro Hac Vice*

*Attorneys for Defendant*
*CoStar Group, Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DYWANNA DRUMMER, ANTHONY D'ANTONIO, SCHALISE LEE, CYNTHIA RUBIO, and MARY LEE WALLACE, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

COSTAR GROUP, INC.,

Defendant.

Case No. 5:25-CV-01047-JGB-SP

**DEFENDANT COSTAR GROUP, INC.'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS**

Date: October 20, 2025
Time: 9:00 AM PST
Judge: Hon. Jesus G. Bernal
Dept.: Riverside, Courtroom 1

# TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. Plaintiffs Lack Standing Under CIPA Because Plaintiffs Fail to Allege a Cognizable Injury ..... 1

B. Plaintiffs Fail to Plead a Cognizable Claim Under Section 638.51 ..... 5

1. Plaintiffs Fail to Rebut that the Receipt of IP Addresses Does Not Constitute a Violation of Section 638.51. ..... 5

2. Plaintiffs' Barebones Allegations Fail to Demonstrate That Any Personal Information Was Captured by the Trackers ..... 6

3. Allegations that the Trackers Collect the Contents of a Communication Do Not Support a Section 638.51 Claim ..... 8

4. Plaintiffs Cannot Avoid the Dangerously Absurd Results of Their Section 638.51 Claim ..... 10

C. Because Plaintiffs Fundamentally Misinterpret Section 638.51, the Court Should Deny Leave to Amend ..... 11

III. CONCLUSION ..... 11

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aviles v. Liveramp, Inc.*,
2025 WL 487196 (Cal. Super. Ct. Jan. 28, 2025) .......... 5, 6

*Aydin Corp. v. Loral Corp.*,
718 F.2d 897 (9th Cir. 1983) .......... 5

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) .......... 1, 2

*Casillas v. Transitions Optical, Inc.*,
2024 WL 4873370 (Cal. Super. Ct. Sept. 9, 2024) .......... 5, 8

*Conohan v. Rad Power Bikes Inc.*,
2025 WL 1111246 (C.D. Cal. Apr. 3, 2025) .......... 4, 7, 9

*Deivaprakash v. Condé Nast Digit.*,
2025 WL 2541952 (N.D. Cal. Sept. 4, 2025) .......... 4

*Gabrielli v. Motorola Mobility LLC*,
2025 WL 1939957 (N.D. Cal. July 14, 2025) .......... 4, 9

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. July 27, 2023) .......... 6, 7, 8, 9

*Gutierrez v. Converse Inc.*,
2025 WL 1895315 (9th Cir. July 9, 2025) .......... 8

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) .......... 3, 5

*Hughes v. Vivint*,
2024 WL 5179916 (N.D. Cal. July 12, 2024) .......... 3, 4

*In re ConAgra Foods, Inc.*,
908 F. Supp. 2d 1090 (C.D. Cal. 2012) .......... 5

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 2, 9

*In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935 (N.D. Cal. June 13, 2022) .......... 4

*In re Meta Pixel Tax Filing Cases*, 2025 WL 2243615 at *6 .......... 9

*Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. Apr. 6, 2023) .......... 4

*Khamooshi v. Politico LLC*, 2025 WL 1408896 (N.D. Cal. May 13, 2025) .......... 2, 3, 5

*Kishnani*, 2025 WL 1745726 at *3-5 & n.3 .......... 9

*Kleffman v. Vonage Holdings Corp.*, 49 Cal. 4th 334 (2010) .......... 6

*Lesh v. Cable News Network, Inc.*, 767 F. Supp. 3d 33 (S.D.N.Y. 2025) .......... 7

*Licea v. Hickory Farms LLC*, 2024 WL 1698147 (Cal. Super. Ct. Mar. 13, 2024) .......... 5, 10

*Matera v. Google Inc.*, 2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) .......... 6

*Mikulsky v. Noom, Inc.*, 2024 WL 251171 (S.D. Cal. Jan. 22, 2024) .......... 3

*Mitchener*, 2025 WL 2272413, at *5-6 .......... 11

*Moody v. C2 Educ. Sys., Inc.*, No. 2:24-cv-04249 .......... 4, 9

*Olympic Sports Prods., Inc. v. Universal Athletic Sales Co.*, 760 F.2d 910 (9th Cir. 1985) .......... 5

*Palacios v. Fandom, Inc.*, 2024 WL 5494527 (Cal. Super. Ct. Sept. 24, 2024) .......... 5, 6

*R.C. v. Sussex Publrs., LLC*, 2025 WL 948060 (N.D. Cal. Mar. 28, 2025) .......... 4

*Riganian v. LiveRamp Holdings, Inc.*, 2025 WL 2021802 (N.D. Cal. July 18, 2025) .......... 7, 8

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) ........................................ 5

*Sanchez v. Cars.com, Inc.*,
2025 WL 487194 (Cal. Super. Ct. Jan. 27, 2025) ........................................ 5

*Smith v. Maryland*,
442 U.S. 735 (1979) ........................................ 6

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) ........................................ 1

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ........................................ 3, 5

*United States v. N.Y. Tel. Co.*,
434 U.S. 159 (1977) ........................................ 6

*Vishal Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. Oct. 21, 2024) ........................................ 6, 7, 9

*Zarif*, 2025 WL 486317, at *7 ........................................ 9

## STATUTES

Cal. Civ. Code § 1798.99.80 ........................................ 7

Cal. Penal Code
§ 630 ........................................ 5
§ 631(a) ........................................ 8
§ 638(a) ........................................ 10
§ 638.50 ........................................ 8, 9
§ 638.51 ........................................ *passim*
§ 638.52(c) ........................................ 10
§ 638.52(d)(1) ........................................ 10
§ 638.52(d)(3) ........................................ 10

## I. INTRODUCTION

Plaintiffs' Opposition suffers from the same fundamental fatal flaw as Plaintiffs' Complaint: it attempts to recast normal internet usage as a violation of Section 638.51 of the California Invasion of Privacy Act ("CIPA"). In doing so, Plaintiffs ask the Court to extend Section 638.51 beyond its historical, legal, textual, and logical bounds to criminalize the mere receipt of IP addresses.

None of Plaintiffs' arguments save their Section 638.51 claims. ***First***, recent decisions in the evolving body of case law on CIPA have only further clarified that internet users have no expectation of privacy in their IP addresses, which dooms Plaintiffs' ability to establish standing. ***Second***, Plaintiffs' allegations do not amount to a Section 638.51 claim. The information purportedly "collected" by the so-called Trackers is not prohibited under this section. Plaintiffs' expansive definition of a pen register, were it accepted, would halt fundamental functions of the internet and lead to absurd results. The Court should grant CoStar's Motion and dismiss the case without leave to amend.

## II. ARGUMENT

### A. Plaintiffs Lack Standing Under CIPA Because Plaintiffs Fail to Allege a Cognizable Injury.

Plaintiffs devote a significant portion of their Opposition attempting to establish standing. Each attempt fails.

First, Plaintiffs rely on outdated case law to claim that any violation of CIPA necessarily constitutes an injury in fact without the need for an additional showing of harm. They are wrong: "this approach is at odds with the Supreme Court's recent instruction that 'under Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court.'" *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021)). Courts in this Circuit

have followed *Byars* in its interpretation of the application of the Supreme Court's standing requirements in this context. *See Khamooshi v. Politico LLC*, 2025 WL 1408896, *4 (N.D. Cal. May 13, 2025) ("[T]he Court agrees with those decisions holding that *TransUnion* precludes standing where plaintiffs fail to allege a concrete injury, even if they have asserted a violation of CIPA.") (citing cases). Ignoring this binding Supreme Court precedent, Plaintiffs instead rely on a case that predates *TransUnion*, namely, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598–99 (9th Cir. 2020). *See* Opp'n at 1–2.

But even there, the allegations in *In re Facebook* so starkly differ from those here that it only shows how lacking Plaintiffs' case is. There, the plaintiffs "alleged that Facebook continued to collect their data after they had logged off the social media platform, in order to receive and compile their personally identifiable browsing history," and that "Facebook's tracking practices allow it to amass a great degree of personalized information" including "an individual's likes, dislikes, interests, and habits over a significant amount of time." *In re Facebook*, 956 F.3d at 598–99. In contrast to *In re Facebook* and similar to *Byars*, Plaintiffs here do not allege any behavior even remotely similar by CoStar (nor could they), nor the disclosure of any specific personal information that would implicate a protectable privacy interest. *Byars*, 2023 WL 2996686 at *3–4.

Second, Plaintiffs' disjointed allegations further undermine that each Plaintiff suffered a cognizable injury. Plaintiffs allege that only some of them had TikTok or LinkedIn accounts, and fail even to allege that each one of them visited both Websites. Opp'n at 7 n.5. But the entire premise of the supposed injury in Plaintiffs' Complaint is that information that may be collected from the Trackers could permit a third party to link a website visitor to the user's respective LinkedIn member account, or to link devices each time a TikTok user logs into their account on different devices. *See* Opp'n at 6; Compl. at 33. Although this supposed "linking" could not amount to a sufficient injury here, it is not even plausible for those

Plaintiffs without accounts on those sites, as courts addressing similar claims have recognized. *See Hughes v. Vivint*, 2024 WL 5179916, at *5 (N.D. Cal. July 12, 2024) (plaintiff did not allege injury because she "fail[ed] to allege that she has a TikTok account that would allow Defendant's collection of her anonymous information from visiting the Website to be associated with her and identify her").[1]

Third, Plaintiffs fail to identify any actionable information allegedly obtained by CoStar that could create a cognizable injury to Plaintiffs. At most, Plaintiffs make vague and conclusory allegations that CoStar receives "financially-valuable personal information, *including, but not limited to, IP addresses*." Opp'n at 10. But a "plaintiff must identify the specific personal information she disclosed that implicates a protectible privacy interest to survive a motion to dismiss." *Mikulsky v. Noom, Inc.*, 2024 WL 251171, at *4 (S.D. Cal. Jan. 22, 2024) ("conclusory allegations that [the defendant] collected [the plaintiff's] 'personal information'—without specifying the type of information—could not establish that she suffered a concrete harm"). And the only specific information that Plaintiffs allege was obtained—their IP addresses—does not implicate a protectible privacy interest because "there is no legally protected privacy interest in IP addresses." *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020); *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) ("Internet users have no expectation of privacy in . . . the IP addresses of the websites they visit . . . ."); *Khamooshi v. Politico LLC*, 2025 WL 1408896, at *3 (N.D. Cal. May 13, 2025) ("[T]he only specific category of information that Plaintiffs identify is the category of IP addresses for their devices. Plaintiffs also allege that Defendant disclosed their browser and device data and other identifying information but fail to provide any more detail. Those allegations are too vague to assert a protectable privacy interest." (cleaned up)).

[1] Plaintiffs misread *Hughes* in claiming that the plaintiff there agreed the collected information was anonymous. Opp'n at 13. This was a determination made by the court. *See Hughes*, 2024 WL 5179916, at *5.

Plaintiffs mischaracterize the case law they cite in claiming that the collection of IP addresses alone is sufficient to confer standing. Indeed, the cases Plaintiffs cite all involve allegations either that the defendant collected sensitive personal information,[2] that a tracker actually sent users' information beyond a mere IP address to a third party that would allow the third party to "isolate with certainty the individual to be targeted,"[3] or that the defendant in fact compiled personalized information about the plaintiffs at issue—rather than simply having the hypothetical capability to do so, which is all Plaintiffs allege here.[4] None of these cases hold that allegations of a defendant receiving nothing more than a plaintiff's IP address—which is all Plaintiffs allege—are sufficient to confer standing.

---

[2] *See R.C. v. Sussex Publrs., LLC*, 2025 WL 948060, at *1 (N.D. Cal. Mar. 28, 2025) (alleging defendant collected information such as "specific medical or mental health symptoms and concerns," "type of care or treatment," "gender, ethnicity, and faith preferences," "city or zip code where the user is seeking therapy sessions," "health insurance provider," and "mental health providers viewed and/or contacted"); *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 939 (N.D. Cal. June 13, 2022) ("Google also provides the specific content of account holders' internet communications and highly detailed personal profile information about peoples' interests, race, religion, sexual orientation, and health status"); *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957 , at *1 (N.D. Cal. July 14, 2025) (alleging defendant collected "detailed information about users' activity on the website, including their browsing history, user inputs, demographic information, shopping behavior, referring URLs, session information, IP addresses, geolocation data, and device information"); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 935–36 (N.D. Cal. Apr. 6, 2023) (alleging that defendant conducted "vast data accumulation" to create "a single, universal view of identity for each user" to develop insights "along dimensions such as life events (e.g., marriage), education, purchase history, or even health and wellness").

[3] *See Moody v. C2 Educ. Sys., Inc.*, No. 2:24-cv-04249, Compl. ¶¶ 12–13 (C.D. Cal. May 2, 2024) (alleging that the tracker sent user information to TikTok to "isolate with certainty the individual to be targeted" and "sen[t] to TikTok images of website user's interests"); *Conohan v. Rad Power Bikes Inc.*, 2025 WL 1111246, at *6 (C.D. Cal. Apr. 3, 2025) (alleging that the "TikTok [tracker] can isolate with certainty the individual to be targeted").

[4] *See Deivaprakash v. Condé Nast Digit.*, 2025 WL 2541952 , at *1, *4 (N.D. Cal. Sept. 4, 2025) (alleging both that "third parties compile[d] comprehensive profiles reflecting the users' geographic locations, incomes, and preferences, among other characteristics," and that "the third parties did so with respect to [the plaintiff]"); *cf. Hughes*, 2024 WL 5179916, at *4–5 (finding that the complaint "does not sufficiently explain what information of Plaintiff's was captured, only what information could be captured"; "As Plaintiff does not clearly allege what personalized information of hers was actually collected, she does not identify any harm to her privacy.").

### B. Plaintiffs Fail to Plead a Cognizable Claim Under Section 638.51.

#### 1. Plaintiffs Fail to Rebut that the Receipt of IP Addresses Does Not Constitute a Violation of Section 638.51.

Plaintiffs selectively cite inapposite case law to claim that CoStar's position, that the Trackers are not pen registers, has "been rejected by every federal court to address it."[5] Opp'n at 15. Plaintiffs' argument fails.

Plaintiffs ask the Court to ignore and disregard relevant state court decisions reaching similar conclusions simply because they are unfavorable to Plaintiffs' position. Opp'n at 17. But as Plaintiffs acknowledge, unpublished decisions by intermediate state courts may serve as "persuasive authority." *Id.*; *see also In re ConAgra Foods, Inc.*, 908 F. Supp. 2d 1090, 1113 n.83 (C.D. Cal. 2012). And federal courts are "bound" to follow California state court decisions when interpreting California law. *See, e.g.*, *Olympic Sports Prods., Inc. v. Universal Athletic Sales Co.*, 760 F.2d 910, 912–13 (9th Cir. 1985) (citing *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 904 (9th Cir. 1983)). The rejection of Plaintiffs' arguments by multiple California courts in recent months is therefore persuasive authority that this Court should consider in evaluating Plaintiffs' claim that these "Trackers" qualify as pen registers under Section 638.51. *See, e.g.*, *Sanchez v. Cars.com, Inc.*, 2025 WL 487194, at *3–4 (Cal. Super. Ct. Jan. 27, 2025) (dismissing a Section 638.51 claim premised on the collection of IP addresses); *Palacios v. Fandom, Inc.*, 2024 WL 5494527, at *3 (Cal. Super. Ct. Sept. 24, 2024) (same); *Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *4 (Cal. Super. Ct. Mar. 13, 2024) (same); *Aviles v. Liveramp, Inc.*, 2025 WL 487196, at *2 (Cal. Super. Ct. Jan. 28, 2025) (same); *Casillas v.*

---

[5] Contrary to Plaintiffs' arguments, federal courts have routinely held that a website's receipt of IP addresses—which is all Plaintiffs allege the Trackers do in this case—is not a violation of CIPA because there is no privacy interest in IP addresses. *See Heeger*, 509 F. Supp. 3d at 1189; *Forrester*, 512 F.3d at 510; *Khamooshi*, 2025 WL 1408896, at *3. Thus, the alleged receipt of IP addresses cannot implicate CIPA's purpose, which is to "prevent[] eavesdropping and other ***invasions of privacy***." *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975) (citing Cal. Penal Code § 630) (emphasis added).

*Transitions Optical, Inc.*, 2024 WL 4873370, at *7 (Cal. Super. Ct. Sept. 9, 2024) (same). Plaintiffs ask the Court to ignore these cases and rely instead on federal cases (many of which pre-date these state decisions) that attempt to predict the "California courts' approach when applying [CIPA] to new technologies." *Vishal Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 930 (N.D. Cal. Oct. 21, 2024); *see also Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. July 27, 2023); *Matera v. Google Inc.*, 2016 WL 5339806, at *14 (N.D. Cal. Sept. 23, 2016). No prediction is necessary; the growing body of California case law rejects Plaintiffs' argument that the collection of IP addresses constitutes a violation of Section 638.51.

Moreover, these decisions make sense. IP addresses are voluntarily shared any time an internet user visits a website as part of the basic functioning of the Internet. *See Kleffman v. Vonage Holdings Corp.*, 49 Cal. 4th 334, 337 (2010). The increasing number of courts that have rejected Plaintiffs' position have recognized that the California legislature did not intend to criminalize a device that simply receives internet users' freely disclosed IP addresses. And Plaintiffs' position that the receipt of such IP addresses qualifies the device as a pen register is in direct conflict with the function of traditional pen registers, which only collect *outgoing* telephone numbers. *Smith v. Maryland*, 442 U.S. 735, 736 n.1 (1979); *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 160 n.1 (1977). "The analog of the number dialed by a telephone. . . is the IP address and related information of a website accessed by a computer – but not the computer's own IP address," as alleged here. *Palacios*, 2024 WL 5494527, at *3; *Liveramp*, 2025 WL 487196, at *2 (same).

### 2. Plaintiffs' Barebones Allegations Fail to Demonstrate That Any Personal Information Was Captured by the Trackers.

Unable to establish that the sole fact they allege—the receipt of IP addresses—constitutes a CIPA violation, Plaintiffs grasp at straws to claim that the Complaint alleges the collection of additional personal information. In their Opposition, Plaintiffs seek to compare their allegations to those in cases involving the collection

of extensive, deanonymized information such as names, birthdates, and addresses. *See* Opp'n at 18–20 (citing *Conohan*, 2025 WL 1111246 at *6 (involving software that "scan[ned] [] for information, such as name, date of birth, and address [to] isolate with certainty the individual to be targeted"); *Lesh v. Cable News Network, Inc.*, 767 F. Supp. 3d 33, 38 (S.D.N.Y. 2025) (plaintiff's "specific coordinates" were collected); *Shah*, 754 F. Supp. 3d at 927–33 (alleging plaintiffs' geographic locations were collected with "a level of specificity" to "personally identify individuals as well as specific households and businesses")). This is wrong and implausible here.

Plaintiffs rely particularly on *Greenley*. *See* Opp'n at 16–17, 18–19. *Greenley*, however, involved the alleged collection of "rich personal data" that could be "easily deanonymized" to "reveal, for instance, a person's religious affiliation, sexual orientation, and medical condition," none of which Plaintiffs allege here. 684 F. Supp. 3d at 1047. To downplay these stark differences, Plaintiffs mischaracterize the court's findings in *Greenley* by arguing that the collection of "rich personal data" was relevant only to the court's analysis of the California Invasion of Privacy claims. *See* Opp'n at 18. Yet the court's reasoning on the Section 638.51 claim in *Greenley* focused squarely on the named plaintiff's allegation that the software at issue "identifies consumers, gathers data, and correlates that data through unique 'fingerprinting.'" 684 F. Supp. 3d at 1050. *Greenley* is also distinguishable because the case involved a data broker,[6] which California law defines as a "business that knowingly collects and sells to third parties the personal information of a consumer with whom the business does not have a direct relationship." Cal. Civ. Code § 1798.99.80. Plaintiffs also cite other cases involving data brokers. *See Riganian v. LiveRamp Holdings, Inc.*, 2025 WL 2021802, at *1 (N.D. Cal. July 18, 2025).

---

[6] The plaintiffs' complaint in *Greenley* alleged that the defendant data broker provided a kit to software application developers that was coded for data collection. The developers in turn allowed the defendant to "surreptitiously intercept location data" from an application user, and then the defendant packaged that data to sell to its clients for advertising purposes. *Greenley*, 684 F. Supp. 3d at 1045.

Plaintiffs' Complaint, by contrast, is "hopelessly vague" as to CoStar's "specific conduct," and does not involve a defendant who deanonymizes information for profit. *Casillas*, 2024 WL 4873370 at *7.

Unlike these cases Plaintiffs rely on, the Complaint only alleges that the Trackers received Plaintiffs' IP addresses, which Plaintiffs freely shared. *See* Compl. ¶¶ 68, 73, 80, 87. That is not enough to survive a motion to dismiss.

### 3. Allegations that the Trackers Collect the Contents of a Communication Do Not Support a Section 638.51 Claim.

Plaintiffs vaguely allege the personal information they say the Trackers hypothetically ***could*** collect, including click choices, purchase decisions, and personal characteristics. Such hypothetical allegations are insufficient under Ninth Circuit law. As the Ninth Circuit recently made clear in a case involving wiretapping claims under Section 631(a) of CIPA, hypothetical allegations of what a tracker *could* collect are insufficient; a plaintiff asserting CIPA claims under Section 631(a) must present concrete evidence that a third-party provider actually intercepted, read, or attempted to read the contents of communications, not merely that interception was possible. *Gutierrez v. Converse Inc.*, 2025 WL 1895315, at *1 (9th Cir. July 9, 2025). *See, e.g.*, Compl. ¶¶ 36–39, 48, 50. Even if the Trackers actually collected this information—which Plaintiffs do not allege—such conduct would not be actionable under Section 638.51 because CIPA's definition of a pen register explicitly excludes the "contents of a communication." Cal. Penal Code § 638.50. As explained in CoStar's Motion, courts have found similar information to be the "contents of a communication" because it is "information about particular activity conducted" online. *See* Mot. at 13 (citing *Greenley*, 684 F. Supp. 3d at 1052).

In opposition, Plaintiffs claim that courts have found technology collecting the same information alleged by Plaintiffs to be pen registers. Opp'n at 22. Yet the cases Plaintiffs cite do not address whether the information Plaintiffs allege here constitute "contents of a communication." *See generally Riganian*, 2025 WL

2021802 at *11–12; *Gabrielli*, 2025 WL 1939957 at *11–12; *Conohan*, 2025 WL 1111246 at *6; *Moody*, 742 F. Supp. 3d at 1077 ("[T]he Court need not determine whether the form data also falls within the scope of the statute [] even if the form data did constitute 'contents' beyond the scope of §§ 638.50 and 638.51.").[7] Those that do address this issue support CoStar's position, not Plaintiffs'. In *Zarif*, for example, the court held that search terms, mouse clicks, and keystrokes constitute the "contents of a communication." *See* 2025 WL 486317, at *7 (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 605 (9th Cir. 2020) (finding that search "terms and the resulting URLs could divulge a user's personal interests, queries, and habits")). Similarly, the court in *Greenley* held that "communications related to [] personal characteristics, mode of living, purchase decisions, [] app selections, spending habits, and click choices" are the "contents" of a communication under CIPA. 684 F. Supp. 3d at 1052; *see also Kishnani*, 2025 WL 1745726 at *3–5 & n.3 (rejecting a Section 638.51 claim because the tracker that "gather[ed] device and browser information, geographic information, referral tracking, and URL tracking" was collecting the "contents" of communications).[8]

Likewise, to combat CoStar's arguments that the collection of geolocation data falls outside the scope of Section 638.51, Plaintiffs cite cases that do not actually address (let alone refute) CoStar's argument. *See* Opp'n at 23 (citing *Shah*, 754 F. Supp. 3d at 930; *Conohan*, 2025 WL 1111246, at *6; *Gabrielli*, 2025 WL 1939957, at *11–12; *Moody*, 742 F. Supp. 3d at 1075).

---

[7] Plaintiffs' reliance on *In re Meta Pixel Tax Filing Cases* is misplaced. *See* Opp'n at 29. The device in that case had multiple "operat[ions] [working] independently from one another," where some operations did collect the contents of communications and others did not. 2025 WL 2243615 at *6. Plaintiffs allege no such device in this case.

[8] Although Plaintiffs dismiss *Kishnani* as an outlier, Plaintiffs offer no applicable case rebutting its conclusions. *See* Opp'n at 22–23.

### 4. Plaintiffs Cannot Avoid the Dangerously Absurd Results of Their Section 638.51 Claim.

Plaintiffs urge the Court to adopt an alarming expansion of Section 638.51, which would treat IP addresses as "routing and addressing information" under CIPA and criminalize routine internet usage. Indeed, the statutory framework of Section 638.51 makes clear that the provision was intended to apply to devices used on telephones, not software on a website that collects IP addresses like Plaintiffs allege here.[9] Plaintiffs attempt to sidestep the absurdity of their theory by conceding that collecting IP addresses is not problematic while maintaining that sharing and tracking IP addresses is a violation of Section 638.51. *See* Opp'n at 24. Setting aside the internal inconsistencies in this logic, this argument is not grounded in the Complaint, where Plaintiffs only allege that their IP addresses were ***collected***, not actually used to share or track Plaintiffs' information. *See* Compl. ¶¶ 68, 73, 80, 87. Plaintiffs further suggest that all webpage providers should seek "users' consent" for their IP addresses. *See* Opp'n at 24. Such an extensive requirement would still "disrupt" the internet by imposing unnecessary burdens on users, inhibit free and open discourse on the internet, and incidentally punish innocent actors. *Licea*, 2024 WL 1698147, at *4. Accordingly, the Court should reject Plaintiffs' dangerously broad interpretation of CIPA.

---

[9] *See, e.g.*, Cal. Penal Code § 638(a) (establishing criminal liability for someone who "purchases, sells, offers to purchase or sell, or conspires to purchase or sell any ***telephone calling pattern record or list***, without the written consent of the subscriber" (emphasis added)); *id.* § 638.52(c) (pen register information does not include information regarding the physical location of the subscriber, "except to the extent that the location may be determined ***from the telephone number***" (emphasis added)); *id.* § 638.52(d)(1), (3) (requiring that a court order specify "in whose name is listed ***the telephone line*** to which the pen register or trap and trace device is to be attached," as well as the "number and, if known, physical location of ***the telephone line*** to which the pen register or trap and trace device is to be attached" (emphases added)).

### C. Because Plaintiffs Fundamentally Misinterpret Section 638.51, the Court Should Deny Leave to Amend.

As explained above, Plaintiffs assert a fundamentally flawed extension of Section 638.51 that no amendment can cure. Accordingly, the Court should dismiss Plaintiffs' claim and deny leave to amend. *See Mitchener*, 2025 WL 2272413, at *5–6 ("The TikTok software is not a trap and trace device . . . . For this reason, any amendment to the FAC cannot cure Plaintiff's lack of standing to bring suit.").

## III. CONCLUSION

For the reasons stated above, CoStar respectfully requests that the Court dismiss the Complaint, and with prejudice, as any amendment would be futile.

Dated: September 25, 2025

LATHAM & WATKINS LLP

By: /s/ *Michael H. Rubin*

Michael H. Rubin
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
415-395-0600
Fax: 415-395-8095
Email: michael.rubin@lw.com

Alexander C.K. Wyman
355 South Grand Avenue Suite 100
Los Angeles, CA 90071
213-485-1234
Fax: 213-891-8763
Email: alex.wyman@lw.com

Nicholas J. Boyle
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
202-637-2200
Fax: 202-637-2201
Email: nicholas.boyle@lw.com
Admitted Pro Hac Vice

*Attorneys for Defendant CoStar Group, Inc.*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant CoStar Group, Inc., certifies that this brief contains 3,768 words, which complies with the word limit of L.R. 11-6.1, and is 12 pages long, which complies with Judge Jesus G. Bernal's Standing Order.

Dated: September 25, 2025

By: */s/ Michael H. Rubin*
Michael H. Rubin