UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 25-1047 JGB (SPx)** | Date | October 22, 2025 |
| Title | ***Dywanna Drummer, et al. v. CoStar Group, Inc.*** | | |

| | |
|---|---|
| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |

| | |
|---|---|
| MAYNOR GALVEZ | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
| None Present | None Present |

**Proceedings: Order (1) DENYING Defendant's Motion to Dismiss (Dkt. No. 31); and (2) VACATING the October 27, 2025, Hearing (IN CHAMBERS)**

Before the Court is a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) filed by Defendant CoStar Group, Inc.'s ("CoStar" or "Defendant"). ("Motion," Dkt. No. 31.) The Court determines this matter is appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering all papers filed in support of and in opposition to the Motion, the Court **DENIES** Defendant's Motion. The October 27, 2025, hearing is **VACATED**.

## I. BACKGROUND

On April 30, 2025, Plaintiffs Cynthia Rubio, Dywanna Drummer, Schalise Lee, Anthony D'Antonio, and Mary Lee Wallace filed a class complaint against Defendant. ("Complaint," Dkt. No. 1.) The Complaint alleges one cause of action: a violation of the California Invation of Privacy Act ("CIPA"), California Penal Code § 638.51. (See Compl.) On July 11, 2025, Defendant filed this Motion. (See Motion.) Plaintiffs filed their Opposition on September 4, 2025. ("Opposition," Dkt. No. 33.) Plaintiffs also filed a notice of supplemental authority on September 8, 2025. ("Supp. Auth.," Dkt. No. 34.) Defendant replied on September 25, 2025. ("Reply," Dkt. No. 35.)

//
//
//
//
//

## II. FACTUAL ALLEGATONS

Plaintiffs allege the following facts, which are assumed to be true for the purposes of this motion. See Am. Fam. Ass'n, Inc. v. City & Cnty. of San Francisco, 277 F.3d 1114, 1120 (9th Cir. 2002).

CoStar, which owns the websites Apartments.com and Homes.com, has installed tracking software ("trackers") on its websites on behalf of third parties, including the video-sharing platform TikTok, the professional networking site LinkedIn, and the digital advertising platform The Trade Desk. (Compl. ¶¶ 2, 7, 29, 44, 56-57.) Through the implementation of "pixels, cookies, code snippets, and other technologies, these trackers surreptitiously capture" site users' internet protocol ("IP") addresses and other personal information, and then disclose these IP addresses to third parties to aid in their marketing, advertising, and analytics. (Id. ¶ 3.) IP addresses contain sufficient information to identify the user's zip code, which allows those who have an IP address to target advertising toward it based on geographic location. (Id. ¶ 24.) The trackers capture "routing, addressing, or signaling information," without website visitors' consent or a court order, which Plaintiffs allege constitutes illegal pen registers under CIPA. (Id. ¶ 4.)

Specifically, Plaintiffs allege that, when a user visits one of CoStar's websites, the user's browser sends a request to CoStar's servers and Costar's servers respond to the browser with a set of instructions for loading and displaying the webpage content. (Id. ¶ 20.) This response also causes third-party trackers to be installed on the user's browser, which sends the trackers identifying information, including the user's IP address. (Id. ¶ 21.) When a user visits the website later, the tracker identifies the user as a prior site visitor and sends the user's IP address to the third party to whom the tracker belongs. (Id. ¶¶ 21-22.) The trackers also assign an identifier to a user such that, when they start a new browser session even from a different IP address, the user can be followed to that new session. (Id. ¶ 32.) The third parties to whom the trackers belong, like TikTok and LinkedIn, can more accurately target advertising as a result of collecting IP addresses, which earns CoStar additional revenue. (Id. ¶ 25.) The personal information CoStar collects and distributes has economic value to Plaintiffs. (Id. ¶ 26.)

Plaintiff Dywanna Drummer is a resident of Lancaster, California, and visited Apartments.com numerous times, including on or about February 8, 2025. (Id. ¶ 9.) Ms. Drummer has a TikTok account and a LinkedIn account, and had both at the time she visited Apartments.com. (Id. ¶¶ 66-67.) Plaintiff Schalise Lee is a resident of Elk Grove, California, and visits Apartments.com once or twice a month, including in January 2025. (Id. ¶ 10.) Plaintiff Cynthia Rubio is a resident of Bakersfield, California and visits the Homes.com website on a weekly basis, including in January 2025. (Id. ¶ 11.) Ms. Rubio has a TikTok account and a LinkedIn account, and had both at the time she visited Apartments.com. (Id. ¶¶ 78-79.) Plaintiff Mary Lee Wallace is a resident of Bakersfield, California, and visits the Homes.com website on a weekly basis, including in January 2025. (Id. ¶ 12.) Plaintiff Anthony D'Antonio is a resident of Mountain View, California, and has visited Homes.com multiple times, including on

or about March 3, 2025. (Id. ¶ 13.) Mr. D'Antonio has a LinkedIn account and had one at the time he visited Homes.com. (Id. ¶ 93.)

None of the Plaintiffs consented to CoStar installing the trackers on their browsers. (See Id. ¶¶ 65-98.) Ms. Wallace alleges that, after searching Homes.com, she received an advertisement for Homes.com that featured a realtor in a location where she had been looking at homes on the website. (Id. ¶ 86.) Mr. D'Antonio alleges that, several days after visiting Homes.com, he visited another website and saw an advertisement for the exact same home he had previously looked at on Homes.com. (Id. ¶ 94.)

## III. LEGAL STANDARD

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. "When a defendant moves to dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of proving that the court has jurisdiction to decide the claim." Espino v. Regents of the Univ. of California, 666 F. Supp. 3d 1065, 1078 (C.D. Cal. 2023) (citing Thornhill Publ'n Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979)). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). A "district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014) (citing Pride v. Correa, 719 F.3d 1130, 1133 (9th Cir. 2013)). Where a suit lacks standing, the Court lacks subject matter jurisdiction and the suit should be dismissed. See Cetacean Cmty. v. Bush, 386 F.3d 1169, 1174 (9th Cir. 2004).

### B. Rule 12(b)(6)

Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Ileto v. Glock Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994). Courts are not required, however, "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.2d 1049, 1055 (9th Cir. 2008) (internal citation and quotation omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570; Ashcroft v. Iqbal, 556 U.S. 662 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

### C. Rule 15

Rule 15 provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'" Eminence Cap., L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). Generally, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citation omitted).

## IV. DISCUSSION

### A. Standing

Defendant first argues that Plaintiffs have failed to sufficiently allege standing. (Mot. at 4-7.) To bring a case in federal court, a Plaintiff must have standing. Establishing standing requires that a plaintiff "show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." TransUnion LLC v. Ramirez, 594 U.S. 413, 423, 141 S. Ct. 2190, 2203, 210 L. Ed. 2d 568 (2021) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–561 (1992)). The Court was clear in TransUnion that "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." Id. at 427 (emphasis in original).

District courts throughout the Ninth Circuit have repeatedly found—subsequent to TransUnion—that CIPA claims for IP address collection similar to Plaintiffs' establish standing.

See, e.g., Vishal Shah v. Fandom, Inc., 754 F. Supp. 3d 924, 932 (N.D. Cal. 2024); Mirmalek v. L.A. Times Communs. LLC, 2024 U.S. Dist. LEXIS 227378, at *13 (N.D. Cal. Dec. 12, 2024); Keskinen v. Lush Handmade Cosmetics LLC, 770 F. Supp. 3d 1234, 1244 (C.D. Cal. 2025). Defendant characterizes Plaintiffs' allegations as challenging the basic function of the internet through the collection of IP addresses and that Plaintiffs have no privacy interest in their IP addresses. (See Mot. at 11; Heeger v. Facebook, Inc., 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020.) It is true that disclosing an IP address is a basic function of internet use. But Plaintiffs' complaint goes further—their concern is with the documentation of IP addresses disclosed in the normal course of internet use that are then provided to third parties without Plaintiffs' consent or other compliance with CIPA. As to Defendant's claim that there is no reasonable expectation of privacy in an IP address, the issue is not about Plaintiffs' expectation of privacy in transmitting their IP address to Defendant for *its* use, it is about Defendant's alleged transmission of the IP address to others with whom Plaintiff did not share the address. This distinguishes Plaintiffs' case from, for example, the plaintiffs in Heeger v. Facebook, Inc., where the plaintiffs alleged that Facebook used their IP addresses for advertising itself after plaintiffs provided their IP addresses directly to Facebook. See 509 F. Supp. 3d 1182, 1186 (N.D. Cal. 2020). Plaintiffs also allege that this collection and transmission economically harms Plaintiffs, because such data underpinning targeted advertising is economically valuable. (Compl. ¶ 26.) Thus, the Court does not hold that Plaintiffs have established standing merely by alleging a violation of CIPA—rather, the Court finds that Plaintiffs' *specific* allegations as to the collection and dissemination of their IP addresses allege a cognizable injury in fact.

Defendant also focuses on the fact that not every named Plaintiff had every social media account or visited every website at issue. (See, e.g., Reply at 2-3.) While this is true, the harm Plaintiffs allege—the surreptitious collection and transmission of their economically valuable IP addresses for purposes of targeted tracking—is not dependent on whether they actually *received* targeted advertisements. Thus, the fact that each Plaintiff allegedly visited at least one of Defendant's websites and had their IP addresses recorded and disseminated via trackers is sufficient.

In line with myriad other district courts, the Court finds that Plaintiffs have sufficiently alleged an injury in fact and established standing. The Court **DENIES** Defendant's Motion under Rule 12(b)(1).

### B. Sufficiency of Pleadings

Next, Defendant argues that the trackers at issue in this case are not pen registers as contemplated by CIPA. Defendant relies on the historical understanding of a pen register as a device attached to a telephone line to capture a list of outgoing phone numbers. (Mot. at 8.) Attempting to place IP address collection beyond the law's scope, Defendant contends that the trackers receive source information from IP addresses that are sent *to* the website, rather than outgoing information from the website. (Id. at 9.)

//

//

As other district courts have recognized, California's pen register "definition is specific as to the type of data a pen register collects—'dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted,' but it is vague and inclusive as to the form of the collection tool—'a device or process.'" Greenley v. Kochava, Inc., 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023) (quoting Cal. Pen. Code § 538.50(b)); see also Shah, 754 F. Supp. 3d at 929 ("By the plain meaning of [Cal. Pen. Code] § 638.50(b), collection of the recipient phone number or IP address is not a required element. All that is required is that the Trackers record addressing information transmitted by the user's computer or smartphone in connection with the outgoing HTTP request to [the defendant's] website, regardless of whether that addressing information pertains to the sender or the recipient of the communication at issue.").[1]

IP addresses would appear to fall, at the very least, in the "addressing" category, and the trackers are plainly a "process" that collects them. Again, the role of trackers in collecting and transmitting IP addresses seems quite different than the routine receipt of an IP address for loading a website, because the trackers actually save and transmit the IP address beyond its basic use related to simple internet function. Defendant's dramatic pronouncement that finding CIPA to cover IP addresses in this situation "exposes virtually every website operator to CIPA liability" is hardly plausible. (See Mot. at 11-12.) Plaintiffs' Complaint is concerned with Defendant recording and transmitting their IP addresses beyond their basic use in accessing Defendant's websites. By visiting Defendant's websites, Plaintiffs have clearly consented to disclosing their IP addresses for the purpose of loading the website, so CIPA would not apply. See Cal. Pen. Code § 638.51(b)(5) (creating a consent-based exception to the statute). It is the *further* retention and transmission of their IP addresses that concerns Plaintiffs. Defendant has failed to persuade the Court that liability for *further* use of IP addresses would interrupt basic internet function.

Defendant also contends that Plaintiffs have alleged only that the trackers collect IP addresses, in which they have no expectation of privacy. (Mot. at 5.) Yet Plaintiffs' Complaint is clear that, "On information and belief, CoStar has enabled [a certain] feature [on the TikTok tracker] and, therefore, in addition to IP addresses and other identifying browser information, it

---

[1] The state superior court decisions Defendant cites are unpublished. While federal courts "may consider unpublished state decisions, . . . such opinions have no precedential value." Emplrs Ins. of Wausau v. Granite State Ins. Co., 330 F.3d 1214, 1220 n.8 (9th Cir. 2003). Additionally, at least some of these state cases appear to be based on far less comprehensive complaints than those submitted by Plaintiffs. See, e.g., Casillas v. Transitions Optical, Inc., 2024 WL 4873370, at *4 (Cal. Super. Sep. 09, 2024) ("Beyond hypothetical scenarios, the only specific act the FAC alleges is that when Plaintiff used her computer voluntarily to access [the defendant's] website, Defendant 'collected Plaintiff's IP address.'"); Licea v. Hickory Farms LLC, 2024 WL 1698147, at *4 (Cal. Super. Mar. 13, 2024) ("At a minimum, it remains unclear from the conclusively pled complaint how Plaintiff's information was acquired, including initiation from a visit to the [defendant's] website, and whether any protocols were violated from said visit.").

also captures any form data inputted by users on the Websites, such as the user's name, date of birth, and address." (Compl. ¶ 41.) Even if IP addresses were insufficient on their own—and as discussed in the Standing section, in the context of this case they are sufficient—Plaintiffs have gone further and alleged additional information.

Finally, Defendant argues that Section 638.51 does not apply because Plaintiffs' claims cover the contents of communications. Plaintiffs deny that their claims cover the contents of communications, (see Opp'n at 22), but in any event, it is not apparent from the face of CIPA that it excludes pen registers that may also collect some additional information. The statute defining a pen register construes it as "a . . . process that records or decodes . . . addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Pen. Code § 638.50. As another district court recently held, "[t]he statute does not, through its language alone, clarify whether it establishes two entirely nonoverlapping zones of regulation" for devices or processes that capture addressing information and those that collect the contents of communications. In re Meta Pixel Tax Filing Cases, 2025 WL 2243615, at *4 (N.D. Cal. Aug. 6, 2025). "Given CIPA's purpose to protect Californians' privacy, it is highly unlikely that the Legislature intended to permit the installation and use of pen registers so long as those devices also record the contents of a third party's communications." Id., at *5. The Court here agrees.

Additionally, Defendant focuses specifically on an IP address's capacity to provide geolocation data. (Mot. at 14.) Under the statute, "[i]nformation acquired solely pursuant to the authority for a pen register or a trap and trace device shall not include any information that may disclose the physical location of the subscriber, except to the extent that the location may be determined from the telephone number." Cal. Pen. Code § 638.52(c).[2] Based on Plaintiffs' allegations as to the function of IP addresses, the numbers in the address themselves provide geolocation data. This would appear to be similar to the geolocation information that can be gleaned from a phone number's area code, which is specifically covered by Section 638.52. Defendant has not contested this description of how geolocation information is transmitted by an IP address, or why geolocation information from an IP address invalidates Plaintiffs' claims.

Having failed to demonstrate that Plaintiffs' Complaint insufficiently pleads liability under Section 638.51, Defendant's Motion is **DENIED**.

---

[2] The Court acknowledges that this section of CIPA specifically refers to pen registers recording telephone numbers, which Defendant reads to constrain the entire statutory scheme to telephone communications. (See Mot. 14-15.) The Court, as have other district courts, declines to do so based on the expansive language of Section 638.51, as discussed above. Instead, the Court sees the California legislature's reference to telephones in this instance as demonstrating its capacity to specify applicability to telephones when it wants to, which supports a broader reading of Section 638.51 since it does not specifically reference telephones. In that sense, Section 638.52 perhaps does not apply to pen registers that collect IP addresses and only to pen registers that collect telephone information, which further undermines any authority Section 638.52 would have in invalidating Plaintiffs' allegations.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion. The October 27, 2025, hearing is **VACATED**.

**IT IS SO ORDERED.**