**KAHN SWICK & FOTI, LLC**
Kim E. Miller (SBN 178370)
kim.miller@ksfcounsel.com
1901 Avenue of the Stars, 2nd Floor
Los Angeles, California 90067
Telephone: (504) 455-1400

Melissa H. Harris (admitted *pro hac vice*)
melissa.harris@ksfcounsel.com
1100 Poydras Street, Suite 960
New Orleans, LA 70163
Telephone: (504) 455-1400

[*Additional counsel on signature page*]

*Counsel for Plaintiffs and the Putative Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DYWANNA DRUMMER, et al.,<br>Plaintiffs,<br>v.<br>COSTAR GROUP, INC.<br>Defendant. | Case No. 5:25-cv-01047-JGB-SP<br><br>Hon. Jesus G. Bernal<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT COSTAR GROUP, INC.'S MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. §1292(b) AND STAY PENDING RESOLUTION OF INTERLOCUTORY APPEAL**<br><br>Date: February 23, 2026<br>Time: 9:00 a.m.<br>Judge: Hon. Jesus G. Bernal<br>Dept: Riverside, Courtroom 1 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

I. INTRODUCTION .......... 1

II. BACKGROUND .......... 3

III. LEGAL STANDARD .......... 5

IV. ARGUMENT .......... 6

A. The Motion Should be Denied as Untimely .......... 6

B. Defendant Has Waived Any Arguments Based on *Popa* .......... 7

C. There is No Controlling Question of Law as to Which There is a Substantial Difference of Opinion .......... 8

1. There is no absence of controlling law .......... 8

2. There is no substantial difference of opinion as to the standing issue before the Court .......... 11

3. *Popa* did not create a new standard for standing in privacy cases and is easily distinguishable .......... 12

4. There are mixed questions of fact and law .......... 16

5. Reversal would not materially affect the outcome here .......... 19

D. An Interlocutory Appeal Will Not Materially Advance the Ultimate Termination of This Case .......... 22

E. The Court Should Not Issue a Stay .......... 22

V. CONCLUSION .......... 25

# TABLE OF AUTHORITIES

## Cases

*A.B. v. Google LLC*, No. 5:23-cv-3101, 2024 WL 4933345 (N.D. Cal. Dec. 2, 2024)....12

*Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist.*, No. EDCV13883, 2015 WL 13764632 (C.D. Cal. Sept. 8, 2015)....27

*Alliance for The Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011)....25

*Attison v. Whiting Door Mfg. Corp.*, No. EDCV 20-12, 2021 WL 5242919 (C.D. Cal. Sept. 16, 2021)....5

*Aviles v. Liveramp, Inc.*, No. 24STCV19869, 2025 WL 487196 (Cal. Super. Jan. 28, 2025)....14

*Ayora v. Inspire Brands, Inc.*, No. 25-cv-3645, 2025 WL 3707561 (N.D. Cal. Dec. 22, 2025).... 18, 21

*Bennett v. Islamic Republic of Iran*, 927 F. Supp. 2d 833 (N.D. Cal. 2013)....23

*Beyond Blond Prods., LLC v. Heldman*, No. CV 20-5581, 2021 WL 4860377 (C.D. Cal. Apr. 28, 2021)....7

*Blue Cross & Blue Shield v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718 (9th Cir. 2007)....26

*Bowen v. Target Corp.*, No. CV 16-2587, 2021 WL 4860689 (C.D. Cal. Sept. 17, 2021)....25

*Brooks v. Thomson Reuters Corp.*, No. 21-cv-1418, 2023 WL 9316647 (N.D. Cal. Aug. 10, 2023)....23

*Cabiness v. Educ. Fin. Solutions, LLC,* No. 15-cv-1109, 2017 WL 167678 (N.D. Cal. Jan. 17, 2017)....27

*Camplisson v. Adidas Am., Inc.*, No. 25-cv-603, 2025 WL 3228949 (S.D. Cal. Nov. 18, 2025).... 16, 18

*Canela v. Costco Wholesale Corp.*, No. 13-CV-3598, 2018 WL 3008532 (N.D. Cal. June 15, 2018)....................23

*Chehalem Physical Therapy, Inc. v. Coventry Health Care, Inc.*, No. 09-cv-320, 2010 WL 952273 (D. Or. Mar. 9, 2010) ....................19

*Clerkin v. Mylife.com, Inc.*, No. C 11-527, 2011 WL 5573944 (N.D. Cal. Nov. 15, 2011) ....................13

*Couch v. Telescope Inc.*, 611 F.3d 629 (9th Cir. 2010) .................... 2, 5, 9, 10

*Cousineau v. Microsoft Corp.*, No. C11-1438, 2012 WL 12847005 (W.D. Wash. Aug. 22, 2012).................... 19, 20

*Deivraprakash v. Condé Nast Digit.*, No. 25-cv-4021, 2025 WL 2779193 (N.D. Cal. Sept. 30, 2025) ....................19

*DellaSala v. Samba Tv, Inc.*, No. 3:25-cv-3470, 2025 WL 3034069 (N.D. Cal. Oct. 30, 2025) ....................26

*Fernandez v. Quad at Whittier, LLC*, No. CV 20-5406, 2020 WL 4804992 (C.D. Cal. July 14, 2020)....................25

*Fleck & Assoc., Inc. v. Phoenix*, 471 F.3d 1100 (9th Cir. 2006)....................23

*Friedman v. 24 Hour Fitness USA, Inc.*, No. CV 06-6282, 2009 WL 545783 (C.D. Cal. Mar. 3, 2009)....................23

*Gerber v. Twitter, Inc.*, No. 4:23-CV-186, 2025 WL 1359217 (N.D. Cal. May 9, 2025).................... 20, 22

*Getz v. Boeing Co.*, No. C 07-6396, 2009 WL 3765506 (N.D. Cal. June 16, 2009)....................12

*Gilligan v. Experian Data Grp.*, No. 25-cv-2873, 2026 WL 32259 (N.D. Cal. Jan. 6, 2026)....................17

*Greer v. Dick's Sporting Goods, Inc.*, No. 2:15-cv-1063, 2018 WL 372753 (E.D. Cal. Jan. 10, 2018) ....................27

*Hassid v. Alex and Ani*, LLC, No. CV 25-679, ECF No. 49 (C.D. Cal. Jan. 20, 2026)....................18

*Heiting v. Taro*, No. 2:23-cv-8002, 2024 WL 6845482 (C.D. Cal. Oct. 31, 2024)....................7

*Hill v. Nat. Collegiate Athletic Ass'n*, 865 P.2d 633 (Cal. 1994)....................21

*ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125 (9th Cir. 2022)....................9

*In re Cement Antitrust Litig.*, 673 F.2d 1020 (9th Cir. 1981).................... 6, 22

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020).. *passim*

*In re Kenny G. Enters., LLC*, No. 8:14-cv-246, 2014 WL 1806891 (C.D. Cal. May 7, 2014)....................26

*Jackson v. Placer Cnty.*, No. CIV. S-05-79, 2007 WL 2127528 (E.D. Cal. July 24, 2007)....................8

*James v. Walt Disney Co.*, No. 23-cv-2500, 2024 WL 664811 (N.D. Cal. Feb. 16, 2024....................20

*Ji v. Naver Corp.*, No. 21-cv-5143, 2024 WL 251402 (N.D. Cal. Jan. 23, 2024)....................11

*Johnson v. JP Morgan Chase Bank, N.A.*, No. EDCV 17-2477, 2019 WL 2004140 (C.D. Cal. Jan. 25, 2019)....................6, 7

*Jones v. Ford Motor Co.*, 85 F.4th 570 (9th Cir. 2023)....................11

*Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-cv-1473, 2025 WL 1745726 (N.D. Cal. June 24, 2025)....................14

*Lenz v. Universal Music Corp.*, No. C07-3783, 2008 WL 4790669 (N.D. Cal. Oct. 28, 2008)....................21

*Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005)....................26

*McFall v. Perrigo Co.*, No. 2:20-cv-7752, 2021 WL 3185083 (C.D. Cal. June 15, 2021)........................................................................... 1, 6, 19

*Mitchener v. Curiositystream, Inc.*, No. 25-cv-1471, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) ..........................................................................14

*Montanez v. Gerber Childrenswear, LLC*, No. CV097420, 2012 WL 12932032 (C.D. Cal. Feb. 2, 2012) ..........................................................................28

*Murphy v. DirecTV, Inc.*, No. 2:07-cv-6465, 2008 WL 8608808 (C.D. Cal. July 1, 2008) ..........................................................................27

*Nacarino v. Chobani, LLC*, No. 20-cv-7437, 2022 WL 833328 (N.D. Cal. Mar. 21, 2022) ..........................................................................24

*Oakland v. Hotels.com LP*, 572 F.3d 958 (9th Cir. 2009) ......................................23

*Oganyan v. BioLife Plasma Servs. L.P.*, No. 1:25-cv-99, 2025 WL 2979619 (E.D. Cal. Oct. 22, 2025)............................................................ 14, 26

*Pemberton v. Rest. Brands Int., Inc.*, No. 25-cv-3647, 2025 WL 3268404 (N.D. Cal. Nov. 24, 2025) ..........................................................................18

*Popa v. Microsoft Corp.*, 153 F. 4th 784 (Aug. 26, 2025) .............................. *passim*

*Richardson Elec., Ltd. v. Panache Broadcasting*, 202 F.3d 957 (7th Cir. 2000) ......7

*Rodriguez v. Culligan Int'l Co.*, No. 25-cv-225, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025)..........................................................................14

*San Jose v. Monsanto Co.*, No. 5:15-cv-3178, 2017 WL 6039670 (N.D. Cal. Dec. 6, 2017)..........................................................................12

*Sanchez v. Cars.com*, No. 24STCV13201, 2025 WL 487194 (Cal. Super. Jan. 27, 2025). ..........................................................................15

*Shah v. Fandom, Inc.*, No. 24-cv-1062, 2024 WL 6903081 (N.D. Cal. Dec. 16, 2024) ..........................................................................20

*Spread Your Wings, LLC v. AMZ Grp. LLC*, No. 20-CV-3336, 2020 WL 7122513 (N.D. Cal. Dec. 4, 2020)..........................................................................8

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ................................ 1, 4, 10, 15

*Tsering v. Meta*, No. 25-cv-1611, 2026 WL 89320 (N.D. Cal. Jan. 12, 2026) .......17

*U.S. v. Academy Mortg. Corp.*, No. 16-cv-2120, 2018 WL 6592782 (N.D. Cal. Dec. 14, 2018) .................................................................. 7, 9, 22, 23

*U.S. v. Woodbury*, 263 F.2d 784 (9th Cir. 1959)) ..................................................2

*Universal-Inv.-Gesellschaft mbH v. Seagate Tech. Holdings plc*, No. 23-CV-3431, 2025 WL 2494371 (N.D. Cal. Aug. 29, 2025) ..................................................8

*Volkswagon Grp. v. Saul Chevrolet, Inc.*, No. 5:15-cv-505, 2015 WL 5680317 (C.D. Cal. Sept. 25, 2015) ...................................................................... 26, 28

*Walsh v Dollar Tree Stores, Inc.*, No. 25-cv-1601, 2025 WL 2939229 (N.D. Cal. Oct. 16, 2025) .......................................................................19

**Statutes**

28 U.S.C. §1292(b) ........................................................................... *passim*

CAL. PENAL CODE §638.51 ..........................................................................4

**Rules**

FED. R. CIV. P. 15(a) ..........................................................................21

Plaintiffs Dywanna Drummer, Anthony D'Antonio, Schalise Lee, Cynthia Rubio, and Mary Lee Wallace ("Plaintiffs") respectfully submit this Opposition to Defendant CoStar Group, Inc.'s ("CoStar" or "Defendant") Motion for Certification of Interlocutory Appeal Pursuant to 28 U.S.C. §1292(b) and Stay Pending Resolution of Interlocutory Appeal (ECF No. 45; the "Motion").[1]

## I. INTRODUCTION

In its Court's October 22, 2025, Order denying Defendant's Motion to Dismiss, the Court correctly concluded Plaintiffs have standing to assert their CIPA claims, citing to the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) and several district courts in this Circuit that have considered similar allegations. *See* Order at 4-8 (citing cases). Unhappy with this decision, Defendant has moved to certify the Order for interlocutory appeal and stay the action pending appeal. But interlocutory appeals should be certified "sparingly and only in exceptional cases." *McFall v. Perrigo Co.*, No. 2:20-cv-7752, 2021 WL 3185083, at *1 (C.D. Cal. June 15, 2021) (citing *U.S. v. Woodbury*, 263 F.2d 784, 788 n.11 (9th Cir. 1959)). This is not such an exceptional case.

[1] References to the Complaint are indicated as "¶_; Motion are indicated as "Mtn. at __"; Motion to Dismiss (ECF No. 31) are indicated as "MTD at _"; Plaintiffs' Opposition to the Motion to Dismiss (ECF No. 33) are indicated as "Opp. at__"; Defendant's Reply in Further Support of Motion to Dismiss (ECF No. 35) are indicated as "Reply at __"; and the exhibits attached to the accompanying Declaration of Melissa H. Harris are indicated as "Pls. Ex. __."

As a threshold matter, Defendant's Motion is procedurally defective. First, it filed nearly two months after the Order and, therefore, is inexcusably dilatory. Second, the primary basis for the Motion is the Ninth Circuit's decision in *Popa v. Microsoft Corp.*, 153 F. 4th 784 (Aug. 26, 2025), which was issued nearly one month *before* Defendant filed its Reply, but was not mentioned therein, nor did Defendant file a motion for reconsideration. As such, Defendant has waived this argument.

If the Court proceeds to the merits, the Motion still fails, as Defendant has not established there is a "controlling question of law" on which there is "substantial ground for difference of opinion." 28 U.S.C. §1292(b). There is not an absence of controlling law or "novel and difficult question[ ] of first impression" presented. *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). Nor do Defendant's cited cases establish a substantial disagreement as to the issue of standing before the Court, as they are factually distinguishable from Plaintiffs' allegations here. Further, Defendant's attempt to rely on *Popa* is misplaced – it did not create a "new standard for determining Article III standing" (Mtn. at 9), and the technology in *Popa* is completely different from the Trackers at issue here. An immediate appeal will also not "materially advance the ultimate termination" of this case, *Marshall v. Grubhub Inc.*, No. EDCV 24-1218, 2025 WL 2683982, at *1 (C.D. Cal. Aug. 29, 2025) (Bernal, J.) (citations omitted)), because (i) there is a separate, independent basis

supporting Plaintiffs' standing (economic injury) and (ii) any dismissal of the Complaint would be without prejudice, so Plaintiffs could amend. Further, certification is not appropriate because Plaintiffs' standing involves mixed questions of law and fact.

Finally, the case should not be stayed because Defendant fails to establish a strong showing of a likelihood of success on the merits of its proposed appeal or that it would be irreparably injured without a stay, a stay of indefinite duration would significantly prejudice Plaintiffs, and the public interest favors the efficient and timely prosecution of Plaintiffs' claims.

## II. BACKGROUND

Plaintiffs filed this lawsuit on April 30, 2025, alleging that Defendant has covertly installed third-party trackers TikTok Pixel, LinkedIn Insight Tag, and The Trade Desk (the "Trackers") on its websites, including Homes.com and Apartments.com (the "Websites"). Plaintiffs allege when users visit one of the Websites, one or more Trackers is installed on their browsers without consent or a court order, and the Trackers: (i) collect and share with third parties users' browser and device information and internet protocol ("IP") addresses – which allow third parties to obtain personally-identifying, non-anonymized information about them; and (ii) identify users' devices and track and create detailed records of users'

locations, browsing habits, and activities across websites and browsing sessions – for targeted advertising purposes. Plaintiffs allege violations of California's Invasion of Privacy Act ("CIPA"), CAL. PENAL CODE §638.51. ¶¶ 2-3, 19-98.

Defendant filed its Motion to Dismiss on July 11, 2025, arguing, in pertinent part, that Plaintiffs lacked standing because (i) they only specifically alleged their IP addresses were collected and there is no expectation of privacy in IP addresses, and (ii) allegations that other personal information was collected were "conclusory." *See* MTD at 4-7; Reply at 1-4. On October 22, 2025, the Court issued an Order (ECF No. 41) denying the Motion to Dismiss in full. The Court observed that "[t]he Court was clear in *TransUnion* that '[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court.'" *Id.* at 4 (emphasis in original). Citing several cases within the Ninth Circuit decided after *TransUnion*, the Court then held that "Plaintiffs' *specific* allegations as to the collection and dissemination of their IP addresses allege a cognizable injury in fact." *Id.* at 4-5 (emphasis in original).

Nearly four weeks later, on Thursday, November 20, 2025, counsel for Defendant informed Plaintiffs' counsel they were "preparing to file" this Motion and requested availability to meet and confer. *See* Pls. Ex. 1 at 8. Plaintiffs' counsel responded later that day and suggested Monday, November 24. *See id.* Counsel for

Defendant did not respond until nearly two weeks later, on Friday, December 5, when he "apologize[d] for letting this slip." *Id.* at 7. The parties conferred on December 15, 2025 (*see id.* at 5-6) and the Motion was filed one week later.

## III. LEGAL STANDARD

Certification is a "narrow" exception to the final judgment rule, *Attison v. Whiting Door Mfg. Corp.*, No. EDCV 20-12, 2021 WL 5242919, at *5 (C.D. Cal. Sept. 16, 2021) (Bernal, J.) (citing *Couch*, 611 F.3d at 633), and should be granted "only in exceptional situations in which allowing [such an appeal] would avoid protracted and expensive litigation." *Marshall*, 2025 WL 2683982, at *2 (citation omitted). An order may only be certified for interlocutory appeal if it "involves a 'controlling question of law' on which (2) there is 'substantial ground for difference of opinion'; and (3) an immediate appeal 'may materially advance the ultimate termination of the litigation.'" *Id.* at *1 (citing 28 U.S.C. §1292(b); *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981)). "The test is conjunctive, and failure to establish any element requires denial of the motion." *McFall*, 2021 WL 3184083, at *1 (citations omitted). Further, "[e]ven if these requirements are met, a district court still has discretion in deciding whether or not to grant a party's motion for certification." *Marshall*, 2025 WL 2683982, at *1 (citation omitted).

## IV. ARGUMENT

### A. The Motion Should be Denied as Untimely

"Though there is no specified time limit for seeking certification, §1292(b) provides for an immediate appeal, and a district judge should not grant an inexcusably dilatory request." *Johnson v. JP Morgan Chase Bank, N.A.*, No. EDCV 17-2477, 2019 WL 2004140, at *4 (C.D. Cal. Jan. 25, 2019) (Bernal, J.) (citation omitted). As noted above, the Court issued its Order on October 22, 2025, but this Motion was not filed until nearly two months later – which belies Defendant's claim of "urgency" (Mtn. at 12) and is inexcusably dilatory. *See Richardson Elec., Ltd. v. Panache Broadcasting*, 202 F.3d 957, 958 (7th Cir. 2000) (two-month delay sufficient to deny certification); *Heiting v. Taro*, No. 2:23-cv-8002, 2024 WL 6845482, at *3 (C.D. Cal. Oct. 31, 2024) (six-week delay warranted denial of motion for interlocutory appeal); *Beyond Blond Prods., LLC v. Heldman*, No. CV 20-5581, 2021 WL 4860377, at *2 (C.D. Cal. Apr. 28, 2021) (denying certification where two-month delay was unexplained and unreasonable); *Johnson*, 2019 WL 2004140, at *5 (delay of nearly two and a half months "inexcusably dilatory").[2]

[2] *Cf. U.S. v. Academy Mortg. Corp.*, No. 16-cv-2120, 2018 WL 6592782, at *3 (N.D. Cal. Dec. 14, 2018) (49-day delay "not so 'inexcusably dilatory' as to be untimely" where certification sought nine days after denial of motion for reconsideration).

### B. <u>Defendant Has Waived Any Arguments Based on *Popa*</u>

Defendant's Motion is heavily based on *Popa*, which was decided "while [its] Motion to Dismiss was pending." Mtn. at 9. Yet Defendant omits to state that *Popa* was issued on August 26, 2025: approximately ***one month before*** its Reply – which makes no mention of *Popa* – was filed (on September 25, 2025). Nor did Defendant file a motion for reconsideration. Thus, Defendant has waived this argument. *See Universal-Inv.-Gesellschaft mbH v. Seagate Tech. Holdings plc*, No. 23-CV-3431, 2025 WL 2494371, at *3 (N.D. Cal. Aug. 29, 2025) ("[Defendant] did not make this argument in its motion to dismiss, and as such, it is waived . . . [and] . . . is similarly not suitable for certification for interlocutory appeal."); *Spread Your Wings, LLC v. AMZ Grp. LLC*, No. 20-CV-3336, 2020 WL 7122513, at *2 (N.D. Cal. Dec. 4, 2020) ("[P]laintiffs present new arguments . . . that they did not argue or failed to develop in briefing on [the] motion to dismiss. To the extent plaintiffs disagree with the [c]ourt's analysis . . . an interlocutory appeal . . . is not the appropriate mechanism for seeking reconsideration . . . .") (citation omitted); *Jackson v. Placer Cnty.*, No. CIV. S-05-79, 2007 WL 2127528, at *4 (E.D. Cal. July 24, 2007) ("Because plaintiff did not raise this argument. . . in opposing defendants' motion, she cannot now argue that [it] provides her grounds for interlocutory appeal . . . .").

### C. There is No Controlling Question of Law as to Which There is a Substantial Difference of Opinion

#### 1. There is no absence of controlling law

"To determine if a 'substantial ground for difference of opinion' exists under § 1292(b), courts must examine to what extent the controlling law is unclear." *Academy Mortg.*, 2018 WL 6592782, at *3 (citing *Couch*, 611 F.3d at 633). "For example, this prong is satisfied if 'the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, . . . or if novel and difficult questions of first impression are presented.'" *ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022) (citation omitted). But "'just because a court is the first to rule on a particular question or just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will support an interlocutory appeal.'" *Academy Mortg.*, 2018 WL 6592782, at *3 (citing *Couch*, 611 F.3d at 633). And "[a] party's strong disagreement with the Court's ruling is not sufficient for there to be a 'substantial ground for difference.'" *Couch*, 611 F.3d at 633.

There is no absence of controlling law or question of first impression presented here. The Supreme Court made it clear in a line of cases culminating in *TransUnion* that concrete harms for Article III standing include "traditional tangible harms, such as physical harms and monetary harms," and intangible harms can be

concrete if they "have a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." 594 U.S. at 425. In *In re Facebook, Inc. Internet Tracking Litig.*, the Ninth Circuit held that CIPA "codif[ies] a substantive right to privacy" that "ha[d] long been actionable at common law." 956 F.3d 589, 598 (9th Cir. 2020) (citation omitted). There, plaintiffs alleged Facebook tracked users' browsing histories on third-party websites and compiled them into comprehensive personal profiles which it sold to advertisers. *Id.* at 598-99. The court held plaintiffs had standing because they "adequately alleged that Facebook's tracking and collection practices would cause harm or a material risk of harm to their interest in controlling their personal information." *Id.* at 599; *see also Jones v. Ford Motor Co.*, 85 F.4th 570, 574 (9th Cir. 2023) ("A statute that codifies a common law privacy right 'gives rise to a concrete injury sufficient to confer standing.'"). And Defendant concedes that "[i]n the context of CIPA, violation of the right to privacy may give rise to a concrete injury sufficient to confer standing." MTD at 5.

Defendant's true gripe is with "how the Court applied controlling Supreme Court and Ninth Circuit standing standards to the particulars of this case's (alleged) facts." *Ji v. Naver Corp.*, No. 21-cv-5143, 2024 WL 251402, at *2 (N.D. Cal. Jan. 23, 2024). But "[r]outine applications of well-settled legal standards to facts alleged in a complaint are not proper for interlocutory appeal." *Riley's Am. Heritage Farms*

*v. Claremont Unified Sch. Dist.*, No. EDCV 18-2185, 2019 WL 4391128, at *3 (C.D. Cal. May 2, 2019) (Bernal, J.) (citation omitted). Indeed:

> That district courts may reach different conclusions when applying these standards to unique factual scenarios is unremarkable, and does not necessitate an immediate appeal. Were it otherwise, parties could seek interlocutory appeal of virtually any ruling with which they disagree, even at the motion to dismiss stage. And this outcome would be in serious tension with the principle that resorting to the "narrow exception" of an interlocutory appeal is "generally disfavored."

*Ji*, 2024 WL 251402, at *2 (citations omitted); *see also San Jose v. Monsanto Co.*, No. 5:15-cv-3178, 2017 WL 6039670, at *1 (N.D. Cal. Dec. 6, 2017) ("If [plaintiffs] disagree with the [c]ourt's application of the law to the facts, the proper vehicle is a motion for reconsideration, not an interlocutory appeal . . . .") (citation omitted).

And even if there were an absence of controlling law, "disagreement among district courts about an issue that has not yet been addressed by the appropriate court of appeals is generally insufficient to create a substantial ground for difference of opinion for the purposes of 28 U.S.C. § 1292(b)." *A.B. v. Google LLC*, No. 5:23-cv-3101, 2024 WL 4933345, at *6 (N.D. Cal. Dec. 2, 2024) (citing *Getz v. Boeing Co.*, No. C 07-6396, 2009 WL 3765506, at *3 (N.D. Cal. June 16, 2009) ("That other

district courts have interpreted [a matter differently] does not provide a substantial ground for difference of opinion on controlling questions of law" because they "are not binding precedent"); *Clerkin v. Mylife.com, Inc.*, No. C 11-527, 2011 WL 5573944, at *1 (N.D. Cal. Nov. 15, 2011) (no "substantial differences of opinion on controlling questions of law on this issue" merely "because it has not been directly addressed by the Ninth Circuit")).

**2. <u>There is no substantial difference of opinion as to the standing issue before the Court</u>**

Defendant tries to manufacture a dispute by framing the issue for which it seeks certification as: *Does the transmission to third parties of IP addresses and similar information voluntarily shared with websites constitute an injury with a close relationship to a harm traditionally recognized as a basis for a lawsuit*?" Mtn. at 9. But Defendant nowhere defines what it means by "similar information." Nor did the Court find that Plaintiffs "voluntarily shared" any information with anyone – it simply noted that "disclosing an IP address is a basic function of internet use." Order at 5. Indeed, the Court stated that "[n]one of the Plaintiffs consented to CoStar installing the trackers on their browsers." *Id.* at 3.

Further, as argued extensively in opposition to the Motion to Dismiss, Plaintiffs allege more than "transmission to third parties of IP addresses and similar

information": Plaintiffs allege the Trackers identify users' devices and track users' locations, browsing habits, and website activities across websites and browsing sessions. *See* Opp. at 9-10 (citing ¶¶19-64). For this reason, Defendant's cited cases, which involve only the collection and/or transmission of IP addresses, with no allegations of data aggregation or tracking, are inapposite. *See* Mtn. at 14-17 (citing *Oganyan v. BioLife Plasma Servs. L.P.*, No. 1:25-cv-99, 2025 WL 2979619 (E.D. Cal. Oct. 22, 2025); *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-cv-1473, 2025 WL 1745726 (N.D. Cal. June 24, 2025); *Mitchener v. Curiositystream, Inc.*, No. 25-cv-1471, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025);[3] *Rodriguez v. Culligan Int'l Co.*, No. 25-cv-225, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025); *Aviles v. Liveramp, Inc.*, No. 24STCV19869, 2025 WL 487196 (Cal. Super. Jan. 28, 2025); *Sanchez v. Cars.com*, No. 24STCV13201, 2025 WL 487194 (Cal. Super. Jan. 27, 2025)).[4]

**3. *Popa* did not create a new standard for standing in privacy cases and is easily distinguishable**

Defendant also mischaracterizes *Popa*'s holding to try to conjure up a

[3] *Mitchener* involved the same judge and plaintiffs' firm as *Kishani*, and the complaints were "substantively identical." *Mitchener*, 2025 WL 2272413, at *2.

[4] Moreover, *Aviles* and *Sanchez*, as unpublished, intermediate state court decisions, "are not controlling" and thus "insufficient to establish a substantial ground for difference of opinion." *Fandom,* 2024 WL 6903081, at *2 (citations omitted).

substantial difference of opinion. *Popa* did not hold that "there is no Article III standing for the 'tracking' of non-sensitive personal data by website providers," did not create a "new standard for determining Article III standing," and does not "indicate[ ] that the Ninth Circuit will not recognize novel privacy injuries that are not grounded in traditional common law privacy torts." Mtn. at 9, 12, 18. Rather, the court reiterated and expressly the *TransUnion* framework, which "requires a court to assess whether a plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system," and "contemplates a standing inquiry particularized to a plaintiff's circumstances and benchmarked to a specific tort." *Popa*, 153 F. 4th at 791. Further, *Popa* confirmed that *Facebook* remains good law, expressly stating that it "need not revisit" that decision because Facebook's alleged compilation of "personally identifiable browsing history" demonstrated "individual circumstances giving rise to the plaintiffs' alleged injuries rather than simply greenlighting a *per se* rule for privacy statutes." *Id.* at 794. Accordingly, *Popa* did not upend settled Ninth Circuit law. *See Camplisson v. Adidas Am., Inc.*, No. 25-cv-603, 2025 WL 3228949, at *6 (S.D. Cal. Nov. 18, 2025) ("[R]ather than introducing new case law that adds heightened requirements for privacy harms, *Popa* uses the same common law rules discussed above and evaluates the specific facts of that case.").

Further, not only did *Popa* not set forth a new standard for Article III standing

as Defendant claims, but it is distinguishable because it involved a completely different technology than that at issue herein – "session replay technology"[5] – which was used on defendant's pet supply website and allegedly captured which products plaintiff's mouse hovered over and clicked on, as well as the street she lived on. *Popa*, 153 F. 4th at 786-87, 791. Importantly, and unlike here, that technology did not involve tracking beyond defendant's website and the information was only used by defendant itself. Indeed, the court analogized the technology to "a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales." *Id.* at 791. As such, Defendant's claim that session replay technology is "far more invasive than what is at issue in this lawsuit" (Mtn. at 12) is wrong. In fact, numerous recent cases involving technology similar to (and even the same as) the Trackers at issue here have distinguished *Popa* in finding standing. Most recently, in *Tsering v. Meta,* the court found:

> The scope of the alleged data collection and the creation of user profiles in this case is materially more invasive than the more limited tracking

[5] As the court explained, session replay technology "allows a business to capture and reproduce customers' interactions with its website," including mouse movements, clicks, and keystrokes, in order to "access useful consumer data, including detailed heat maps of a website that provide information about which elements of a website have high user engagement, how far website users scrolled on the website, and the total clicks within a given area of the website." *Popa*, 153 F. 4th at 786.

> at issue in . . . *Popa*, . . . [where] the tracking of plaintiff's non-sensitive interactions with a single website, . . . did not give rise to a cognizable Article III injury. Here, by contrast, [plaintiffs] allege not only that their geolocation data has monetary value, but also that Meta was able to monetize their data by collecting it, creating comprehensive user profiles, incorporating it into its advertising products, and selling it for advertising purposes. Accordingly, [p]laintiffs have adequately pleaded an entitlement to [Meta's] profits from users' [location] data sufficient to confer Article III standing.

No. 25-cv-1611, 2026 WL 89320, at *3 (N.D. Cal. Jan. 12, 2026) (citing *Facebook*, 956 F.3d at 600); *see also Gilligan v. Experian Data Grp.*, No. 25-cv-2873, 2026 WL 32259, at *2 (N.D. Cal. Jan. 6, 2026) ("The scope of the alleged tracking . . . is materially more invasive than the limited tracking at issue in . . . *Popa* . . . . Plaintiffs allege that Experian compiled detailed profiles by tracking their interactions across many websites, and that the tracking 'across the internet' remains ongoing."); *Camplisson*, 2025 WL 3228949, at *6 ("Rather than just recording clicks and movements . . . [p]laintiffs have alleged that the Trackers [including TikTok Pixel] . . . have collected a broad set of their personal identifying and addressing information . . . Thus, the injury-in-fact requirement is in accordance with traditional

privacy harms and is concrete."); *Ayora v. Inspire Brands, Inc.*, No. 25-cv-3645, 2025 WL 3707561, at *2 (N.D. Cal. Dec. 22, 2025) ("[T]he information allegedly collected [ ] [by TikTok Pixel] is more intrusive than that [ ] in *Popa*. . . . [P]laintiffs allege that [d]efendants' cookies scooped up their historical data and information about where [p]laintiffs came from via referring URLs. Using the same analogy in *Popa*, the alleged information at issue here is beyond what would be observable to a store clerk tasked with monitoring shoppers.").[6]

**4. <u>There are mixed questions of fact and law</u>**

"[A] question of 'law' under § 1292(b) means a 'pure question of law' rather

[6] Several other post-*Popa* cases have also found standing based on allegations similar to Plaintiffs' here. *See, e.g.*, *Hassid v. Alex and Ani, LLC*, No. CV 25-679, ECF No. 49, at 3-5 (C.D. Cal. Jan. 20, 2026) (Pls. Ex. 2) (finding Article III standing based on defendant's use of TikTok Tracker on its website, based in large part on *Facebook* and *TransUnion*); *Pemberton v. Rest. Brands Int., Inc.*, No. 25-cv-3647, 2025 WL 3268404, at *3 (N.D. Cal. Nov. 24, 2025) ("Plaintiff alleges [d]efendants "permit the Third Parties to use cookies and other tracking technologies to collect, track, and compile users' . . . browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data. . . . Plaintiff therefore alleges [d]efendants deprived him of control of his personal information regarding his online activity, which is a concrete injury to his right to privacy sufficient for Article III standing.") (citation omitted); *Walsh v Dollar Tree Stores, Inc.*, No. 25-cv-1601, 2025 WL 2939229, at *10 (N.D. Cal. Oct. 16, 2025) (allegations that defendant collected browsing history, demographic information, interests and preferences, device information, user identifiers, and geolocation were sufficient to establish standing); *Deivraprakash v. Condé Nast Digit.*, No. 25-cv-4021, 2025 WL 2779193, at *2 (N.D. Cal. Sept. 30, 2025) ("Just as the plaintiffs [in *Facebook*] brought claims based on the creation of profiles using their internet browsing history, [plaintiff] alleges that internet trackers allowed third parties to generate profiles reflecting his personal information. That privacy injury finds historical analogues in injuries redressable under the common law. Thus, [plaintiff's]'s alleged injury satisfies the requirements of *Popa*.").

than a mixed question of law and fact or the application of law to a particular set of facts." *McFall*, 2021 WL 3185083, at *2 (citation omitted). Thus, "[c]ourts regularly decline to exercise their discretion to certify where [like here] the development of a factual record would likely aid the appellate court in its consideration of the legal questions presented." *Cousineau v. Microsoft Corp.*, No. C11-1438, 2012 WL 12847005, at *2 (W.D. Wash. Aug. 22, 2012). Indeed, Defendant's very framing of the purported controlling issue – "Does the transmission to third parties of IP addresses and *similar information*…." – raises a clear factual issue regarding what "similar information" means. Moreover, as the above discussion makes clear, "[t]he cases cited by [d]efendant to illustrate that there is a difference of opinion are factually distinct, rendering this not a situation in which a question of law can be resolved without delving into the facts of this case." *Gerber v. Twitter, Inc.*, No. 4:23-CV-186, 2025 WL 1359217, at *2 (N.D. Cal. May 9, 2025).

The court's decision in *James v. Walt Disney Co.*, No. 23-cv-2500, 2024 WL 664811 (N.D. Cal. Feb. 16, 2024) is instructive. There, the court denied certification of interlocutory appeal of an order denying a motion to dismiss on Article III standing grounds because "the exact nature of, e.g., Plaintiffs' browsing history, search history, and purchase behavior is undeveloped," and "[a]lthough the motion to dismiss . . . raised a legal question . . ., the ultimate question of Article III

jurisdiction may turn on a full assessment of the facts, including precisely what information is collected and what is done with the information."[7] *Id.* at 2; *see also* *Shah v. Fandom, Inc.*, No. 24-cv-1062, 2024 WL 6903081, at *2 (N.D. Cal. Dec. 16, 2024) (denying certification because "whether users had a reasonable expectation of privacy in their IP addresses vis a vis third parties is a fact-sensitive question. Allowing discovery to proceed will permit development of a more fulsome record for consideration of the issue."); *Cousineau*, 2012 WL 12847005, at *2 ("[I]nterlocutory appeal . . . is inappropriate because it would present the Ninth Circuit with legal questions that are best considered with the benefit of a fully developed factual record."); *Lenz v. Universal Music Corp.*, No. C07-3783, 2008 WL 4790669, at *3 (N.D. Cal. Oct. 28, 2008) (even if "reversal . . . might lead to dismissal of [plaintiffs'] claim, an interlocutory appeal prior to any discovery would deprive the appellate court of a factual record that likely would aid its consideration of the legal questions presented.").

In this regard, it is important to note that under California law, the degree of

[7] The court noted defendant's argument (also made here) that appellate guidance was needed because of the many pending lawsuits "based on the use of commonplace web tracking technologies," but concluded "the outcome of the litigation would be more materially advanced if the court were to establish the full set of relevant facts on which to base the determination whether there is sufficient Article III injury, especially if that determination is fact intensive." *James*, 2024 WL 664811, at *3.

sensitivity of the information allegedly collected and/or disclosed are generally fact questions. *See*, *e.g.*, *Ayora*, 2025 WL 3707561, at *3 ("[D]etermining the offensiveness of an invasion [of privacy] requires consideration of "the degree of the intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." (citations omitted); *see also Facebook*, 956 F.3d at 606 (9th Cir. 2020) ("The ultimate question of whether Facebook's tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage.").

Allowing discovery here in order to develop a full factual record regarding, *inter alia*, precisely what information is collected by the Trackers and what that information is used for would better serve judicial economy, aid the Court in resolving the complex issues presented in this case, and help crystalize the issues for any future appeal. Thus, the Court should deny Defendant's Motion.

**5. Reversal would not materially affect the outcome here**

"A question is 'controlling' if 'resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *Marshall*, 2025 WL 2683982, at *4 (citing *Cement Antitrust Litig.*, 673 F.2d at 1026). "[S]ection 1292(b)'s conditional language has long been read to require courts to consider the

effect of immediate review and *reversal*, not just review." *Academy Mortg.*, 2018 WL 6592782, at *3 (citation omitted) (emphasis in original).

Defendant argues that if its appeal is successful, "there is 'no question that . . . the case will be over,' because Plaintiffs would lack standing for their only claim." Mtn. at 17. But "[i]f the Court were to accept that argument, essentially all 'potentially dispositive interlocutory orders would be automatically appealable.'" *Gerber*, 2025 WL 1359217, at *2 (citation omitted). Further, Defendant is wrong. The Court found standing on <u>two</u> separate grounds: first, based on alleged privacy violations, and second, because "this collection and transmission economically harms Plaintiffs, because such data underpinning targeted advertising is economically valuable." Order at 5 (citing ¶26); *see Van v. LLR, Inc.*, 61 F.4th 1053, 1064 (9th Cir. 2023) ("[A]ny monetary loss, even one as small as a fraction of a cent, is sufficient to support standing"); *Facebook*, 956 F.3d at 600 (standing where "Facebook sold user data to advertisers"); *Brooks v. Thomson Reuters Corp.*, No. 21-cv-1418, 2023 WL 9316647, at *6 (N.D. Cal. Aug. 10, 2023) (standing where data was "sold and transmitted to third parties"). Thus, even if the Ninth Circuit reversed on the standing issue identified by Defendant, "[b]ecause a substantial amount of litigation remains in this case regardless of the correctness of the Court's ruling, [defendant]'s arguments that interlocutory appeal would advance the

resolution of this litigation are unpersuasive." *Friedman v. 24 Hour Fitness USA, Inc.*, No. CV 06-6282, 2009 WL 545783, at *2 (C.D. Cal. Mar. 3, 2009).[8]

Moreover, any dismissal would be without prejudice. *See Oakland v. Hotels.com LP*, 572 F.3d 958, 962 (9th Cir. 2009) ("Claims should be dismissed with prejudice only when it is clear that no amendment could cure a defect in the complaint."); *Fleck & Assoc., Inc. v. Phoenix*, 471 F.3d 1100, 1106-07 (9th Cir. 2006) (dismissal for lack of standing is without prejudice). Thus, in the event of dismissal, Plaintiffs could amend the Complaint to bolster their standing allegations.[9]

---

[8] *Cf. Academy Mortg.*, 2018 WL 6592782, at *3 ("[A] determination on appeal . . . would materially affect the outcome of this litigation—[the] complaint would be dismissed in its entirety."); *Canela v. Costco Wholesale Corp.*, No. 13-CV-3598, 2018 WL 3008532, at *1 (N.D. Cal. June 15, 2018) (issue controlling where "a reversal on appeal would mean that ... [plaintiff] cannot pursue her [ ] claim in federal court at all"); *Bennett v. Islamic Republic of Iran*, 927 F. Supp. 2d 833, 846 n.15 (N.D. Cal. 2013) ("[T]he issues . . . are controlling" because if party seeking certification prevails on appeal, it "is entitled to dismissal").

[9] Plaintiffs requested leave to amend if the Court granted the Motion to Dismiss. *See* Opp. at 25. Leave to amend "shall be freely given when justice so requires." *Lopez v. RHP Enters., Inc.*, No. EDCV 20-58, 2020 WL 3882929, at *2 (C.D. Cal. Apr. 15, 2020) (Bernal, J.) (l (citing FED. R. CIV. P. 15(a)). Plaintiffs could amend the Complaint to add allegations regarding the sensitive nature of the data collected – such as The Trade Desk's statement that the data it collects "may reveal demographic information or inferences about gender, race, ethnicity, religion, health, or sex life or sexual orientation." Pls. Ex. 3 at 35. And Plaintiffs could enhance their allegations regarding the tracking of users across the internet by adding, for example, the statement in CoStar's Cookie Policy that "[c]ookies may permit us and our vendors to track you overtime and across different websites and devices." Pls. Ex. 4 at 40.

### D. <u>An Interlocutory Appeal Will Not Materially Advance the Ultimate Termination of This Case</u>

The third element "is related to the first requirement that there be a controlling question of law." *Nacarino v. Chobani, LLC*, No. 20-cv-7437, 2022 WL 833328, at *2 (N.D. Cal. Mar. 21, 2022) (citation omitted). "Considering the effect of a reversal on the case, an interlocutory appeal materially advances the termination of the litigation where it 'promises to advance the time for trial or to shorten the time required for trial.'" *Id.* (citation omitted). Defendant argues that a successful appeal would terminate the case because "Plaintiffs would lack standing for their only claim." Mtn. at 17. Not so. There were two separate bases for the Court's finding of standing so, even if Defendant were successful on appeal, the second basis (economic injury) is sufficient for Plaintiffs to proceed. *See supra* §IV.C.5. Further, Plaintiffs could amend the Complaint in the event of dismissal. *See id.*

### E. <u>The Court Should Not Issue a Stay</u>

In deciding whether to issue a stay pending interlocutory appeal, courts consider: "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether [a] stay will substantially injure the other parties…; and (4) where the public interest lies.'" *Bowen v. Target Corp.*, No. CV 16-2587, 2021 WL

4860689, at *4 (C.D. Cal. Sept. 17, 2021) (Bernal, J.) (citing *Hilton v. Braunskill*, 581 U.S. 770, 776 (1987)). "The moving party must establish each of the four factors to justify a stay." *Fernandez v. Quad at Whittier, LLC*, No. CV 20-5406, 2020 WL 4804992, at *1 (C.D. Cal. July 14, 2020) (citing *Alliance for The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

First, Defendant has not made a strong showing it is likely to succeed on the appeal. *See generally supra* §IV.C. Defendant argues that two post-*Popa* cases "have rejected claims based on 'novel privacy injuries that are not grounded in traditional common-law privacy torts.'" Mtn. at 18. But those cases do not support Defendant's argument,[10] and the overwhelming weight of post-*Popa* cases uphold plaintiffs' standing based on allegations substantially similar to those here. *See supra* §IV.C.3.

Second, while Defendant may have to "expend[ ] significant time and resources continuing to defend against Plaintiffs' claim" (Mtn. at 18), "being required to defend a suit, without more, does not constitute a clear shape of hardship or inequity" to justify a stay. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir.

[10] *Oganyan* involved "the one-time collection, and dissemination to [third parties], of a user's IP address and email address," 2025 WL 2979619, at *3, with no allegations of tracking. And in *DellaSala v. Samba Tv, Inc.*, the court rejected defendant's standing challenge and noted that "*Popa* did not set forth a new rule of law." No. 3:25-cv-3470, 2025 WL 3034069, at *2 (N.D. Cal. Oct. 30, 2025). Further, the language from *Samba Tv* quoted by Defendant was in the context of a 12(b)(6) challenge to plaintiffs' intrusion upon seclusion claim, not standing. *See id.* at *5.

2005). Indeed, "[t]hose are necessary incidents every time a court faces a motion to stay pending an appeal. . . . *In re Kenny G. Enters., LLC*, No. 8:14-cv-246, 2014 WL 1806891, at *3 (C.D. Cal. May 7, 2014).

The third factor also weighs against a stay. Plaintiffs "ha[ve] an interest in having [their] case resolved quickly," *Volkswagon Grp. v. Saul Chevrolet, Inc.*, No. 5:15-cv-505, 2015 WL 5680317, at *3 (C.D. Cal. Sept. 25, 2015), and "lengthy and indefinite stays place a plaintiff effectively out of court . . . [and] . . . create a danger of denying justice by delay." *Blue Cross & Blue Shield v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 724 (9th Cir. 2007) (quotations omitted). In the Ninth Circuit, it takes "approximately 6-12 months from the notice of appeal date" to oral argument, and cases are decided "within 3 months to a year after submission."[11] An indefinite stay of up to 12 or more months would "make it more difficult to reach the class members and will increase the likelihood that relevant evidence will dissipate." *Cabiness v. Educ. Fin. Solutions, LLC,* No. 15-cv-1109, 2017 WL 167678, at *3 (N.D. Cal. Jan. 17, 2017); *see also Greer v. Dick's Sporting Goods, Inc.*, No. 2:15-cv-1063, 2018 WL 372753, at *3 (E.D. Cal. Jan. 10, 2018) ("open-ended stay for upwards of two years . . . risks possible prejudice to class members

---

[11] https://www.ca9.uscourts.gov/general/faq/ (Questions 18 & 19) (last visited Jan. 20, 2026). And any motion for rehearing would add "a few months or longer" to the appeal's final resolution. *See id.* (Question 19).

whose day in court would be placed on an indefinite hold”).[12]

As for the final factor, the arguments that “the public interest is furthered by the ‘accuracy of judicial proceedings and [ ] efficient use of government resources,” and a stay would “prevent unnecessary expenditure of resources” (Mtn. at 19) could “be made in any motion for stay pending appeal ….” *Montanez v. Gerber Childrenswear, LLC*, No. CV097420, 2012 WL 12932032, at *2 (C.D. Cal. Feb. 2, 2012) (denying stay). Further, because the case could still proceed if the appeal were successful (*see supra* §IV.C.5), it would be inefficient to stay the case. Finally, “i[i]t would undermine public confidence in the judicial system if claims were permitted to go stale pending the completion of an appeal that [like here] has at best a borderline chance of success.” *Volkswagon Grp.*, 2015 WL 5680317, at *5.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant’s Motion for Certification of Interlocutory Appeal Pursuant to 28 U.S.C. §1292(b) and Stay Pending Resolution of Interlocutory Appeal.

[12] By contrast, in two of Defendant’s cited cases (Mtn. at 19), this factor favored a stay because – unlike here – appeals had already been filed and briefing schedules had been set, indicating that the appeals “w[ould] be concluded within a reasonable time . . . .” *Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist.*, No. EDCV13883, 2015 WL 13764632, at *3 (C.D. Cal. Sept. 8, 2015) (Bernal J.); *see also Murphy v. DirecTV, Inc.*, No. 2:07-cv-6465, 2008 WL 8608808, at *3 n.2 (C.D. Cal. July 1, 2008) (“[T]he Ninth Circuit has already issued a briefing schedule under which all briefing will be completed by the end of the year.”).

Dated: January 21, 2026

**KAHN SWICK & FOTI, LLC**

*/s/ Melissa H. Harris*
Kim E. Miller (SBN 178370)
kim.miller@ksfcounsel.com
1901 Avenue of the Stars, 2nd Floor
Los Angeles, California 90067
Telephone: (504) 455-1400

Melissa H. Harris (admitted *pro hac vice*)
melissa.harris@ksfcounsel.com
1100 Poydras Street, Suite 960
New Orleans, LA 70163
Telephone: (504) 455-1400

**DON BIVENS PLLC**
Don Bivens (admitted *pro hac vice*)
don@donbivens.com
15169 N. Scottsdale Road, Suite 205
Scottsdale, AZ 85254
Telephone: (602) 762-2661

*Counsel for Plaintiffs and the Putative Class*

## LOCAL RULE 11-6.1 CERTIFICATION

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,403 words, which complies with the word limit of L.R. 11-6.1, and is 25 pages, which complies with the page limit of the Honorable Jesus G. Bernal's Standing Order.

*/s/ Melissa H. Harris*