LATHAM & WATKINS LLP
Michael H. Rubin (Bar No. 214636)
*michael.rubin@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
415-395-0600
Fax: 415-395-8095

Alexander C.K. Wyman (Bar No. 295339)
*alex.wyman@lw.com*
355 South Grand Avenue Suite 400
Los Angeles, CA 90071
213-485-1234
Fax: 213-891-8763

Nicholas J. Boyle
*nicholas.boyle@lw.com*
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
202-637-2200
Fax: 202-637-2201
*Admitted Pro Hac Vice*

*Attorneys for Defendant CoStar Group, Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DYWANNA DRUMMER, ANTHONY D'ANTONIO, SCHALISE LEE, CYNTHIA RUBIO, and MARY LEE WALLACE, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

COSTAR GROUP, INC.,

Defendant.

Case No. 5:25-CV-01047-JGB-SP

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b) AND STAY PENDING RESOLUTION OF INTERLOCUTORY APPEAL**

Date: February 23, 2026
Time: 9:00 AM PST
Judge: Hon. Jesus G. Bernal
Dept.: Riverside, Courtroom 1

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. The Order Presents a Controlling Question of Law That Requires Appellate Review .......... 1

1. Plaintiffs Mischaracterize Existing Precedent and the Standard Established by *Popa* .......... 2

2. Plaintiffs Misconstrue the Controlling Question of Law CoStar Seeks to Certify for Appeal .......... 3

B. Plaintiffs' Cited Caselaw Underscores the Extent of Disagreement on Whether Sharing IP Addresses and Similar Data with Third Parties Can Confer Standing .......... 5

C. Reversal of the Court's Order Would Materially Advance the Litigation by Eliminating Key Standing Arguments .......... 7

D. CoStar's Motion Is Timely .......... 8

E. CoStar Has Not Waived Arguments Based on *Popa* Because the Court's Order Raised a Novel and Appealable Question .......... 9

III. A Stay of the Case Is Warranted .......... 10

IV. CONCLUSION .......... 11

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allen v. Protective Life Ins. Co.*,
2020 WL 5878276 (E.D. Cal. Oct. 2, 2020) .................................................... 10

*Biederman v. FCA US LLC*,
2025 WL 1266907 (N.D. Cal. May 1, 2025) ..................................................... 7

*Bradshaw v. Lowe's Cos.*,
2025 WL 3171740 (S.D. Cal. Nov. 12, 2025) ................................................... 9

*Brown v. Hain Celestial Grp., Inc.*,
2012 WL 4364588 (N.D. Cal. Sept. 24, 2012)..................................................... 4

*Brown v. Wal- Mart Stores, Inc.*,
2012 WL 5818300 (N.D. Cal. Nov. 15, 2012), *aff'd* 651 F. App'x 672 (9th Cir. 2016) ........................................................................................ 11

*Callahan v. Peopleconnect, Inc.*,
2022 WL 2132912 (N.D. Cal. June 14, 2022) .................................................... 8

*Clevenger v. Riviana Foods Inc.*,
2020 WL 2527948 (C.D. Cal. Apr. 7, 2020)........................................................ 6

*Dawidzik v. Tesla, Inc.*,
2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) ................................................ 2, 6

*de Ayora v. Inspire Brands, Inc.*,
2025 WL 3707561 (N.D. Cal. Dec. 22, 2025) .................................................... 9

*Deivaprakash v. Condé Nast Digit.*,
2025 WL 2779193 (N.D. Cal. Sept. 30, 2025)..................................................... 5

*Gillespie v. Centerra Servs. Int'l, Inc.*,
2022 WL 18584762 (C.D. Cal. Oct. 26, 2022) .................................... 1, 10, 11

*Gilligan v. Experian Data Corp.*,
2026 WL 32259 (N.D. Cal. Jan. 6, 2026) .......................................................... 5

*Hassid v. Alex and Ani, LLC*,
No. CV 25-679 (C.D. Cal. Jan. 20, 2026)........................................................... 6

*ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*,
22 F.4th 1125 (9th Cir. 2022) .......... 7

*In re Cement Antitrust Litig.*,
673 F.2d 1020 (9th Cir. 1982) .......... 4

*John v. United States*,
247 F.3d 1032 (9th Cir. 2001) .......... 8

*Juliana v. United States*,
2017 WL 2483705 (D. Or. June 8, 2017) .......... 8

*Lockyer v. Mirant Corp.*,
398 F.3d 1098 (9th Cir. 2005) .......... 11

*Lopez v. Youngblood*,
2009 WL 2062883 (E.D. Cal. July 15, 2009) .......... 8

*Murphy v. DirecTV, Inc.*,
2008 WL 8608808 (C.D. Cal. July 1, 2008) .......... 11

*Ocean S. v. Los Angeles Cnty.*,
2024 WL 5298601 (C.D. Cal. Dec. 4, 2024) .......... 7

*Oganyan v. BioLife Plasma Servs. L.P.*,
2025 WL 2979619 (E.D. Cal. Oct. 22, 2025) .......... 6, 9

*Omni MedSci, Inc. v. Apple Inc.*,
2020 WL 759514 (N.D. Cal. Feb. 14, 2020) .......... 2,

*Parker v. Cnty. of Riverside*,
2022 WL 2204146 (C.D. Cal May 5, 2022) .......... 6, 8

*Pemberton v. Rest. Brands Int., Inc.*,
2025 WL 3268404 (N.D. Cal. Nov. 24, 2025) .......... 6

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 2, 3, 4, 5

*Price v. Converse, Inc.*,
2025 WL 3295119 (C.D. Cal. Sept. 30, 2025) .......... 6

*Reese v. BP Exploration*,
643 F.3d 681 (9th Cir. 2011) .......... 6, 7

*Rodriguez v. Culligan Int'l Co.*,
2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) .................................................... 9

*Salazar v. Paramount Global d/b/a 247Sports*,
Case No. 25-459 (U.S. Jan. 26, 2026)................................................................ 3

*Tsering v. Meta Platforms, Inc.*,
2026 WL 89320 (N.D. Cal. Jan. 12, 2026) ........................................................ 5

*United States v. Adam Bros. Farming, Inc.*,
369 F. Supp. 2d 1180 (C.D. Cal. 2004)............................................................. 7

*United States v. Woodbury*,
263 F.2d 784 (9th Cir. 1959)............................................................................. 4

*Walsh v Dollar Tree Stores, Inc.*,
2025 WL 2939229 (N.D. Cal. Oct. 16, 2025)..................................................... 6

# I. INTRODUCTION

In the wake of the Ninth Circuit's decision in *Popa v. Microsoft Corp.*, this Circuit has seen a growing body of contradictory caselaw develop on the issue of standing in data privacy cases. Some courts have interpreted *Popa* to find that a website's use of so-called "tracking software" to collect and transmit IP addresses and similar information in which there is no expectation of privacy is not enough to confer standing; other courts, including this Court in denying CoStar's motion to dismiss, have concluded the opposite. Plaintiffs seek to downplay this discordance among district courts confronted with this issue, characterizing *Popa* as simply an extension of *TransUnion* and *In re Facebook* and the divergent caselaw as business as usual in data privacy litigation. They are wrong. And in doing so, they present an inaccurate account of controlling Ninth Circuit precedent and ignore this Court's focus in its Order on the transmission of data rather than the nature of the data at issue. Whether the onward transmission to third parties of non-sensitive data like IP addresses can form the basis of Article III standing after *Popa* is a controlling question of law on which district courts have increasingly differed—and the resolution of which would materially advance not just this litigation but a tidal wave of others like it that are premised on the same theory of injury. Plaintiffs offer no compelling reason to the contrary, nor do their technical and procedural challenges provide a basis to deny CoStar's motion. Accordingly, this Court should grant CoStar's Motion, certify its question for interlocutory appeal, and impose a stay pending appeal.

# II. ARGUMENT

## A. The Order Presents a Controlling Question of Law That Requires Appellate Review

The Court's Order presents a purely legal question regarding standing for privacy harms under new Ninth Circuit guidance. And questions of standing present "controlling issues of law." *Gillespie v. Centerra Servs. Int'l, Inc.*, 2022 WL

18584762, at *2 (C.D. Cal. Oct. 26, 2022) (Bernal, J.) ("Standing and subject-matter jurisdiction are controlling issues of law." (quoting *Omni MedSci, Inc. v. Apple Inc.*, 2020 WL 759514, at *1 (N.D. Cal. Feb. 14, 2020))). In opposing certification of this question, however, Plaintiffs mischaracterize binding precedent and misconstrue the question CoStar seeks to certify.

**1. Plaintiffs Mischaracterize Existing Precedent and the Standard Established by *Popa***

Plaintiffs seek to minimize *Popa*, portraying the legal landscape of standing in data privacy cases as largely unaffected by its ruling. Specifically, Plaintiffs claim that *TransUnion* and *In Re Facebook* are "clear" and "controlling" law that governed before and after *Popa*, and suggest that *Popa* merely affirmed these decisions without disturbing the legal principles they established. *See* Dkt. 49 ("Opp.") at 8-9 (characterizing *In re Facebook* as holding that CIPA "codif[ies] a substantive right to privacy that ha[d] long been actionable at common law" (cleaned up)); *id.* at 13 ("*Popa* did not upend settled Ninth Circuit law.").

In *Popa*, however, the Ninth Circuit expressly addressed the "diverge[nce]" among courts regarding how to interpret *TransUnion*, and held that "*TransUnion* requires a court to assess whether an individual plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system." *Popa v. Microsoft Corp.*, 153 F.4th 784, 790-91 (9th Cir. 2025). In the context of privacy harms, *Popa* further clarified that "embarrassing, invasive, or [] private" information must be collected to give rise to a "highly offensive" intrusion with a common law analog. *Id.* In doing so, *Popa* set forth a novel interpretation of *TransUnion* to govern claims of standing based on alleged privacy harms. Further, the court in *Popa* held that *In re Facebook* relied on highly "individual circumstances," and that its "analysis finds no support in *TransUnion*." *Popa*, 153 F.4th at 794; *see also Dawidzik v. Tesla, Inc.*, 2025 WL 3786963, at *4 (C.D. Cal. Dec. 29, 2025) (rejecting application of *In re Facebook* to a CIPA case involving transmission of data to a third party because *In re Facebook*

"finds [no] support in *TransUnion*" (citing *Popa*, 153 F.4th at 794)). Accordingly, contrary to Plaintiffs' contention, *Popa* established a new standard for determining Article III standing in privacy cases, which implicates the question CoStar seeks to certify.[1]

### 2. Plaintiffs Misconstrue the Controlling Question of Law CoStar Seeks to Certify for Appeal

Plaintiffs attack a strawman when they seek to distinguish the cases cited in CoStar's Motion on the basis that they do not address "allegations of data aggregation or tracking." Opp. at 11-12. CoStar's Motion does not seek certification of a question on standing in cases related to "allegations of data aggregation or tracking," because that is not the legal question posed by the Court's Order. Rather, the Court's Order repeatedly emphasized the transmission of IP addresses and similar information to third parties as the basis of a privacy injury in this case. *See* Dkt. 41 ("Order") at 5 ("[T]he harm Plaintiffs allege [is] the surreptitious collection ***and transmission*** of their economically valuable IP addresses for [] targeted tracking . . . . This distinguishes Plaintiffs' case from [a case] where the plaintiffs alleged that Facebook used their IP addresses for advertising itself after plaintiffs provided their IP addresses directly to Facebook." (citations omitted, emphasis added)); *id.* at 6 ("Plaintiffs have clearly consented to disclosing their IP addresses . . . . [I]t is the *further* retention ***and transmission*** of their IP addresses that concerns Plaintiffs." (emphasis added)); *see also* Dkt. 1 (Complaint) ¶ 22

[1] *Popa* is likely to be one of many appellate decisions in the near future affecting the viability of data privacy claims like the one asserted by Plaintiffs here. Just last week, for example, the Supreme Court agreed to hear an appeal involving claims under the Video Privacy Protection Act ("VPPA")—a 1998 law that protects consumers' private video rental history—concerning whether certain internet users can bring a VPPA claim against websites that share their data with third parties like Meta. *See Salazar v. Paramount Global d/b/a 247Sports*, Case No. 25-459. The VPPA, like CIPA, has been repeatedly (and improperly) used in litigation to target the use of internet technology far outside the statutory intent, and cases like *Popa* and *Salazar* are providing the much-needed judicial scrutiny that the application of these laws requires.

(asserting that the Trackers at issue function by causing "the browser to [] send the cookie, along with the user's IP address, to the third-party"). Thus, data aggregation and tracking by a singular website provider is not the question at issue—and, in any case, is not an injury that would confer standing under *Popa*. *See Popa*, 153 F.4th at 791 ("Popa does not explain how the tracking of her interactions with the PSP website caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law.").[2] Appeal in this matter is necessary to resolve the controlling question raised by the Order, which is whether there can be any privacy interest when this voluntarily shared data is then transmitted ***to third parties***.

Moreover, even if Plaintiffs propose alternative theories of standing, a controlling question need not be "dispositive of the lawsuit in order to be controlling," *United States v. Woodbury*, 263 F.2d 784, 787 (9th Cir. 1959), and "its resolution does not [need to] determine who will prevail on the merits," *Brown v. Hain Celestial Grp., Inc.*, 2012 WL 4364588, at *2 (N.D. Cal. Sept. 24, 2012). A question is controlling if "resolution of the issue on appeal could materially affect the outcome of the litigation." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982). Determining whether Plaintiffs have standing as to the transmission of IP addresses and similar information that is voluntarily shared on the internet would address a significant (if not dispositive) standing argument in this case and others, and therefore qualifies as a "controlling question."

Further, Plaintiffs' contention that the Motion advances a mixed question of law and fact misses the mark. The question CoStar seeks to certify in no way requires "the development of a factual record" to determine "the sensitivity of the information allegedly collected and/or disclosed." Opp. at 17, 18-19 (citations omitted). To the

---

[2] To the extent that Plaintiffs suggest their injury is "data aggregation and tracking" by third parties using trackers on CoStar's websites, such an injury inherently involves transmission of IP addresses and similar data to a third parties and therefore implicates CoStar's proposed question.

contrary, the Court's analysis of standing in its Order focused on the "transmission" to third parties of data (IP addresses) that Plaintiffs "clearly consented to disclosing" to CoStar. Order at 5, 6. The Court's analysis thus presumes that the data was non-sensitive and that the injury arose ***when it was shared***. Accordingly, the question posed by the Court's Order, which CoStar seeks to certify for appeal, is the purely legal question of whether transmission of non-sensitive data, like IP addresses, to third parties creates standing by "caus[ing] . . . harm [] similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *See Popa*, 153 F.4th at 791.

### B. Plaintiffs' Cited Caselaw Underscores the Extent of Disagreement on Whether Sharing IP Addresses and Similar Data with Third Parties Can Confer Standing

Plaintiffs cite numerous "post-*Popa* cases" that have found "standing based on allegations similar to Plaintiffs'" and argue that there is no substantial difference of opinion on the issue presented. *See* Opp. at 11-12, 14-16 & n.6. But these cases only prove CoStar's point. Many of these cases following *Popa* have found that the use of third-party trackers, which function by transmitting data from the host website to a third party, is sufficient to confer standing. *See, e.g.*, *Tsering v. Meta Platforms, Inc.*, 2026 WL 89320, at *2, *3 (N.D. Cal. Jan. 12, 2026) (finding standing where trackers "transmitted" data to Meta, which "was able to monetize [] data by . . . selling it for advertising purposes," and noting that, "[i]n *Popa*, the tracking of plaintiff's non-sensitive interactions with a single website . . . did not give rise to a cognizable Article III injury"); *Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *2 (N.D. Cal. Jan. 6, 2026) (similar); *Deivaprakash v. Condé Nast Digit.*, 2025 WL 2779193, at *2 (N.D. Cal. Sept. 30, 2025) (finding an injury pursuant to *Popa* where "internet trackers" shared information with third parties and "allowed third parties to generate profiles reflecting [plaintiff's] personal information").[3]

[3] Notably, other cases with "similar [] allegations" cited by Plaintiffs as "post-*Popa*" guidance do not reference or analyze *Popa*. *See* Opp. at 16 n.6 (citing Dkt. 50-1

Yet in the short time since *Popa* was decided, other courts across the Ninth Circuit have reached the opposite conclusion when analyzing the same or similar technology. *See, e.g.*, *Dawidzik*, 2025 WL 3786963, at *3-4 (analyzing *Popa* to find no Article III standing where the "[p]laintiff allege[d] [that] [d]efendant embedded its HTML scripts with three tracking pixels that caused the user's browser to transmit certain data to third-party servers only when the user visited Defendant's website"); *Oganyan v. BioLife Plasma Servs. L.P.*, 2025 WL 2979619, at *3 (E.D. Cal. Oct. 22, 2025) ("Plaintiffs have failed to establish that defendants' one-time collection and dissemination of plaintiffs' IP and email addresses, through the third-party trackers, sufficiently impacts plaintiffs' privacy interests to give rise to a concrete injury."); *Price v. Converse, Inc.*, 2025 WL 3295119, at *3 (C.D. Cal. Sept. 30, 2025) ("Plaintiff contends [that] the TikTok Software . . . fingerprint[s] [] data and deanonymize[s] Plaintiff . . . . These allegations are insufficient to establish a 'concrete injury,' as required to establish standing.").

Plaintiffs cite only the cases that are favorable to them, while ignoring an ever-growing body of caselaw in conflict. This conflict underscores that "reasonable judges" do in fact "differ on the correct outcome" of CoStar's proposed certified question, *Clevenger v. Riviana Foods Inc.*, 2020 WL 2527948, at *3 (C.D. Cal. Apr. 7, 2020) (quoting *Reese v. BP Exploration*, 643 F.3d 681, 687 (9th Cir. 2011)), and emphasizes the need for appellate intervention to clarify the scope of privacy harms in the wake of *Popa*, *see Parker v. Cnty. of Riverside*, 2022 WL 2204146, at *3 (C.D. Cal May 5, 2022) (Bernal, J.) (granting Section 1292(b) motion where "at least six other district court decisions within the Ninth Circuit" conflicted on the issue").

---

(*Hassid v. Alex and Ani, LLC*, No. CV 25-679, at 3-5 (C.D. Cal. Jan. 20, 2026) (Pls. Ex. 2)); *Pemberton v. Rest. Brands Int., Inc.*, 2025 WL 3268404, at *3 (N.D. Cal. Nov. 24, 2025); *Walsh v Dollar Tree Stores, Inc.*, 2025 WL 2939229, at *10 (N.D. Cal. Oct. 16, 2025). This further illustrates that courts in this Circuit are uncertain about the contexts in which *Popa* applies and require clarification on *Popa*'s scope from the Ninth Circuit.

### C. Reversal of the Court's Order Would Materially Advance the Litigation by Eliminating Key Standing Arguments

Plaintiffs ignore the impact that resolution of the question CoStar seeks to certify would have on both this litigation and the myriad other, substantially identical data privacy lawsuits currently pending in California courts. Plaintiffs claim that reversal here would not materially advance this litigation because the Court found an alternative theory of standing based on the theory that Plaintiffs' "data underpinning targeted advertising is economically valuable." Opp. at 20 (citations omitted). But "Section 1292(b) does not require that reversal on interlocutory appeal terminate the entire case in order to materially advance the litigation"; rather, "[i]t is sufficient that reversal on interlocutory appeal may streamline the litigation." *Ocean S. v. Los Angeles Cnty.*, 2024 WL 5298601, at *7 (C.D. Cal. Dec. 4, 2024) (citing *Reese*, 643 F.3d at 688); *see also ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1131 (9th Cir. 2022) ("[T]he 'materially advance' prong is satisfied when the resolution of the question 'may appreciably shorten the time, effort, or expense of conducting' the district court proceedings." (cleaned up)). At the very least, resolution of CoStar's controlling question will prevent burdensome motion practice and discovery premised upon Plaintiff's current theory of injury from third-party disclosure. *Cf. Biederman v. FCA US LLC*, 2025 WL 1266907, at *6 (N.D. Cal. May 1, 2025) ("Cummins argues the appeal would not materially advance the case because [] there are potential alternate grounds for dismissal . . . . Section 1292(b) only requires that the interlocutory appeal '*may* materially advance' the litigation. [] It very well may do so here."). This "facilitate[s] disposition of the action by getting a final decision on a controlling legal issue sooner, rather than later in order to save the courts and the litigants unnecessary trouble and expense." *United States v. Adam Bros. Farming, Inc.*, 369 F. Supp. 2d 1180, 1182 (C.D. Cal. 2004) (citing *John v. United States*, 247 F.3d 1032, 1051 (9th

Cir. 2001)).[4] Moreover, due to the many CIPA cases currently proceeding under a similar theory of standing, resolution of this question would materially advance these cases and unburden the dockets of both this Court and the other federal and state courts across California.

**D. CoStar's Motion Is Timely**

Plaintiffs acknowledge that there is no time limit for filing a motion for interlocutory appeal, yet they nevertheless seek to challenge CoStar's Motion as untimely. *See* Opp. at 6. Their argument fails. CoStar filed its motion within two months of the Court's Order denying CoStar's motion to dismiss, which courts in the Ninth Circuit have found to be reasonable. *See, e.g.*, *Lopez v. Youngblood*, 2009 WL 2062883, at *3 (E.D. Cal. July 15, 2009) (accepting near-two month filing date); *Juliana v. United States*, 2017 WL 2483705, at *2 n.2 (D. Or. June 8, 2017) (considering merits of interlocutory appeal motion filed four months after decision, noting that "[c]ourts generally reject motions for certification as untimely when they are filed after a delay longer than three months"); *cf. Callahan v. Peopleconnect, Inc.*, 2022 WL 2132912, at *3 (N.D. Cal. June 14, 2022) (finding that filing after five months was unreasonable, but nonetheless considering the merits of the interlocutory appeal motion "in the interest of justice").

Here, CoStar's timing was not only reasonable but warranted, as an important basis of CoStar's Motion is the growing body of discordant caselaw that has developed on the issue CoStar seeks to certify. *See Parker*, 2022 WL 2204146, at *3 (noting that the Court's disagreement with "at least six other district court decisions within the Ninth Circuit on the issue that Defendants seek to certify" supported the conclusion that "there exists a substantial ground for difference of opinion on the

---

[4] Plaintiffs assume without explanation that the Court would grant them leave to amend if it dismissed their claim, and that they could successfully cure any pleading defects. *See* Opp. at 21. In any event, even such amendment would materially advance the litigation by requiring Plaintiffs to plead standing based on a different theory of injury.

issue," in granting Rule 1292(b) motion). And many of the cases that contributed to that body of caselaw—and supported the filing of CoStar's Motion—were decided in the two months following the Court's Order, including in the days leading up to the filing of the Motion. *See, e.g.*, *de Ayora v. Inspire Brands, Inc.*, 2025 WL 3707561, at *3 (N.D. Cal. Dec. 22, 2025); *Bradshaw v. Lowe's Cos.*, 2025 WL 3171740, at *5 (S.D. Cal. Nov. 12, 2025); *Rodriguez v. Culligan Int'l Co.*, 2025 WL 3064113, at *3 (S.D. Cal. Nov. 3, 2025); *Oganyan*, 2025 WL 2979619, at *3 (E.D. Cal. Oct. 22, 2025). Given the recency and novelty of *Popa*, it was appropriate and reasonable for CoStar to file its Motion two months after the Court's Order.

Further, while Plaintiffs seek to characterize CoStar as dilatory, it bears noting that Plaintiffs' counsel's own schedules contributed to the timing of CoStar's filing. As this Court is aware, the Local Rules require that parties meet and confer at least seven days prior to a motion being filed. *See* C.D. Cal. L.R. 7-3. Counsel for CoStar contacted Plaintiffs' counsel on December 5, 2025 with a request to promptly meet and confer. Plaintiffs' counsel responded on December 8, 2025 and offered availability on December 15, 2025 or later, apparently unable to meet counsel's requests to "meet sooner than next week," saying there was "just no way" to do so. *See* Opp. Exh. 1 at 5-7. In the end, CoStar diligently filed its Motion seven days after the meet and confer, as required by the Local Rules. *See generally* Dkt. 45.

### E. CoStar Has Not Waived Arguments Based on *Popa* Because the Court's Order Raised a Novel and Appealable Question

Plaintiffs similarly seek to sidestep the merits of CoStar's Motion by claiming that CoStar should have raised *Popa* in its reply to the motion to dismiss. *See* Opp. at 7. This argument fares no better than their timing challenge. In its motion to dismiss, CoStar argued that Plaintiffs lack standing because "Plaintiffs only specifically allege that their IP addresses were received by the Trackers," and there is no privacy expectation in freely shared IP addresses. *See* Dkt. 31-1 at 5. CoStar had no occasion to raise *Popa* in its reply, because it is well-settled law that "IP

addresses are necessarily shared in the normal course of internet browsing," and *Popa* did not address or disturb this principle. *See* Dkt. 31-1 at 5; *see also* Dkt. 35 at 3. Indeed, the Court ultimately agreed with CoStar that "[b]y visiting [CoStar]'s websites, Plaintiffs [] clearly consented to disclosing their IP addresses for the purpose of loading the website, so CIPA would not apply." Order at 6. But the Court's Order went further and ruled that Plaintiffs had sufficiently pled standing based on the alleged "retention" and "transmission" of these voluntarily shared IP addresses to third parties. *Id.*; *see also id.* at 5. On this point, courts interpreting *Popa* have differed. And the issue of disagreement—whether the transmission to third parties of IP addresses and similar information by a website provider can constitute an injury with a close relationship to a harm traditionally recognized as a basis for a lawsuit—is a novel legal question that the parties did not squarely address in their briefing and which remains unsettled in the wake of *Popa*.

## III. A Stay of the Case Is Warranted

Plaintiffs oppose a stay based on (1) the purported "overwhelming weight of post-*Popa* cases" ruling in their favor; (2) their belief that the expenditure of "significant time and resources" to "defend a suit" is not grounds for a stay; (3) the delay a stay could cause to the resolution of their case; and (4) the possibility that the case could proceed if appeal were successful. *See* Opp. at 22-25. Plaintiffs' arguments fail.

First, as discussed above, the caselaw surrounding Article III standing for third-party disclosure of IP addresses and similar data is far from settled, with district court decisions following *Popa* rejecting the very position Plaintiffs advance here. *See* Dkt. 45 ("Mot.") at 18.

Second, absent a stay, CoStar will be forced to spend time and resources defending against Plaintiffs' claim, which "may ultimately be barred." *Gillespie*, 2022 WL 18584762, at *3; *see also Allen v. Protective Life Ins. Co.*, 2020 WL 5878276, at *6 (E.D. Cal. Oct. 2, 2020) (granting a stay where "Defendants [argued]

that they [would] suffer hardship if discovery progresse[d] and they [were] forced to expend significant time and resources engaging in individual and class discovery issues that are moot."); *Brown v. Wal- Mart Stores, Inc.*, 2012 WL 5818300, at *4 (N.D. Cal. Nov. 15, 2012) ("Forcing Defendant to incur potentially substantial fees and engage in discovery that may ultimately be unnecessary constitutes at least some harm to Defendant."), *aff'd* 651 F. App'x 672 (9th Cir. 2016); Mot. at 18-19.

Plaintiffs, meanwhile, "[are] not likely to be substantially injured by the stay." *Gillespie*, 2022 WL 18584762, at *3. Plaintiffs claim that they will be harmed if their case is not "resolved quickly." Opp. at 23-24 (citing *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005)). But in *Lockyer*, the court found that the balance of harms favored the non-moving party because the non-moving party sought injunctive relief, so a stay would interfere with the prevention of possible future harm. 398 F.3d at 1112. Here, by contrast, Plaintiffs seek only monetary damages—exactly the backwards-facing relief *Lockyear* distinguished in its holding. *See id.*; Dkt. 1 at 36. The only "possible" harm to plaintiffs—delayed monetary relief—"can be fully redressed" after appeal. *See Murphy v. DirecTV, Inc.*, 2008 WL 8608808, at *3 (C.D. Cal. July 1, 2008) ("[T]he possible monetary harm to the class . . . can be fully redressed should [plaintiffs] . . . ultimately prevail"); *Brown*, 2012 WL 5818300, at *4 ("The potential delay in Plaintiff's ability to recover penalties . . . does not constitute a substantial injury.").

Last, even if Plaintiffs' claim is narrowed, rather than fully eliminated, a stay in this action would serve the public interest by conserving judicial resources that would otherwise be consumed in proving up the broader claim and offering clarity to countless litigants and website providers currently engaged in similar litigation. Accordingly, a stay is warranted in this case.

## IV. CONCLUSION

For the foregoing reasons, CoStar respectfully requests that the Court **GRANT** CoStar's Motion and **STAY** the case pending interlocutory appeal.

Dated: February 4, 2026

**LATHAM & WATKINS LLP**

By: /s/ *Michael H. Rubin*

Michael H. Rubin
*michael.rubin@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
415-395-0600
Fax: 415-395-8095

Alexander C.K. Wyman
*alex.wyman@lw.com*
355 South Grand Avenue Suite 400
Los Angeles, CA 90071
213-485-1234
Fax: 213-891-8763

Nicholas J. Boyle
*nicholas.boyle@lw.com*
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
202-637-2200
Fax: 202-637-2201
*Admitted Pro Hac Vice*

*Attorneys for Defendant CoStar Group, Inc.*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant CoStar Group, Inc., certifies that this brief contains 3,902 words, which complies with the word limit of L.R. 11-6.1, and is 12 pages long, which complies with Judge Jesus G. Bernal's Standing Order.

Dated: February 4, 2026 By: */s/ Michael H. Rubin*
Michael H. Rubin